ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 27 2004
U.S. COURT OF FEDERAL CLAIMS

SWISS REINSURANCE AMERICA CORPORATION

Plaintiff,

-against-

No. 04-0095C

UNITED STATES OF AMERICA

Defendant.

## COMPLAINT

Swiss Reinsurance America Corporation, by and through its attorney, John W. Dreste, a member of the law firm of Ernstrom & Dreste, LLP, for its complaint in the within appeal, alleges as follows:

## PARTIES AND JURISDICTION

1. The Plaintiff, Swiss Reinsurance America Corporation ("Swiss Re") is a corporation organized under the laws of the State of New York with its principal place of business located at 175 King Street, Armonk, New York.

2. The Defendant, United States of America, was and is a governmental entity which acts through various agencies, including, upon information and belief, the Army COE of Engineers, Pittsburgh District ("COE").

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491 as this action arises out of an express contract with the United States of America.

4. Swiss Re is entitled to monetary relief pursuant to 41 U.S.C. § 609.

## FACTS COMMON TO ALL COUNTS

5. This claim arises out of a construction project known as the New Dock Front at PEWARS, Neville Island, Pennsylvania, Contract No. DACW59-99-C-0002 ("Project").

6. Upon information and belief, on or about March 25, 1999, Airport Industrial Park, Inc. t/d/b/a PEC Contracting Engineers ("PEC") was awarded Contract No. DACW59-99-C-0002 ("Contract") for the completion of the Project work. A copy of the Contract is attached hereto as **Exhibit "1"** and made a part hereof.

7. Pursuant to the requirements of the Contract and/or applicable law, including but not limited to the Miller Act, 40 U.S.C. § 270-b *et seq.*, PEC was required to provide certain contract surety bonding for the Project work.

8. Accordingly, PEC procured surety bonds from Amwest Surety Insurance Company ("Amwest"). On or about March 25, 1999, Amwest issued a surety performance bond number 1382830 ("Performance Bond"). A copy of the Performance Bond is attached hereto as **Exhibit "2"** and made a part hereof.

9. Also on March 25, 1999, Swiss Re issued a Reinsurance Agreement for Miller Act Performance Bond in the amount of $2,646,931.00 ("Reinsurance Agreement"). A copy of the Reinsurance Agreement is attached hereto as **Exhibit "3"** and made a part hereof

10. Included in the Contract work was the completion of certain work known as the installation of "rock anchors."

11. With regard to the Permanent Anchor System, the Contract specifications provide in relevant part as follows: "This is a performance specification. The Contractor is responsible for the design, fabrication and installation of the inclined rock and soil anchors for the new tie-back wall and extended fenders as shown on the drawings." Specification Section

02164, Page 3, Part 1.1.

12. Accordingly, PEC submitted its proposed rock anchor installation means and methods.

13. The method proposed by PEC in its submittal did not employ duplex drilling.

14. PEC's submittal, including but not limited to the submittal relating to the installation of rock anchors using a method other than the duplex drilling method, were ultimately accepted by the COE.

15. By letter dated August 17, 2001, before PEC completed the Contract work, the Army COE of Engineers, Pittsburgh District ("COE"), the Project owner, declared PEC in default of its obligations under the Contract and terminated the Contract ("Declaration of Default"). A copy of the Declaration of Default is attached hereto as **Exhibit "4"** and made a part hereof.

16. Upon information and belief, the Declaration of Default was unrelated to the rock anchor work performed by PEC.

17. In the Declaration of Default, the COE also made demand under the Performance Bond for the completion of the Contract work.

18. On or about June 7, 2001, by order of the District Court of Lancaster County, Nebraska, Amwest was placed into liquidation and all proceedings, including but not limited to bond claims, against it were stayed. However, Swiss Re was named as a reinsurer of the Performance Bond.

19. Accordingly, the COE's demand on the Performance Bond was made upon Swiss Re.

20. On or about October 23, 2001, the COE and Swiss Re entered into a Partial Completion Agreement ("Partial Completion Agreement"), pursuant to which Swiss Re undertook a portion of the Contract work, identified in the Partial Completion Agreement as Phase I. A copy of the Partial Completion Agreement is attached hereto as **Exhibit "5"** and made a part hereof.

21. Pursuant to the terms of the Partial Completion Agreement, Swiss Re engaged Port Vue Plumbing, Inc. ("Port Vue") to perform the Phase I work.

22. From the beginning of the Contract work performed by PEC and through the Phase I work performed by Port Vue, twenty-two rock anchors installations were performed.

23. None of the twenty-two rock installations referenced above was performed using the duplex drilling method.

24. Each of the twenty-two rock installations referenced above was performed using the method set forth in the submittals made by PEC.

25. The COE observed each of the twenty-two rock installations by PEC and by Port Vue.

26. The COE approved each of the twenty-two rock installations by PEC and by Port Vue for payment.

27. The COE paid for each of twenty-two rock installations by PEC and by Port Vue.

28. By letter dated January 5, 2001, the COE demanded the use of duplex drilling and threatened that it would stop all rock anchor drilling unless the duplex drilling method was used.

29. However, notwithstanding this demand, the Corps not only permitted the non-duplex drill method to be used after January 5, 2001, but paid for such work. Application and Certificate for Payment No. 29, covering work from July 1, 2001 through July 15, 2001, indicates that PEC performed and was paid for rock anchor work.

30. While the Phase I work was completed pursuant to the Partial Completion Agreement, Swiss Re solicited bids for the completion of the remaining work.

31. Prior to soliciting such bids, Swiss Re requested that the COE provide copies of all submittals made by PEC in connection with the Contract work, including the submittal made by PEC for the rock anchor installation method.

32. Swiss Re made the submittals available as part of the information for bidders in connection with its solicitation for bids for the completion of the remaining Contract work.

33. The COE was aware that Swiss Re and the potential bidders would rely upon the accepted submittals in providing pricing for the completion of the remaining work.

34. Swiss Re's reliance upon the approved submittal for rock anchors was reasonable.

35. Swiss Re's reliance upon the approved submittal for rock anchors was based, in part, upon the COE's observation of, approval for payment of, and payment of the prior twenty-two rock anchor installations.

36. In or around February, 2002, bids were opened for the remaining contract work, which also included, as required by the Contract, the installation of certain work known as "soil anchors."

37. After bids were opened, the COE notified Swiss Re that it had decided to eliminate the requirement of soil anchors.

38. Accordingly, Swiss Re was required to request that the bidders to resubmit their pricing for soil anchors.

39. At the urging of the COE, Swiss Re required submission of the revised bids by March 13, 2002.

40. On March 11, 2002, two days before the revised bids were due, the COE, through its contracting officer, Michael S. DeStefano, issued a letter requiring, for the first time, that for future rock installations, the duplex drilling method would be required. A copy of Mr. DeStefano's March 11, 2002 letter is attached hereto as **Exhibit "6"** and made a part hereof.

41. Swiss Re provided a copy of the March 11, 2002 letter to each of the bidders.

42. Port Vue submitted the lowest responsible and responsive revised bid.

43. In its bid, Port Vue valued the increase in price due to the new requirement of utilizing the duplex drilling method at $39,000.00. A copy of Port Vue's bid is attached hereto as **Exhibit "7"** and made a part hereof.

44. To the extent that the duplex drilling method was required by the Contract, such requirement was expressly and/or impliedly waived by the COE.

45. To the extent that the COE maintains that it paid PEC for work which was not performed pursuant to the contract requirements, the COE has prejudiced Swiss Re by its overpayment to PEC and Swiss Re has been damaged thereby.

46. On March 19, 2002, Swiss Re, by and through its authorized agent, Paul Krystal of Project Completion Advocates, LLC ("PCA"), initiated its claim for additional compensation in the amount of $39,000.00 arising out of the new and changed requirement for duplex drilling on the Project. A copy of PCA's March 19, 2002 claim letter is attached

hereto as **Exhibit "8"** and made a part hereof.

47. By letter dated May 3, 2002, Mr. DeStefano issued the COE's Final Decision with respect to Swiss Re's claim for additional compensation related to the new and changed requirement for duplex drilling for the casing of rock anchors ("Final Decision"). A copy of the Final Decision is attached hereto as **Exhibit "9"** and made a part hereof.

48. In the Final Decision, the COE not only rejected Swiss Re's claim for additional compensation but also for the first time claimed that the COE was entitled to a credit of $12,434.78 for the prior rock anchor installations which had been previously observed, approved for payment and paid by the COE.

49. By letter dated August 2, 2002, Swiss Re appealed the Final Decision to the Board of Contract Appeals ("Notice of Appeal"). A copy of Swiss Re's Notice of Appeal is attached hereto as **Exhibit "10"** and made a part hereof.

50. Although the Government never challenged the jurisdiction of the Board of Contract Appeals, the Board itself raised the issue of its jurisdiction over Swiss Re's appeal *sua sponte*. A copy of the Board's letter raising issues of its jurisdiction dated August 23, 2003 is attached hereto as **Exhibit "11"** and made a part hereof.

51. Clearly, the Board of Contract Appeals did not raise any issue of jurisdiction over Swiss Re's appeal until well after the one year time period to appeal a final decision of a Contracting Officer to the United States Court of Federal Claims.

52. On or about December 18, 2003, the Board determined that it did not have jurisdiction over the claim. Therefore, while more than one year has passed since the Contracting Officer issued his final decision, this claim is timely pursuant to the doctrine of equitable tolling.

**COUNT I**
**(Breach of Contract)**

53. Plaintiff repeats and realleges paragraphs "1" through "52" of the Complaint as if fully set forth herein.

54. By reason of the foregoing, the COE breached its obligations to Swiss Re pursuant to the Contract, the Performance Bond, and/or any other applicable contract.

55. Swiss Re has been damaged by such breach.

56. By reason of the foregoing, Swiss Re is entitled to an award in its favor, reversing the Final Decision of the Contracting Officer, directing payment in the sum of $39,000.00 to Swiss Re related to the rock anchor installation, and denying the Contracting Officer's decision to impose a credit of $12,434.78.

**COUNT II**
**(Estoppel/*Quantum Meruit*)**

57. Plaintiff repeats and realleges paragraphs "1" through "56" of the Complaint as if fully set forth herein.

58. By reason of the foregoing, Swiss Re reasonably relied to its detriment upon the representations of the COE in connection with the appropriate method for the installation of rock anchors.

59. By reason of the foregoing, Swiss Re is entitled to an award in its favor, reversing the Final Decision of the Contracting Officer, directing payment in the sum of $39,000.00 to Swiss Re related to the rock anchor installation, and denying the Contracting Officer's decision to impose a credit of $12,434.78.

**WHEREFORE,** Appellant Swiss Reinsurance America Corporation respectfully requests judgment as follows:

A. Reversing the Final Decision of the Contracting Officer with regard to the denial of compensation in the sum of $39,000.00, and directing payment to Swiss Reinsurance America Corporation in that Amount; and

B. Reversing the Final Decision of the Contracting Officer with regard to the imposition of a credit in the sum of $12,434.78, and directing payment to Swiss Reinsurance America Corporation in that Amount; and

C. For the costs and disbursements of this matter, including but not limited to attorney's fees, and for such other and further relief as to this tribunal may seem just and proper.

Dated: January 23, 2004
Rochester, New York

**ERNSTROM & DRESTE, LLP**

By: John W. Dreste
Theodore M. Baum (awaiting admission)
*Attorneys for Plaintiff*
*Swiss Reinsurance America Corporation*
180 Canal View Blvd., Suite 600
Rochester, NY 14623
Telephone: (585) 473-3100
Facsimile: (585) 473-3113

# SOLICITATION, OFFER AND AWARD
*(Construction, Alteration, or Repair)*

1. SOLICITATION NO.: DACW59-99-B-0001

2. TYPE OF SOLICITATION: [X] SEALED BID (IFB) [ ] NEGOTIATED (RFP)

3. DATE ISSUED: 12/01/98

PAGE OF PAGES

IMPORTANT - The "offer" section on the reverse must be fully completed by offeror.

4. CONTRACT NO.: DACW59-99-C-0002

5. REQUISITION/PURCHASE REQUEST NO.: W81ET4-8302-0079

6. PROJECT NO.:

7. ISSUED BY — CODE: CT-P-001

US ARMY ENGR DISTRICT PGH
727 W S MOORHEAD FED BLDG
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

8. ADDRESS OFFER TO

US ARMY ENGR DISTRICT PGH
727 W S MOORHEAD FED BLDG
1000 LIBERTY AVENUE
PITTSBURGH PA 15222-4186

9. FOR INFORMATION CALL: A. NAME: DARLENE A. YOUNG — B. TELEPHONE NO. *(Include area code) (NO COLLECT CALLS)*: 412-395-7478

## SOLICITATION

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder."

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS *(Title, identifying no., date)*:

**REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY**
William A. Zubeck 3/25/99
**OFFICE OF COUNSEL** **DATE**

NEW DOCK FRONT
PITTSBURGH ENGINEER WAREHOUSE
AND REPAIR SHOPS
NEVILLE ISLAND, PENNSYLVANIA

RSS

THIS PROCUREMENT IS 100% SET-ASIDE FOR SMALL BUSINESSES

PLEASE SEE CLAUSE 52.204-4004, SECTION 00700, REGARDING REQUIREMENT THAT ALL CONTRACTORS MUST BE REGISTERED IN THE CENTRAL CONTRACTOR REGISTRATION (CCR) DATABASE TO BE ELIGIBLE FOR ANY CONTRACT AWARD.

11. The Contractor shall begin performance within 10 calendar days and complete it within 365 calendar days after receiving [ ] award, [X] notice to proceed. This performance period is [X] mandatory, [ ] negotiable. *(See ________ .)*

12A. THE CONTRACTOR MUST FURNISH ANY REQUIRED PERFORMANCE AND PAYMENT BONDS? *(If "YES," indicate within how many calendar days after award in Item 12B.)*
[X] YES [ ] NO

12B. CALENDAR DAYS: 10

13. ADDITIONAL SOLICITATION REQUIREMENTS:

A. Sealed offers in original and 0 copies to perform the work required are due at the place specified in Item 8 by 1100 AM *(hour)* local time 01/05/99 *(date)*. If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee [X] is, [ ] is not required

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing other than 60 calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.



ORIGINAL

**OFFER** *(Must be fully completed by offeror)*

14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*

Airport Industrial Park, Inc. d/b/a
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, PA 15224
DUNS NO. 119116887

CODE 1JJL7 FACILITY CODE

15. TELEPHONE NO. *(Include area code)*
412/621-1944

16. REMITTANCE ADDRESS *(Include only if different than Item 14)*
P.O. Box 7872,
Pittsburgh, PA 15215

Use when mailing.

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within ____________ calendar days after the date offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

AMOUNTS ▶ SEE ATTACHED UNIT PRICE SCHEDULE

18. The offeror agrees to furnish any required performance and payment bonds.

19. ACKNOWLEDGMENT OF AMENDMENTS
*(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)*

| AMENDMENT NO. | 1 | 2 | 3 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | 12/22/98 | 1/15/99 | 1/26/99 | | | | | | | |

20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*
Paul E. Chambers, President

20B. SIGNATURE
Paul E. Chambers Pres

20C. OFFER DATE
2/17/99

**AWARD** *(To be completed by Government)*

21. ITEMS ACCEPTED

Items 0001 thru 0018 Inclsuvie

US Army Corps of Engineers, Pittsburgh
Resident Engineer
Pittsburgh Construction Area Office
3510 Grand Avenue
Pittsburgh, PA 15225

22. AMOUNT
$4,646,931.00

23. ACCOUNTING AND APPROPRIATION DATA
96NAX4902 0000 H41999 08 2439 1099.009.00596364252000 1TSK

24. SUBMIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ ITEM 21

25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO
☐ 10 U.S.C. 2304(c) ( ) ☐ 41 U.S.C. 253(c) ( )

26. ADMINISTERED BY CODE

US ARMY ENGINEER DISTRICT, PITTSBURGH
CORPS OF ENGINEERS, WM. S. MOORHEAD
FEDERAL BUILDING, 1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

27. PAYMENT WILL BE MADE BY

USAED PITTSBURGH DISTRICT
C/O USACE FINANCE CENTER
MAIL STOP 351
7800 THIRD AVENUE
MILLINGTON, TN 38054-5005

CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

[ ] 28. NEGOTIATED AGREEMENT *Contractor is required to sign this document and return* ____________ *copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications, and specifications incorporated by reference in or attached to this contract.

[X] 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary.

30A. NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*

30B. SIGNATURE

30C. DATE

31A. NAME OF CONTRACTING OFFICER *(Type or print)*
MICHELE R. HUTFLES

31B. UNITED STATES OF AMERICA
BY Michele R. Hutfles

31C. AWARD DATE
25 MAR 99

SECTION 00010

SUPPLIES OR SERVICES AND PRICES/COSTS

| ITEM | DESCRIPTION | * QUANTITY | U/M | U/P | AMOUNT |
|---|---|---|---|---|---|
| 0001 | REIMBURSEMENT FOR ACTUAL PERFORMANCE AND PAYMENT BONDS PREMIUM (SEE SECTION 00800) | | NOT TO EXCEED | | $ 58,000.00 |
| 0002 | PROGRESS PHOTOGRAPHS (Sets of 6) | 6 | SE | $ 850.00 | $ 5,100.00 |
| 0003 | REMOVALS | 1 | JB | SUM | $ 50,000.00 |
| 0004 | DEFORMED STEEL BARS FOR CONCRETE REINFORCEMENT | 155,500 | LB | $ .60 | $ 93,300.00 |
| 0005 | METAL SHEET PILING | 31,600 | LF | $ 39.00 | $ 1,232,400.00 |
| 0006 | MISCELLANEOUS METAL | 107,000 | LB | $ 1.68 | $ 179,760.00 |
| 0007 | STORM PIPE EXTENSIONS | 1 | JB | SUM | $ 10,000.00 |
| 0008 | STEEL H-PILES | | | | |
| 0008A | EXTENDED FENDERS, W14X398 | 1,280 | LF | $ 185.00 | $ 236,800.00 |
| 0008B | CLOSURES, HP14X89 | 120 | LF | $ 166.00 | $ 19,920.00 |
| 0008C | LADDER RECESS, HP8X36 | 2,090 | LF | $ 79.00 | $ 165,110.00 |
| 0009 | ACCESS LADDERS | 250 | LF | $ 120.00 | $ 30,000.00 |
| 0010 | SELECT FILL MATERIAL | 2,745 | CD | $ 33.00 | $ 90,585.00 |
| 0011 | CONTROLLED LOW STRENGTH MATERIAL | 3,600 | CD | $ 76.00 | $ 273,600.00 |
| 0012 | CONCRETE FOR MINOR STRUCTURES | 765 | CD | $ 287.00 | $ 219,555.00 |
| 0013 | PERMANENT ANCHOR SYSTEM | | | | |
| 0013A | TYPE 1, ROCK ANCHORS | 91 | EA | $ 12,261.00 | $ 1,115,751.00 |
| 0013B | TYPE 2, SOIL ANCHORS | 36 | EA | $ 9,200.00 | $ 331,200.00 |
| 0013C | GROUTING AND REDRILLING ANCHOR HOLES | 45 | EA | $ 1,360.00 | $ 61,200.00 |
| 0014 | PRECAST CONCRETE WALL PANELS | 3,270 | SF | $ 25.00 | $ 81,750.00 |
| 0015 | PIER TIMBERWORK | 4,710 | LF | $ 70.00 | $ 329,700.00 |
| 0016 | HANDRAILING | 1,000 | LF | $ 40.00 | $ 40,000.00 |
| 0017 | MOORING RINGS | 52 | EA | $ 250.00 | $ 13,000.00 |
| 0018 | KEVELS | 17 | EA | $ 600.00 | $ 10,200.00 |

TOTAL, ITEMS 0001 THRU 0018, INCLUSIVE $ 4,646,931.00

* ALL QUANTITIES ARE ESTIMATED, EXCEPT WHERE THE UNIT IS GIVEN AS "JB"

NOTE: ALL EXTENSIONS OF THE UNIT PRICES SHOWN WILL BE SUBJECT TO VERIFICATION BY THE GOVERNMENT.



Underlined text revised by Amendment No. DACW59-99-B-0001-0002

TABLE OF CONTENTS
SECTION 00100
INSTRUCTIONS, CONDITIONS, AND NOTICES TO BIDDERS


| | | | |
|---|---|---|---|
| 1 | 52.252-1 | SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998) | 00100-1 |
| 2 | 52.204-6 | DATA UNIVERSAL NUMBERING SYSTEM (DUNS) NUMBER (APR 1998) | 00100-1 |
| 3 | 52.204-7001 | COMMERCIAL AND GOVERNMENT ENTITY (CAGE) CODE REPORTING (DEC 1991) | 00100-2 |
| 4 | 52.211-1 | AVAILABILITY OF SPECIFICATIONS LISTED IN THE GSA INDEX OF FEDERAL SPECIFICATIONS, STANDARDS AND COMMERCIAL ITEM DESCRIPTIONS (JUN 1997) | 00100-2 |
| 5 | 52.211-2 | AVAILABILITY OF SPECIFICATIONS LISTED IN THE DOD INDEX OF SPECIFICATIONS AND STANDARDS (DODISS) (JUN 1997) | 00100-2 |
| 6 | 52.211-3 | AVAILABILITY OF SPECIFICATIONS NOT LISTED IN THE GSA INDEX OF FEDERAL SPECIFICATIONS, STANDARDS AND COMMERCIAL ITEM DESCRIPTIONS (JUN 1988) | 00100-3 |
| 7 | 52.214-1 | SOLICITATION DEFINITIONS--SEALED BIDDING (JUL 1987) | 00100-3 |
| 8 | 52.214-3 | AMENDMENTS TO INVITATIONS FOR BIDS (DEC 1989) | 00100-3 |
| 9 | 52.214-4 | FALSE STATEMENTS IN BIDS (APR 1984) | 00100-3 |
| 10 | 52.214-5 | SUBMISSION OF BIDS (MAR 1997) | 00100-3 |
| 11 | 52.214-6 | EXPLANATION TO PROSPECTIVE BIDDERS (APR 1984) | 00100-4 |
| 12 | 52.214-7 | LATE SUBMISSIONS, MODIFICATIONS, AND WITHDRAWALS OF BIDS (MAY 1997) | 00100-4 |
| 13 | 52.214-17 | AFFILIATED BIDDERS (APR 1984) | 00100-5 |
| 14 | 52.214-18 | PREPARATION OF BIDS--CONSTRUCTION (APR 1984) | 00100-6 |
| 15 | 52.214-19 | CONTRACT AWARD--SEALED BIDDING--CONSTRUCTION (AUG 1996) | 00100-6 |
| 16 | 52.214-4500 | ARITHMETIC DISCREPANCIES (EFARS 52.214-5000) | 00100-6 |
| 17 | 52.216-1 | TYPE OF CONTRACT (APR 1984) | 00100-7 |
| 18 | 52.222-23 | NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE EQUAL EMPLOYMENT OPPORTUNITY (APR 1984) | 00100-7 |
| 19 | 52.225-12 | NOTICE OF BUY AMERICAN ACT REQUIREMENT-CONSTRUCTION MATERIALS (MAY 1997) | 00100-8 |

| | | | |
|---|---|---|---|
| 20 | 52.228-1 | BID GUARANTEE (SEP 1996) | 00100-9 |
| 21 | 52.233-2 | SERVICE OF PROTEST (AUG 1996) | 00100-9 |
| 22 | 52.236-1 | PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984) | 00100-10 |
| 23 | 52.236-27 | SITE VISIT (CONSTRUCTION) (FEB 1995) | 00100-10 |
| 24 | 52.249-4500 | BASIS FOR SETTLEMENT OF PROPOSALS (EFARS 52.249-5000) | 00100-10 |
| 25 | 52.666-4326 | ELECTRONIC FUNDS TRANSFER | 00100-11 |
| 26 | 52.777-4001 | PRE-AWARD SURVEY | 00100-11 |
| 27 | 52.777-4052 | ESTIMATED COST OF THE WORK | 00100-12 |
| 28 | 52.777-4053 | PLANT AND EQUIPMENT PROPOSED FOR USE | 00100-12 |
| 29 | 52.777-4055 | AMENDMENTS PRIOR TO DATE SET FOR OPENING BIDS | 00100-12 |
| 30 | 52.777-4056 | BID BOND REQUIREMENTS | 00100-12 |
| 31 | 52.777-4058 | MINIMUM RATES | 00100-12 |
| 32 | 52.777-4060 | SAFETY AND HEALTH REQUIREMENTS MANUAL | 00100-12 |
| 33 | 52.777-4061 | CERTIFIED OR CASHIER'S CHECKS, BANK DRAFTS, MONEY ORDERS OR CURRENCY | 00100-13 |
| 34 | 52.777-4062 | POSTPONEMENT OF BID OPENINGS | 00100-13 |
| 35 | 52.777-4064 | LOCATION AND DESCRIPTION OF WORK | 00100-14 |
| 36 | 52.777-4066 | ACCESS TO SITE | 00100-14 |
| 37 | 52.777-4068 | WORK PERFORMED BY CONTRACTOR | 00100-14 |
| 38 | 52.777-4070 | EXAMINATION OF ROCK CORES | 00100-14 |
| 39 | 52.777-4081 | AWARD | 00100-14 |
| 40 | 52.888-4016I | INQUIRIES | 00100-14 |
| 41 | 52.888-4152 | SCOPE OF EMPLOYMENT OF PROFESSIONAL REGISTRANTS | 00100-15 |
| 42 | 52.999-4001 | CONTRACTOR QUALITY CONTROL | 00100-15 |
| 43 | 52.999-4999 | ELECTRONIC DATA INTERCHANGE (EDI) | 00100-15 |

SECTION 00100

INSTRUCTIONS, CONDITIONS, AND NOTICES TO BIDDERS

1 52.252-1 SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FEB 1998)

This solicitation incorporates one or more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of those provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a solicitation provision may be accessed electronically at these addresses:

http://www.arnet.gov/far
http://farsite.hill.af.mil
http://www.dtic.mil/dfars

(End of provision)

2 52.204-6 DATA UNIVERSAL NUMBERING SYSTEM (DUNS) NUMBER (APR 1998)

(a) The offeror shall enter, in the block with its name and address on the cover page of its offer, the annotation "DUNS" followed by the DUNS number which identifies the offeror's name and address exactly as stated in the offer. The DUNS number is a nine-digit number assigned by Dun and Bradstreet Information Services.

(b) If the offeror does not have a DUNS number, it should contact Dun and Bradstreet directly to obtain one. A DUNS number will be provided immediately by telephone at no charge to the offeror. For information on obtaining a DUNS number, the offeror, if located within the United States, should call Dun and Bradstreet at 1-800-333-0505. The offeror should be prepared to provide the following information:

(1) Company name.
(2) Company address.
(3) Company telephone number.
(4) Line of business.
(5) Chief executive officer/key manager.
(6) Date the company was started.
(7) Number of people employed by the company.
(8) Company affiliation.

(c) Offerors located outside the United States may obtain the location and phone number of the local Dun and Bradstreet Information Services office from the Internet home page at http://www.dnb.com/. If an offeror is unable to locate a local service center, it may send an e-mail to Dun and Bradstreet at globalinfo@mail.dnb.com.

(End of provision)

3 52.204-7001 COMMERCIAL AND GOVERNMENT ENTITY (CAGE) CODE REPORTING (DEC 1991)

(a) The Offeror is requested to enter its CAGE code on its offer in the block with its name and address. The CAGE code entered must be for that name and address. Enter CAGE before the number.

(b) If the Offeror does not have a CAGE code, it may ask the Contracting Officer to request one from the Defense Logistics Services Center (DLSC). The Contracting Officer will--

(1) Ask the Contractor to complete section B of a DD Form 2051, Request for Assignment of a Commercial and Government Entity (CAGE) Code;

(2) Complete section A and forward the form to DLSC; and

(3) Notify the Contractor of its assigned CAGE code.

(c) Do not delay submission of the offer pending receipt of a CAGE code.

(End of provision)

4 52.211-1 AVAILABILITY OF SPECIFICATIONS LISTED IN THE GSA INDEX OF FEDERAL SPECIFICATIONS, STANDARDS AND COMMERCIAL ITEM DESCRIPTIONS (JUN 1997)

(a) A single copy of each specification cited in this solicitation is available without charge from the GSA Federal Supply Service Bureau Specifications Section (3FBP-W), 470 East L'Enfant Plaza, SW., Suite 8100, Washington, DC 20407 (Tel. 202-619-8925). Additional copies may be purchased from the GSA Specifications Section in Washington, DC.

(b) The GSA Index of Federal Specifications, Standards and Commercial Item Descriptions may be purchased from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402.

(End of provision)

5 52.211-2 AVAILABILITY OF SPECIFICATIONS LISTED IN THE DOD INDEX OF SPECIFICATIONS AND STANDARDS (DODISS) (JUN 1997)

Single copies of specifications cited in this solicitation may be obtained by submitting a written request to the supply point listed below. The request must contain the title of the specification, its number, date, applicable amendment(s), and the solicitation or contract number. A telephone order entry system is available with the use of a touch tone telephone. A Customer Number is required to use this system and may be obtained by written request to the address listed below or by telephone (215-697-2179). In case of urgency, telegraphic requests are acceptable. Voluntary standards, which are not available to Offerors and Contractors from Government sources, may be obtained from the organization responsible for their preparation, maintenance, or publication.

Standardization Document
Order Desk, Building 4, Section D
700 Robbins Avenue
Philadelphia, PA 19111-5094
Facsimile No......215-697-2978

(End of provision)

6 52.211-3 AVAILABILITY OF SPECIFICATIONS NOT LISTED IN THE GSA INDEX OF FEDERAL SPECIFICATIONS, STANDARDS AND COMMERCIAL ITEM DESCRIPTIONS (JUN 1988)

The specifications cited in this solicitation may be obtained from: the organizations listed in SECTION 01090

The request should identify the solicitation number and the specification requested by date, title, and number, as cited in the solicitation.

(End of provision)

7 52.214-1 SOLICITATION DEFINITIONS--SEALED BIDDING (JUL 1987) (Reference 14.201-6(b))

8 52.214-3 AMENDMENTS TO INVITATIONS FOR BIDS (DEC 1989)

(a) If this solicitation is amended, then all terms and conditions which are not modified remain unchanged.

(b) Bidders shall acknowledge receipt of any amendment to this solicitation (1) by signing and returning the amendment, (2) by identifying the amendment number and date in the space provided for this purpose on the form for submitting a bid, (3) by letter or telegram, or (4) by facsimile, if facsimile bids are authorized in the solicitation. The Government must receive the acknowledgment by the time and at the place specified for receipt of bids.

(End of provision)

9 52.214-4 FALSE STATEMENTS IN BIDS (APR 1984)

Bidders must provide full, accurate, and complete information as required by this solicitation and its attachments. The penalty for making false statements in bids is prescribed in 18 U.S.C. 1001.

(End of provision)
(R 2-201(b)(xiii))
(R 1-2.201(a)(11))

10 52.214-5 SUBMISSION OF BIDS (MAR 1997)

(a) Bids and bid modifications shall be submitted in sealed envelopes or packages (unless submitted by electronic means) (1) addressed to the office specified in the solicitation, and (2) showing the time and date specified for receipt, the solicitation number, and the name and address of the bidder.

(b) Bidders using commercial carrier services shall ensure that the bid is addressed and marked on the outermost envelope or wrapper as prescribed in subparagraphs (a) (1) and (2) of this provision when delivered to the office specified in the solicitation.

(c) Telegraphic bids will not be considered unless authorized by the solicitation; however, bids may be modified or withdrawn by written or telegraphic notice.

(d) Facsimile bids, modifications, or withdrawals, will not be considered unless authorized by the solicitation.

(e) Bids submitted by electronic commerce shall be considered only if the electronic commerce method was specifically stipulated or permitted by the solicitation.

(End of provision)

11 52.214-6 EXPLANATION TO PROSPECTIVE BIDDERS (APR 1984)

Any prospective bidder desiring an explanation or interpretation of the solicitation, drawings, specifications, etc., must request it in writing soon enough to allow a reply to reach all prospective bidders before the submission of their bids. Oral explanations or instructions given before the award of a contract will not be binding. Any information given a prospective bidder concerning a solicitation will be furnished promptly to all other prospective bidders as an amendment to the solicitation, if that information is necessary in submitting bids or if the lack of it would be prejudicial to other prospective bidders.

(End of provision)
(R SF 33A, Para 3, 1978 JAN)

12 52.214-7 LATE SUBMISSIONS, MODIFICATIONS, AND WITHDRAWALS OF BIDS (MAY 1997)

(a) Any bid received at the office designated in the solicitation after the exact time specified for receipt will not be considered unless it is received before award is made and it--

(1) Was sent by registered or certified mail not later than the fifth calendar day before the date specified for receipt of bids (e.g., a bid submitted in response to a solicitation requiring receipt of bids by the 20th of the month must have been mailed by the 15th);

(2) Was sent by mail (or telegram or facsimile, if authorized) or hand-carried (including delivery by a commercial carrier) if it is determined by the Government that the late receipt was due primarily to Government mishandling after receipt at the Government installation;

(3) Was sent by U.S. Postal Service Express Mail Next Day Service-Post Office To Addressee, not later than 5:00 P.M. at the place of mailing two working days prior to the date specified for receipt of bids. The term "working days" excludes weekends and U.S. Federal holidays; or

(4) Was transmitted through an electronic commerce method authorized by the solicitation and was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of bids.

(b) Any modification or withdrawal of a bid is subject to the same conditions as in paragraph (a) of this provision.

(c) The only acceptable evidence to establish the date of mailing of a late bid, modification, or withdrawal sent either by registered or certified mail is the U.S. or Canadian Postal Service postmark both on the envelope or wrapper and on the original receipt from the U.S. or Canadian Postal Service. Both postmarks must show a legible date or the bid, modification, or withdrawal shall be processed as if mailed late. "Postmark" means a printed, stamped, or otherwise placed impression (exclusive of a postage meter machine impression) that is readily identifiable without further action as having been supplied and affixed by employees of the U.S. or Canadian Postal Service on the date of mailing.

Therefore, bidders should request the postal clerk to place a legible hand cancellation bull's-eye postmark on both the receipt and the envelope or wrapper.

(d) The only acceptable evidence to establish the time of receipt at the Government installation is the time/date stamp of that installation on the bid wrapper or other documentary evidence of receipt maintained by the installation.

(e) The only acceptable evidence to establish the date of mailing of a late bid, modification, or withdrawal sent by U.S. Postal Service Express Mail Next Day Service-Post Office to Addressee is the date entered by the post office receiving clerk on the "Express Mail Next Day Service-Post Office to Addressee" label and the postmark on the envelope or wrapper and on the original receipt from the U.S. Postal Service. "Postmark" has the same meaning as defined in paragraph (c) of this provision, excluding postmarks of the Canadian Postal Service. Therefore, bidders should request the postal clerk to place a legible hand cancellation bull's-eye postmark on both the receipt and the envelope or wrapper.

(f) Notwithstanding paragraph (a) of this provision, a late modification of an otherwise successful bid that makes its terms more favorable to the Government will be considered at any time it is received and may be accepted.

(g) Bids may be withdrawn by written notice or telegram (including mailgram) received at any time before the exact time set for receipt of bids. If the solicitation authorizes facsimile bids, bids may be withdrawn via facsimile received at any time before the exact time set for receipt of bids, subject to the conditions specified in the provision entitled "Facsimile Bids." A bid may be withdrawn in person by a bidder or its authorized representative if, before the exact time set for receipt of bids, the identity of the person requesting withdrawal is established and the person signs a receipt for the bid.

(h) If an emergency or unanticipated event interrupts normal Government processes so as to cause postponement of the scheduled bid opening, and urgent Government requirements preclude amendment of the solicitation or other notice of an extension of the opening date, the time specified for receipt of bids will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

(End of provision)

13 52.214-17 AFFILIATED BIDDERS (APR 1984)

(a) Business concerns are affiliates of each other when, either directly or indirectly, (1) one concern controls or has the power to control the other, or (2) a third party controls or has the power to control both.

(b) Each bidder shall submit with its bid an affidavit stating that it has no affiliates, or containing the following information:

(1) The names and addresses of all affiliates of the bidder.

(2) The names and addresses of all persons and concerns exercising control or ownership of the bidder and any or all of its affiliates, and whether they exercise such control or ownership as common officers, directors, stockholders holding controlling interest, or otherwise.

(End of provision)

(R 7-2003.12 1974 APR)

14 52.214-18 PREPARATION OF BIDS--CONSTRUCTION (APR 1984)

(a) Bids must be (1) submitted on the forms furnished by the Government or on copies of those forms, and (2) manually signed. The person signing a bid must initial each erasure or change appearing on any bid form.

(b) The bid form may require bidders to submit bid prices for one or more items on various bases, including--

(1) Lump sum bidding;

(2) Alternate prices;

(3) Units of construction; or

(4) Any combination of subparagraphs (1) through (3) above.

(c) If the solicitation requires bidding on all items, failure to do so will disqualify the bid. If bidding on all items is not required, bidders should insert the words "no bid" in the space provided for any item on which no price is submitted.

(d) Alternate bids will not be considered unless this solicitation authorizes their submission.

(End of provision)
(R SF 22, Para 5, 1978 FEB)

15 52.214-19 CONTRACT AWARD--SEALED BIDDING--CONSTRUCTION (AUG 1996)

(a) The Government will evaluate bids in response to this solicitation without discussions and will award a contract to the responsible bidder whose bid, conforming to the solicitation, will be most advantageous to the Government, considering only price and the price-related factors specified elsewhere in the solicitation.

(b) The Government may reject any or all bids, and waive informalities or minor irregularities in bids received.

(c) The Government may accept any item or combination of items, unless doing so is precluded by a restrictive limitation in the solicitation or the bid.

(d) The Government may reject a bid as nonresponsive if the prices bid are materially unbalanced between line items or subline items. A bid is materially unbalanced when it is based on prices significantly less than cost for some work and prices which are significantly overstated in relation to cost for other work, and if there is a reasonable doubt that the bid will result in the lowest overall cost to the Government even though it may be the low evaluated bid, or if it is so unbalanced as to be tantamount to allowing an advance payment.

(End of provision)

16 52.214-4500 ARITHMETIC DISCREPANCIES (EFARS 52.214-5000)

a. For the purpose of the initial evaluation of bids, the following will be utilized in resolving arithmetic discrepancies found on the face of the bidding schedule as submitted by bidders.

(1) Obviously misplaced decimal points will be corrected;

(2) In case of a discrepancy between the unit price and extended price, the unit price will govern;

(3) Apparent errors in extensions of unit prices will be corrected; and

(4) Apparent errors in addition of lump-sum and extended prices will be corrected.

b. For the purpose of bid evaluation, the Government will proceed on the assumption that the bidder intends his bid to be evaluated on the basis of the unit prices, extensions, and totals arrived at by resolution of arithmetic discrepancies as provided above and the bid will be so reflected on the abstract of bids.

c. These correction procedures shall not be used to resolve any ambiguity concerning which bid is low.

17 52.216-1 TYPE OF CONTRACT (APR 1984)

The Government contemplates award of a firm fixed-price contract resulting from this solicitation.

(End of provision)

18 52.222-23 NOTICE OF REQUIREMENT FOR AFFIRMATIVE ACTION TO ENSURE EQUAL EMPLOYMENT OPPORTUNITY (APR 1984)

(a) The offeror's attention is called to the Equal Opportunity clause and the Affirmative Action Compliance Requirements for Construction clause of this solicitation.

(b) The goals for minority and female participation, expressed in percentage terms for the Contractor's aggregate workforce in each trade on all construction work in the covered area, are as follows:

| Goals for minority participation for each trade | Goals for female participation for each trade |
|---|---|
| 6.3% | 6.9% |

These goals are applicable to all the Contractor's construction work performed in the covered area. If the Contractor performs construction work in a geographical area located outside of the covered area, the Contractor shall apply the goals established for the geographical area where the work is actually performed. Goals are published periodically in the Federal Register in notice form, and these notices may be obtained from any Office of Federal Contract Compliance Programs office.

(c) The Contractor's compliance with Executive Order 11246, as amended, and the regulations in 41 CFR 60-4 shall be based on (1) its implementation of the Equal Opportunity clause, (2) specific affirmative action obligations required by the clause entitled "Affirmative Action Compliance Requirements for Construction," and (3) its efforts to meet the goals. The hours of minority and female employment and training must be substantially uniform throughout the length of the contract, and in each trade. The Contractor shall make a good faith effort to employ minorities and women evenly on each of its projects. The transfer of minority or female employees or trainees from Contractor to Contractor, or from project to project, for the sole purpose of meeting the Contractor's goals shall be a violation of the contract, Executive Order 11246, as amended, and the regulations in 41 CFR 60-4. Compliance with the goals will be measured against the total work hours performed.

(d) The Contractor shall provide written notification to the Director,

Office of Federal Contract Compliance Programs, within 10 working days following award of any construction subcontract in excess of $10,000 at any tier for construction work under the contract resulting from this solicitation. The notification shall list the--

(1) Name, address, and telephone number of the subcontractor;
(2) Employer's identification number of the subcontractor;
(3) Estimated dollar amount of the subcontract;
(4) Estimated starting and completion dates of the subcontract; and
(5) Geographical area in which the subcontract is to be performed.

(e) As used in this Notice, and in any contract resulting from this solicitation, the "covered area" is Allegheny County, PA (SMSA).

(End of provision)
(R 7-2003.14(d) 1978 SEP)

19 52.225-12 NOTICE OF BUY AMERICAN ACT REQUIREMENT-CONSTRUCTION MATERIALS (MAY 1997)

(a) Offerors are required to comply with the requirements of Federal Acquisition Regulation (FAR) clause 52.225-5, Buy American Act Construction Materials, of this solicitation. The terms "construction material" and "domestic construction material," as used in this provision, have the meanings set forth in FAR clause 52.225-5.

(b) Offerors should request a determination regarding the inapplicability of the Buy American Act in time to allow determination before submission of offers. For evaluation of a request for a determination regarding the inapplicability of the requirements of the Buy American Act prior to the time set for receipt of offers, the information and applicable supporting data required by paragraphs (c) and (d) of FAR clause 52.225-5 shall be included in the request. If an offeror has not requested a detemination regarding the inapplicability of the Buy American Act prior to submission of its offer, or has not received a response to a request made prior to submission of its offer, the information and supporting data shall be included in the offer.

(c) Evaluation of offers.

(1) For evaluation of offers, (unless agency regulations specify a higher percentage) the Government will add to the offered price 6 percent of the cost of any foreign construction material proposed for exception from the requirements of the Buy American Act based on claimed unreasonable cost of domestic construction materials in accordance with paragraph (b)(3)(i) of FAR clause 52.225-5.

(2) If the evaluation of offers results in a tie between an offer including such foreign construction material excepted on the basis of unreasonable cost, as evaluated, and an offer including solely domestic construction material or other foreign construction material listed in the solicitation at paragraph (b)(2) of FAR clause 52.225-5, or subsequently excepted in accordance with paragraphs (b)(3) (ii) or (iii) of FAR clause 52.225-5, award shall be made to the offeror that submitted the latter offer.

(d) Alternate offers.

(1) When an offer includes foreign construction material not listed by the Government in the solicitation at paragraph (b)(2) of FAR clause 52.225-5, offerors also may submit alternate offers based on use of equivalent domestic construction material.

(2) If alternate offers are submitted, a separate Standard Form 1442

shall be submitted for each alternate offer, and a separate price comparison table, prepared in accordance with paragraphs (c) and (d) of FAR clause 52.225-5, shall be submitted for each offer that is based on the use of any foreign construction material for which the Government has not yet determined an exception to apply.

(3) If the Government determines that a particular exception requested under paragraph (c) of FAR clause 52.225-5 does not apply, the Government will evaluate only those offers based on use of the equivalent domestic construction material, and the offeror shall be required to furnish such domestic construction material.

(i) In sealed bid procurements, any offer based on use of that particular foreign construction material shall be rejected as nonresponsive.

(ii) In negotiated procurements, any offer based on use of that particular foreign construction material may not be accepted unless revised during negotiations.

(End of provision)

20 52.228-1 BID GUARANTEE (SEP 1996)

(a) Failure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid.

(b) The bidder shall furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States. The Contracting Officer will return bid guarantees, other than bid bonds, (1) to unsuccessful bidders as soon as practicable after the opening of bids, and (2) to the successful bidder upon execution of contractual documents and bonds (including any necessary coinsurance or reinsurance agreements), as required by the bid as accepted.

(c) The amount of the bid guarantee shall be twenty (20%) percent of the bid price or $3,000,000 , whichever is less.

(d) If the successful bidder, upon acceptance of its bid by the Government within the period specified for acceptance, fails to execute all contractual documents or furnish executed bond(s) within 10 days after receipt of the forms by the bidder, the Contracting Officer may terminate the contract for default.

(e) In the event the contract is terminated for default, the bidder is liable for any cost of acquiring the work that exceeds the amount of its bid, and the bid guarantee is available to offset the difference.

(End of provision)

21 52.233-2 SERVICE OF PROTEST (AUG 1996)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from

US Army Corps of Engineers
William S. Moorhead Federal Building
Attn: Contracting Officer
1000 Liberty Avenue
Pittsburgh, PA 15222-4186

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of provision)

22 52.236-1 PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization, work equivalent to at least fifteen (15%) percent of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government.

(End of clause)
(R 7-603.15 1965 JAN)
(R 1-18.104)

23 52.236-27 SITE VISIT (CONSTRUCTION) (FEB 1995)

(a) The clauses at 52.236-2, Differing Site Conditions, and 52.236-3, Site Investigation and Conditions Affecting the Work, will be included in any contract awarded as a result of this solicitation. Accordingly, offerors or quoters are urged and expected to inspect the site where the work will be performed.

(b) Site visits may be arranged during normal duty hours by contacting: Name: Resident Engineeer Address: Pittsburgh Engineer Warehouse and Repair Shops, 3510 Grand Avenue, Pittsburgh, PA 15225-1584 Telephone: 412-644-6318

(End of provision)

24 52.249-4500 BASIS FOR SETTLEMENT OF PROPOSALS
(EFARS 52.249-5000)

Actual costs will be used to determine equipment costs for a settlement proposal submitted on the total cost basis under FAR 49.206-2(b). In evaluating a terminations settlement proposal using the total cost basis, the following principals will be applied to determine allowable equipment costs:

(1) Actual costs for each piece of equipment, or groups of similar serial or series equipment, need not be available in the Contractor's accounting records to determine total actual equipment costs.

(2) If equipment costs have been allocated to a contract using predetermined rates, those charges will be adjusted to actual costs.

(3) Recorded job costs adjusted for unallowable and unallowable expenses will be used to determine equipment operating expenses.

(4) Ownership costs (depreciation) will be

determined using the Contractor's depreciation schedule (subject to the provisions of FAR 31.205-11).

(5) License, taxes, storage and insurance costs are normally recovered as an indirect expense and unless the Contractor charges these costs directly to contracts, they will be recovered through the indirect expense rate.

25 52.666-4326 ELECTRONIC FUNDS TRANSFER

Contractor information as required under FAR 52.232-33, Mandatory Information for Electronic Funds Transfer Payment, must be entered on FORM: UFC-DISB-4 and forwarded directly to the following payment office:

U.S. Army Finance Center
Attn: Disbursing Division (Stop 351)
7800 Third Avenue
Millington, TN 38054-5005

Information pertaining to Electronic Funds Transfer shall not be submitted to the Contracting Officer or Contract Specialist.

26 52.777-4001 PRE-AWARD SURVEY

Prior to award of the contract, the apparent low bidder will be required to furnish the following information upon request of the Contracting Officer:

(a) Financial ability to perform the contract, including the availability of necessary working capital and credit. Bidder shall furnish a copy of its current financial statement and obtain statements from its bank or banks and/or lending institutions with whom it does business as to its credit and other data deemed pertinent regarding its ability to perform the work.

(b) Business and financial reputation and integrity. Bidder shall furnish names and addresses of four or more commercial firms for whom work has been performed recently or is under construction. A brief description of the projects and dollar value of same shall also be furnished. Data on work performed which is similar to the proposed work is preferred. The same information is required regarding work performed for other Government installations.

(c) Give brief history of business experience, including length of time in present business.

(d) Furnish statement as to similarity between services being rendered and those required by the proposed contract.

(e) Indicate total dollar amount of all business on hand (military and commercial) with brief description of major projects and locations of same.

(f) Furnish statement of facilities, materials, together with a list of key personnel and their qualifications available for performance of proposed contract.

(g) Furnish name and address of surety company which will furnish performance and payment bonds.

(h) Furnish names and address of proposes subcontractors.

27 52.777-4052 ESTIMATED COST OF THE WORK

The estimated cost of the proposed work is $1,000,000 and $5,000,000.

28 52.777-4053 PLANT AND EQUIPMENT PROPOSED FOR USE

Each bidder shall furnish a list of the plant available to the bidder and proposed for use on the work.

29 52.777-4055 AMENDMENTS PRIOR TO DATE SET FOR OPENING BIDS

The right is reserved as the interest of the Government may require, to revise or amend the specifications or drawings or both prior to the date set for opening bids. Such revisions and amendments, if any, will be announced by an amendment or amendments to this Invitation for Bids. If the revisions and amendments are of a nature which require material changes in the quantities or prices bid or both, the date set for opening bids may be postponed by such number of days as in the opinion of the Issuing Office will enable bidders to revise their bids. In such cases, the amendment will include an announcement of the new date for opening bids.

30 52.777-4056 BID BOND REQUIREMENTS

Each bidder shall submit with his bid, a Bid Bond (Std. Form 24) with good and sufficient surety or sureties acceptable to the Government in the penal sum of twenty percent (20%) of the bid price or $3,000,000.00 whichever is lesser. In order to be considered an acceptable surety, a corporate surety must appear on the list contained in the Department of Treasury Circular 570, "Companies Holding Certificates of Authority as Acceptable Sureties on Federal Bonds and Acceptable Reinsuring Companies". The bid bond penalty may be expressed in terms of a percentage of the bid price or may be expressed in dollars and cents. A valid Power of Attorney for an individual acting as agent for surety shall accompany the bond. FAILURE TO FURNISH A BID BOND OR A VALID POWER OF ATTORNEY, AS SPECIFIED, WITH BID MAY RESULT IN REJECTION OF BID FOR NON-COMPLIANCE. Standard Form 24 (Bid Bond) is furnished for information of bidders.

31 52.777-4058 MINIMUM RATES

The wage rates specified in these specifications represent the minimum rates to be paid on the work and are not intended to represent the actual rates that the Contractor may have to pay. The Government does not guarantee that a sufficient supply of qualified labor can be obtained at the minimum rates specified.

32 52.777-4060 SAFETY AND HEALTH REQUIREMENTS MANUAL

Bidders are alerted to the fact that a new edition of the Corps

of Engineers Manual EM 385-1-1, entitled "Safety and Health Requirements Manual" (referred to in the clause entitled "Accident Prevention") has been issued effective 3 September 1996. Any bidder who has not received a copy of this edition of the manual should obtain one prior to preparation of his bid. The cost of this Safety Manual is $7.00 per copy. Payment will be made in the form of a check or money order payable to "FAO, USAED, PITTSBURGH" and mailed to the US Army Corps of Engineers, Pittsburgh District, William S. Moorhead Federal Building, 1000 Liberty Avenue, Pittsburgh, Pennsylvania 15222-4186. Bidder should state Safety and Health Requirements Manual on his request. Requests will not be honored by phone or in person, requests must be in writing.

33 52.777-4061 CERTIFIED OR CASHIER'S CHECKS, BANK DRAFTS, MONEY ORDERS OR CURRENCY

When a certified or cashier's check, bank draft, money order, or currency is furnished in lieu of furnishing a surety or sureties on a bond, the regular form of bond must be utilized and signed by the bidder. In the space provided for the insertion of the surety a statement shall be made substantially as follows:

> "In lieu of surety (Insert here a description of the negotiable instrument or currency. Description to include where appropriate, date and number of negotiable instrument, bank on which drawn and amount) was furnished. The (check, sum, etc.) was deposited with the Finance and Accounting Officer, Corps of Engineers, Department of the Army, (insert address)."

34 52.777-4062 POSTPONEMENT OF BID OPENINGS

a. Bid openings may be postponed up to or even after the time scheduled for bid opening under the following circumstances:

(i) when the Contracting Officer has reason to believe that the bids of an important segment of bidders have been delayed in the mails for causes beyond their control and without their fault or negligence (such as, but not limited to, flood, fire, accident, weather conditions or strikes); or

(ii) when emergency or unanticipated events interrupt normal Government processes so that the conduct of bid openings as scheduled is impracticable.

b. At the time a determination is made to postpone a bid opening under a(i) above, an announcement of the determination shall be publicly posted and, if practicable before issuance of formal amendment of the invitation, otherwise communicated to prospective bidders likely to attend the scheduled bid opening.

c. In the case of a(ii) above, when urgent Government requirements preclude amendment of the solicitation, the time specified for opening of bids will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume. In such case, the time of actual bid opening shall be deemed to be the

time set for bid opening for the purpose of determining "late bids" under FAR 14-304.

35 52.777-4064 LOCATION AND DESCRIPTION OF WORK

a. Location. The work is located at the Pittsburgh Engineer Warehouse and Repair Shops (PEWARS), River Mile 7.6, Ohio River on Neville Island in Allgheny County, Pennsylvania.

b. Description of Work. The work consists of construction of a new steel sheet pile wall adjacent to the existing sheet pile cells, construction of a cast-in-place concrete waler, installation of rock and soil anchors, placement of fill material, and appurtenant site work.

36 52.777-4066 ACCESS TO SITE

The site of the work may be reached from state highways and local roads and streets and the inland waterway system as indicated on the drawings.

37 52.777-4068 WORK PERFORMED BY CONTRACTOR

Within ten (10) days after award of the contract, the successful bidder will be required to furnish a description of the work which he intends to perform with his own organization, the percentage of the total work this represents, and the estimated cost thereof.

38 52.777-4070 EXAMINATION OF ROCK CORES

Bidders who plan to visit the Pittsburgh Engineer Warehouse and Repair Shop at Neville Island, Pittsburgh, PA for the purpose of examining the overburden samples and rock cores stored there (See contract clause entitled "Physical Data") should contact the Superintendent of the Warehouse and Repair Shop, Telephone (412)644-6368. Such visit should be arranged for between the hours of 8 a.m. and 3 p.m., local time, Monday through Friday, holidays excluded.

39 52.777-4081 AWARD

Award will be made as a whole to one bidder.

40 52.888-4016 I INQUIRIES

Inquiries may be made by writing this office, or by calling (collect calls not accepted), the following individuals:

Mr. Tom Andre 412-395-7306 for Technical Information

| | | |
|---|---|---|
| Ms. Darlene A. Young | 412-395-7478 | for Obtaining Plans, Specifications and Bidding Documents and Bid Results |

41 52.888-4152 SCOPE OF EMPLOYMENT OF PROFESSIONAL REGISTRANTS

This project was designed by the Pittsburgh District of the U. S. Army Corps of Engineers. The initials or signatures and registration designations of individuals appear on these project documents within the scope of their employment as required by ER 1110-1-8152.

42 52.999-4001 CONTRACTOR QUALITY CONTROL

Section 01451, CONTRACTOR QUALITY CONTROL, of this specification requires that the Contractor's Quality Control System Manager or person responsible for Contractor Quality Control complete the Corps of Engineers' "Construction Quality Management for Contractors" course not later than 90 days after receipt of the Notice to Proceed. The course consists of approximately 12 hours of classroom instruction and is offered periodically by the Pittsburgh District. The course is sponsored by the Contractor's Association of Western Pennsylvania and there is a fee of up to $150.00 for the course. For additional information on scheduling and location of the training, contact U.S. Army Engineer District, Pittsburgh, Construction Division, Room 2117, William S. Moorhead Federal Building, 1000 Liberty Avenue, Pittsburgh, PA 15222-4186, telephone (412) 395-7383. Certification of course completion is valid for 5 years. Completion of training offered by other Corps of Engineers Districts will be acceptable provided a valid certification is presented.

43 52.999-4999 ELECTRONIC DATA INTERCHANGE (EDI)

The Pittsburgh District, Corps of Engineers, has implemented Electronic Data Interchange (EDI). What is EDI? Simply stated - EDI provides for the exchange of business transactions through the use of computers. In other words, bidding for the Pittsburgh District, Corps of Engineers, will be accomplished by EDI for the majority of actions between $2,500.00 and $100,000.00. Your firm is invited to participate in this process. EDI will open up a world of possibilities in the bidding process for your firm, not just with the Corps of Engineers, but with all Federal agencies. In order for your firm to become eligible, you must call the Electronic Commerce Information Center at 1-800-EDI-3414. You may also contact the Pittsburgh District, for further information at 412-395-7466.

END OF SECTION 00100

# TABLE OF CONTENTS
## SECTION 00700
## CONTRACT CLAUSES


| | | | |
|---|---|---|---|
| 1 | 52.252-2 | CLAUSES INCORPORATED BY REFERENCE (FEB 1998) | 00700-1 |
| 2 | 52.202-1 I | DEFINITIONS (OCT 1995)--ALTERNATE I (APR 1984) | 00700-1 |
| 3 | 52.203-3 | GRATUITIES (APR 1984) | 00700-1 |
| 4 | 52.203-5 | COVENANT AGAINST CONTINGENT FEES (APR 1984) | 00700-1 |
| 5 | 52.203-7 | ANTI-KICKBACK PROCEDURES (JUL 1995) | 00700-2 |
| 6 | 52.203-8 | CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997) | 00700-3 |
| 7 | 52.203-10 | PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997) | 00700-4 |
| 8 | 52.203-12 | LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN 1997) | 00700-5 |
| 9 | 52.203-7001 | SPECIAL PROHIBITION ON EMPLOYMENT (JUN 1997) | 00700-9 |
| 10 | 52.203-7002 | DISPLAY OF DOD HOTLINE POSTER (DEC 1991) DELETED | 00700-10 |
| 11 | 52.204-2 II | SECURITY REQUIREMENTS (AUG 1996)--ALTERNATE II (APR 1984) | 00700-10 |
| 12 | 52.204-4 | PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER (JUN 1996) | 00700-11 |
| 13 | 52.204-4004 | REQUIRED CENTRAL CONTRACTOR REGISTRATION (MAR 1998 DFARS 252.204-7004) | 00700-11 |
| 14 | 52.204-7003 | CONTROL OF GOVERNMENT PERSONNEL WORK PRODUCT (APR 1992) | 00700-12 |
| 15 | 52.205-7000 | PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS (DEC 1991) | 00700-12 |
| 16 | 52.209-6 | PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTOR DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUL 1995) | 00700-13 |
| 17 | 52.209-7000 | ACQUISITION FROM SUBCONTRACTORS SUBJECT TO ON-SITE INSPECTION UNDER THE INTERMEDIATE-RANGE NUCLEAR FORCES (INF) TREATY (NOV 1995) | 00700-13 |
| 18 | 52.211-18 | VARIATION IN ESTIMATED QUANTITY (APR 1984) | 00700-13 |
| 19 | 52.214-26 | AUDIT AND RECORDS--SEALED BIDDING (OCT 1997) | 00700-14 |
| 20 | 52.214-27 | PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1997) | 00700-15 |

| | | | |
|---|---|---|---|
| 21 | 52.214-28 | SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1997) | 00700-16 |
| 22 | 52.219-6 | NOTICE OF TOTAL SMALL BUSINESS SET-ASIDE (JUL 1996) | 00700-16 |
| 23 | 52.219-8 | UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS (JUN 1997) | 00700-17 |
| 24 | 52.219-14 | LIMITATIONS ON SUBCONTRACTING (DEC 1996) | 00700-18 |
| 25 | 52.222-3 | CONVICT LABOR (AUG 1996) | 00700-18 |
| 26 | 52.222-4 | CONTRACT WORK HOURS AND SAFETY STANDARDS ACT --OVERTIME COMPENSATION (JUL 1995) | 00700-19 |
| 27 | 52.222-6 | DAVIS-BACON ACT (FEB 1995) | 00700-20 |
| 28 | 52.222-7 | WITHHOLDING OF FUNDS (FEB 1988) | 00700-22 |
| 29 | 52.222-8 | PAYROLLS AND BASIC RECORDS (FEB 1988) | 00700-22 |
| 30 | 52.222-9 | APPRENTICES AND TRAINEES (FEB 1988) | 00700-23 |
| 31 | 52.222-10 | COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988) | 00700-25 |
| 32 | 52.222-11 | SUBCONTRACTS (LABOR STANDARDS) (FEB 1988) | 00700-25 |
| 33 | 52.222-12 | CONTRACT TERMINATION--DEBARMENT (FEB 1988) | 00700-25 |
| 34 | 52.222-13 | COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988) | 00700-26 |
| 35 | 52.222-14 | DISPUTES CONCERNING LABOR STANDARDS (FEB 1988) | 00700-26 |
| 36 | 52.222-15 | CERTIFICATION OF ELIGIBILITY (FEB 1988) | 00700-26 |
| 37 | 52.222-26 | EQUAL OPPORTUNITY (APR 1984) | 00700-26 |
| 38 | 52.222-27 | AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 1984) | 00700-28 |
| 39 | 52.222-35 | AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (APR 1998) | 00700-32 |
| 40 | 52.222-36 | AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (APR 1984) | 00700-34 |
| 41 | 52.222-37 | EMPLOYMENT REPORTS ON DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (APR 1998) | 00700-34 |
| 42 | 52.223-2 | CLEAN AIR AND WATER (APR 1984) | 00700-35 |
| 43 | 52.223-5 | POLLUTION PREVENTION AND RIGHT-TO-KNOW | 00700-36 |

| | | | |
|---|---|---|---|
| | | INFORMATION (APR 1998) | |
| 44 | 52.223-6 | DRUG-FREE WORKPLACE (JAN 1997) | 00700-37 |
| 45 | 52.223-14 | TOXIC CHEMICAL RELEASE REPORTING (OCT 1996) | 00700-38 |
| 46 | 52.223-7004 | DRUG-FREE WORK FORCE (SEP 1988) | 00700-39 |
| 47 | 52.225-5 | BUY AMERICAN ACT--CONSTRUCTION MATERIALS (JUN 1997) | 00700-40 |
| 48 | 52.225-11 | RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (OCT 1996) | 00700-42 |
| 49 | 52.225-7012 | PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES (SEP 1997) | 00700-42 |
| 50 | 52.225-7031 | SECONDARY ARAB BOYCOTT OF ISRAEL (JUN 1992) | 00700-43 |
| 51 | 52.227-1 | AUTHORIZATION AND CONSENT (JUL 1995) | 00700-43 |
| 52 | 52.227-2 | NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (AUG 1996) | 00700-44 |
| 53 | 52.227-4 | PATENT INDEMNITY--CONSTRUCTION CONTRACTS (APR 1984) | 00700-44 |
| 54 | 52.227-7033 | RIGHTS IN SHOP DRAWINGS (APR 1966) | 00700-45 |
| 55 | 52.228-2 | ADDITIONAL BOND SECURITY (OCT 1997) | 00700-45 |
| 56 | 52.228-5 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997) | 00700-45 |
| 57 | 52.228-11 | PLEDGES OF ASSETS (FEB 1992) | 00700-46 |
| 58 | 52.228-14 | IRREVOCABLE LETTER OF CREDIT (OCT 1997) | 00700-46 |
| 59 | 52.228-15 | PERFORMANCE AND PAYMENT BONDS--CONSTRUCTION (SEP 1996) | 00700-49 |
| 60 | 52.229-3 | FEDERAL, STATE, AND LOCAL TAXES (JAN 1991) | 00700-50 |
| 61 | 52.229-5 | TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (APR 1984) | 00700-51 |
| 62 | 52.231-4500 | EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995) - (EFARS 52.231-5000) | 00700-51 |
| 63 | 52.232-5 | PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (MAY 1997) | 00700-52 |
| 64 | 52.232-17 | INTEREST (JUN 1996) | 00700-54 |
| 65 | 52.232-23 | ASSIGNMENT OF CLAIMS (JAN 1986) | 00700-55 |
| 66 | 52.232-27 | PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS | 00700-55 |

| | | | |
|---|---|---|---|
| | | (JUN 1997) | |
| 67 | 52.232-33 | MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT (AUG 1996) | 00700-62 |
| 68 | 52.232-7006 | REDUCTION OR SUSPENSION OF CONTRACT PAYMENTS UPON FINDING OF FRAUD (AUG 1992) | 00700-64 |
| 69 | 52.233-1 | DISPUTES (OCT 1995) | 00700-65 |
| 70 | 52.233-3 | PROTEST AFTER AWARD (AUG 1996) | 00700-66 |
| 71 | 52.236-2 | DIFFERING SITE CONDITIONS (APR 1984) | 00700-67 |
| 72 | 52.236-3 | SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984) | 00700-67 |
| 73 | 52.236-5 | MATERIAL AND WORKMANSHIP (APR 1984) | 00700-68 |
| 74 | 52.236-6 | SUPERINTENDENCE BY THE CONTRACTOR (APR 1984) | 00700-69 |
| 75 | 52.236-7 | PERMITS AND RESPONSIBILITIES (NOV 1991) | 00700-69 |
| 76 | 52.236-8 | OTHER CONTRACTS (APR 1984) | 00700-69 |
| 77 | 52.236-9 | PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984) | 00700-69 |
| 78 | 52.236-10 | OPERATIONS AND STORAGE AREAS (APR 1984) | 00700-70 |
| 79 | 52.236-11 | USE AND POSSESSION PRIOR TO COMPLETION (APR 1984) | 00700-70 |
| 80 | 52.236-12 | CLEANING UP (APR 1984) | 00700-71 |
| 81 | 52.236-13 I | ACCIDENT PREVENTION (NOV 1991)--ALTERNATE I (NOV 1991) | 00700-71 |
| 82 | 52.236-15 | SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984) | 00700-72 |
| 83 | 52.236-17 | LAYOUT OF WORK (APR 1984) | 00700-72 |
| 84 | 52.236-21 II | SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997)--ALTERNATE II (APR 1984) | 00700-73 |
| 85 | 52.236-26 | PRECONSTRUCTION CONFERENCE (FEB 1995) | 00700-74 |
| 86 | 52.236-7000 | MODIFICATION PROPOSALS--PRICE BREAKDOWN (DEC 1991) | 00700-74 |
| 87 | 52.242-13 | BANKRUPTCY (JUL 1995) | 00700-75 |
| 88 | 52.242-14 | SUSPENSION OF WORK (APR 1984) | 00700-75 |
| 89 | 52.242-7000 | POSTAWARD CONFERENCE (DEC 1991) | 00700-75 |
| 90 | 52.243-4 | CHANGES (AUG 1987) | 00700-76 |

| | | | |
|---|---|---|---|
| 91 | 52.243-7001 | PRICING OF CONTRACT MODIFICATIONS (DEC 1991) | 00700-76 |
| 92 | 52.243-7002 | CERTIFICATION OF REQUESTS FOR EQUITABLE ADJUSTMENT (JUL 1997) | 00700-76 |
| 93 | 52.246-12 | INSPECTION OF CONSTRUCTION (AUG 1996) | 00700-77 |
| 94 | 52.247-7023 | TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995) | 00700-78 |
| 95 | 52.247-7024 | NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995) | 00700-80 |
| 96 | 52.248-3 I | VALUE ENGINEERING--CONSTRUCTION (MAR 1989)--ALTERNATE I (APR 1984) | 00700-80 |
| 97 | 52.249-2 I | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996)--ALTERNATE I (SEP 1996) | 00700-83 |
| 98 | 52.249-10 | DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) | 00700-86 |

SECTION 00700

CONTRACT CLAUSES

1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998)

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at these addresses:

http://www.arnet.gov/far
http://farsite.hill.af.mil
http://www.dtic.mil/dfars

(End of clause)

2 52.202-1 I DEFINITIONS (OCT 1995)--ALTERNATE I (APR 1984)
(Reference 2.201)

3 52.203-3 GRATUITIES (APR 1984)

(a) The right of the Contractor to proceed may be terminated by written notice if, after notice and hearing, the agency head or a designee determines that the Contractor, its agent, or another representative--

(1) Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and

(2) Intended, by the gratuity, to obtain a contract or favorable treatment under a contract.

(b) The facts supporting this determination may be reviewed by any court having lawful jurisdiction.

(c) If this contract is terminated under paragraph (a) above, the Government is entitled--

(1) To pursue the same remedies as in a breach of the contract; and

(2) In addition to any other damages provided by law, to exemplary damages of not less than 3 nor more than 10 times the cost incurred by the Contractor in giving gratuities to the person concerned, as determined by the agency head or a designee. (This subparagraph (c)(2) is applicable only if this contract uses money appropriated to the Department of Defense.)

(d) The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)
(R 7-104.16 1952 MAR)

4 52.203-5 COVENANT AGAINST CONTINGENT FEES (APR 1984)

(a) The Contractor warrants that no person or agency has been employed or retained to solicit or obtain this contract upon an agreement or understanding for a contingent fee, except a bona fide employee or agency. For breach or violation of this warranty, the Government shall have the right to annul this contract without liability or, in its discretion, to deduct from the contract price or consideration, or otherwise recover, the full amount of the contingent fee.

(b) "Bona fide agency," as used in this clause, means an established

commercial or selling agency, maintained by a contractor for the purpose of securing business, that neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds itself out as being able to obtain any Government contract or contracts through improper influence.

"Bona fide employee," as used in this clause, means a person, employed by a Contractor and subject to the Contractor's supervision and control as to time, place, and manner of performance, who neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds out as being able to obtain any Government contract or contracts through improper influence.

"Contingent fee," as used in this clause, means any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing a Government contract.

"Improper influence," as used in this clause, means any influence that induces or tends to induce a Government employee or officer to give consideration or to act regarding a Government contract on any basis other than the merits of the matter.

(End of clause)
(R 7-103.20 1958 JAN)
(R 1-1.503)
(R 1-7.102-18)

5 52.203-7 ANTI-KICKBACK PROCEDURES (JUL 1995)

(a) Definitions.

"Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

"Person," as used in this clause, means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual.

"Prime contract," as used in this clause, means a contract or contractual action entered into by the United States for the purpose of obtaining supplies, materials, equipment, or services of any kind.

"Prime Contractor" as used in this clause, means a person who has entered into a prime contract with the United States.

"Prime Contractor employee," as used in this clause, means any officer, partner, employee, or agent of a prime Contractor.

"Subcontract," as used in this clause, means a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services of any kind under a prime contract.

"Subcontractor," as used in this clause, (1) means any person, other than the prime Contractor, who offers to furnish or furnishes any supplies, materials, equipment, or services of any kind under a prime contract or a subcontract entered into in connection with such prime contract, and (2) includes any person who offers to furnish or furnishes general supplies to the prime Contractor or a higher tier subcontractor.

"Subcontractor employee," as used in this clause, means any officer, partner, employee, or agent of a subcontractor.

(b) The Anti-Kickback Act of 1986 (41 U.S.C. 51-58) (the Act), prohibits

any person from--

(1) Providing or attempting to provide or offering to provide any kickback;

(2) Soliciting, accepting, or attempting to accept any kickback; or

(3) Including, directly or indirectly, the amount of any kickback in the contract price charged by a prime Contractor to the United States or in the contract price charged by a subcontractor to a prime Contractor or higher tier subcontractor.

(c)(1) The Contractor shall have in place and follow reasonable procedures designed to prevent and detect possible violations described in paragraph (b) of this clause in its own operations and direct business relationships.

(2) When the Contractor has reasonable grounds to believe that a violation described in paragraph (b) of this clause may have occurred, the Contractor shall promptly report in writing the possible violation. Such reports shall be made to the inspector general of the contracting agency, the head of the contracting agency if the agency does not have an inspector general, or the Department of Justice.

(3) The Contractor shall cooperate fully with any Federal agency investigating a possible violation described in paragraph (b) of this clause.

(4) The Contracting Officer may (i) offset the amount of the kickback against any monies owed by the United States under the prime contract and/or (ii) direct that the Prime Contractor withhold from sums owed a subcontractor under the prime contract the amount of the kickback. The Contracting Officer may order that monies withheld under subdivision (c)(4)(ii) of this clause be paid over to the Government unless the Government has already offset those monies under subdivision (c)(4)(i) of this clause. In either case, the Prime Contractor shall notify the Contracting Officer when the monies are withheld.

(5) The Contractor agrees to incorporate the substance of this clause, including subparagraph (c)(5) but excepting subparagraph (c)(1), in all subcontracts under this contract which exceed $100,000.

(End of clause)

6 52.203-8 CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)

(a) If the Government receives information that a contractor or a person has engaged in conduct constituting a violation of subsection (a), (b), (c), or (d) of Section 27 of the Office of Federal Procurement Policy Act (41 U.S.C. 423) (the Act), as amended by section 4304 of the National Defense Authorization Act for Fiscal Year 1996 (Pub. L. 104-106), the Government may--

(1) Cancel the solicitation, if the contract has not yet been awarded or issued; or

(2) Rescind the contract with respect to which--

(i) The Contractor or someone acting for the Contractor has been convicted for an offense where the conduct constitutes a violation of subsection 27 (a) or (b) of the Act for the purpose of either--

(A) Exchanging the information covered by such subsections for anything of value; or

(B) Obtaining or giving anyone a competitive advantage in the award of a Federal agency procurement contract; or

(ii) The head of the contracting activity has determined, based upon a preponderance of the evidence, that the Contractor or someone acting

for the Contractor has engaged in conduct constituting an offense punishable under subsection 27(e)(1) of the Act.

(b) If the Government rescinds the contract under paragraph (a) of this clause, the Government is entitled to recover, in addition to any penalty prescribed by law, the amount expended under the contract.

(c) The rights and remedies of the Government specified herein are not exclusive, and are in addition to any other rights and remedies provided by law, regulation, or under this contract.

(End of clause)

7 52.203-10 PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)

(a) The Government, at its election, may reduce the price of a fixed-price type contract and the total cost and fee under a cost-type contract by the amount of profit or fee determined as set forth in paragraph (b) of this clause if the head of the contracting activity or designee determines that there was a violation of subsection 27 (a), (b), or (c) of the Office of Federal Procurement Policy Act, as amended (41 U.S.C. 423), as implemented in section 3.104 of the Federal Acquisition Regulation.

(b) The price or fee reduction referred to in paragraph (a) of this clause shall be--

(1) For cost-plus-fixed-fee contracts, the amount of the fee specified in the contract at the time of award;

(2) For cost-plus-incentive-fee contracts, the target fee specified in the contract at the time of award, notwithstanding any minimum fee or "fee floor" specified in the contract;

(3) For cost-plus-award-fee contracts--

(i) The base fee established in the contract at the time of contract award;

(ii) If no base fee is specified in the contract, 30 percent of the amount of each award fee otherwise payable to the Contractor for each award fee evaluation period or at each award fee determination point.

(4) For fixed-price-incentive contracts, the Government may--

(i) Reduce the contract target price and contract target profit both by an amount equal to the initial target profit specified in the contract at the time of contract award; or

(ii) If an immediate adjustment to the contract target price and contract target profit would have a significant adverse impact on the incentive price revision relationship under the contract, or adversely affect the contract financing provisions, the Contracting Officer may defer such adjustment until establishment of the total final price of the contract. The total final price established in accordance with the incentive price revision provisions of the contract shall be reduced by an amount equal to the initial target profit specified in the contract at the time of contract award and such reduced price shall be the total final contract price.

(5) For firm-fixed-price contracts, by 10 percent of the initial contract price or a profit amount determined by the Contracting Officer from records or documents in existence prior to the date of the contract award.

(c) The Government may, at its election, reduce a prime contractor's price or fee in accordance with the procedures of paragraph (b) of this clause for violations of the Act by its subcontractors by an amount not to exceed the amount of profit or fee reflected in the subcontract at the time

the subcontract was first definitively priced.

(d) In addition to the remedies in paragraphs (a) and (c) of this clause, the Government may terminate this contract for default. The rights and remedies of the Government specified herein are not exclusive, and are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)

8 52.203-12 LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (JUN 1997)

(a) Definitions.

"Agency," as used in this clause, means executive agency as defined in 2.101.

"Covered Federal action," as used in this clause, means any of the following Federal actions:

(1) The awarding of any Federal contract.

(2) The making of any Federal grant.

(3) The making of any Federal loan.

(4) The entering into of any cooperative agreement.

(5) The extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

"Indian tribe" and "tribal organization," as used in this clause, have the meaning provided in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450B) and include Alaskan Natives.

"Influencing or attempting to influence," as used in this clause, means making, with the intent to influence, any communication to or appearance before an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any covered Federal action.

"Local government," as used in this clause, means a unit of government in a State and, if chartered, established, or otherwise recognized by a State for the performance of a governmental duty, including a local public authority, a special district, an intrastate district, a council of governments, a sponsor group representative organization, and any other instrumentality of a local government.

"Officer or employee of an agency," as used in this clause, includes the following individuals who are employed by an agency:

(1) An individual who is appointed to a position in the Government under title 5, United States Code, including a position under a temporary appointment.

(2) A member of the uniformed services, as defined in subsection 101(3), title 37, United States Code.

(3) A special Government employee, as defined in section 202, title 18, United States Code.

(4) An individual who is a member of a Federal advisory committee, as defined by the Federal Advisory Committee Act, title 5, United States Code, appendix 2.

"Person," as used in this clause, means an individual, corporation, company, association, authority, firm, partnership, society, State, and local government, regardless of whether such entity is operated for profit, or not for profit. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Reasonable compensation," as used in this clause, means, with respect to a regularly employed officer or employee of any person, compensation

that is consistent with the normal compensation for such officer or employee for work that is not furnished to, not funded by, or not furnished in cooperation with the Federal Government.

"Reasonable payment," as used in this clause, means, with respect to professional and other technical services, a payment in an amount that is consistent with the amount normally paid for such services in the private sector.

"Recipient," as used in this clause, includes the Contractor and all subcontractors. This term excludes an Indian tribe, tribal organization, or any other Indian organization with respect to expenditures specifically permitted by other Federal law.

"Regularly employed," as used in this clause, means, with respect to an officer or employee of a person requesting or receiving a Federal contract, an officer or employee who is employed by such person for at least 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person for receipt of such contract. An officer or employee who is employed by such person for less than 130 working days within 1 year immediately preceding the date of the submission that initiates agency consideration of such person shall be considered to be regularly employed as soon as he or she is employed by such person for 130 working days.

"State," as used in this clause, means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a territory or possession of the United States, an agency or instrumentality of a State, and multi-State, regional, or interstate entity having governmental duties and powers.

(b) Prohibitions.

(1) Section 1352 of title 31, United States Code, among other things, prohibits a recipient of a Federal contract, grant, loan, or cooperative agreement from using appropriated funds to pay any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with any of the following covered Federal actions: the awarding of any Federal contract; the making of any Federal grant; the making of any Federal loan; the entering into of any cooperative agreement; or the modification of any Federal contract, grant, loan, or cooperative agreement.

(2) The Act also requires Contractors to furnish a disclosure if any funds other than Federal appropriated funds (including profit or fee received under a covered Federal transaction) have been paid, or will be paid, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with a Federal contract, grant, loan, or cooperative agreement.

(3) The prohibitions of the Act do not apply under the following conditions:

(i) Agency and legislative liaison by own employees.

(A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of a payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action if the payment is for agency and legislative liaison activities not directly related to a covered Federal action.

(B) For purposes of subdivision (b)(3)(i)(A) of this clause, providing any information specifically requested by an agency or Congress is permitted at any time.

(C) The following agency and legislative liaison activities are

permitted at any time where they are not related to a specific solicitation for any covered Federal action:

(1) Discussing with an agency the qualities and characteristics (including individual demonstrations) of the person's products or services, conditions or terms of sale, and service capabilities.

(2) Technical discussions and other activities regarding the application or adaptation of the person's products or services for an agency's use.

(D) The following agency and legislative liaison activities are permitted where they are prior to formal solicitation of any covered Federal action--

(1) Providing any information not specifically requested but necessary for an agency to make an informed decision about initiation of a covered Federal action;

(2) Technical discussions regarding the preparation of an unsolicited proposal prior to its official submission; and

(3) Capability presentations by persons seeking awards from an agency pursuant to the provisions of the Small Business Act, as amended by Pub. L. 95-507, and subsequent amendments.

(E) Only those services expressly authorized by subdivision (b)(3)(i)(A) of this clause are permitted under this clause.

(ii) Professional and technical services.

(A) The prohibition on the use of appropriated funds, in subparagraph (b)(1) of this clause, does not apply in the case of--

(1) A payment of reasonable compensation made to an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action, if payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action.

(2) Any reasonable payment to a person, other than an officer or employee of a person requesting or receiving a covered Federal action or an extension, continuation, renewal, amendment, or modification of a covered Federal action if the payment is for professional or technical services rendered directly in the preparation, submission, or negotiation of any bid, proposal, or application for that Federal action or for meeting requirements imposed by or pursuant to law as a condition for receiving that Federal action. Persons other than officers or employees of a person requesting or receiving a covered Federal action include consultants and trade associations.

(B) For purposes of subdivision (b)(3)(ii)(A) of this clause, "professional and technical services" shall be limited to advice and analysis directly applying any professional or technical discipline. For example, drafting of a legal document accompanying a bid or proposal by a lawyer is allowable. Similarly, technical advice provided by an engineer on the performance or operational capability of a piece of equipment rendered directly in the negotiation of a contract is allowable. However, communications with the intent to influence made by a professional (such as a licensed lawyer) or a technical person (such as a licensed accountant) are not allowable under this section unless they provide advice and analysis directly applying their professional or technical expertise and unless the advice or analysis is rendered directly and solely in the preparation, submission or

negotiation of a covered Federal action. Thus, for example, communications with the intent to influence made by a lawyer that do not provide legal advice or analysis directly and solely related to the legal aspects of his or her client's proposal, but generally advocate one proposal over another are not allowable under this section because the lawyer is not providing professional legal services. Similarly, communications with the intent to influence made by an engineer providing an engineering analysis prior to the preparation or submission of a bid or proposal are not allowable under this section since the engineer is providing technical services but not directly in the preparation, submission or negotiation of a covered Federal action.

(C) Requirements imposed by or pursuant to law as a condition for receiving a covered Federal award include those required by law or regulation and any other requirements in the actual award documents.

(D) Only those services expressly authorized by subdivisions (b)(3)(ii)(A)(1) and (2) of this clause are permitted under this clause.

(E) The reporting requirements of FAR 3.803(a) shall not apply with respect to payments of reasonable compensation made to regularly employed officers or employees of a person.

(c) Disclosure.

(1) The Contractor who requests or receives from an agency a Federal contract shall file with that agency a disclosure form, OMB standard form LLL, Disclosure of Lobbying Activities, if such person has made or has agreed to make any payment using nonappropriated funds (to include profits from any covered Federal action), which would be prohibited under subparagraph (b)(1) of this clause, if paid for with appropriated funds.

(2) The Contractor shall file a disclosure form at the end of each calendar quarter in which there occurs any event that materially affects the accuracy of the information contained in any disclosure form previously filed by such person under subparagraph (c)(1) of this clause. An event that materially affects the accuracy of the information reported includes--

(i) A cumulative increase of $25,000 or more in the amount paid or expected to be paid for influencing or attempting to influence a covered Federal action; or

(ii) A change in the person(s) or individual(s) influencing or attempting to influence a covered Federal action; or

(iii) A change in the officer(s), employee(s), or Member(s) contacted to influence or attempt to influence a covered Federal action.

(3) The Contractor shall require the submittal of a certification, and if required, a disclosure form by any person who requests or receives any subcontract exceeding $100,000 under the Federal contract.

(4) All subcontractor disclosure forms (but not certifications) shall be forwarded from tier to tier until received by the prime Contractor. The prime Contractor shall submit all disclosures to the Contracting Officer at the end of the calendar quarter in which the disclosure form is submitted by the subcontractor. Each subcontractor certification shall be retained in the subcontract file of the awarding Contractor.

(d) Agreement. The Contractor agrees not to make any payment prohibited by this clause.

(e) Penalties.

(1) Any person who makes an expenditure prohibited under paragraph (a) of this clause or who fails to file or amend the disclosure form to be filed or amended by paragraph (b) of this clause shall be subject to

civil penalties as provided for by 31 U.S.C. 1352. An imposition of a civil penalty does not prevent the Government from seeking any other remedy that may be applicable.

(2) Contractors may rely without liability on the representation made by their subcontractors in the certification and disclosure form.

(f) Cost allowability. Nothing in this clause makes allowable or reasonable any costs which would otherwise be unallowable or unreasonable. Conversely, costs made specifically unallowable by the requirements in this clause will not be made allowable under any other provision.

(End of clause)

9 52.203-7001 SPECIAL PROHIBITION ON EMPLOYMENT (JUN 1997)

(a) Definitions.
As used in this clause--

(1) "Arising out of a contract with the DoD" means any act in connection with--

(i) Attempting to obtain,

(ii) Obtaining, or

(iii) Performing a contract or first-tier subcontract of any agency, department, or component of the Department of Defense (DoD).

(2) "Conviction of fraud or any other felony" means any conviction for fraud or a felony in violation of state or Federal criminal statutes, whether entered on a verdict or plea, including a plea of nolo contendere, for which sentence has been imposed.

(3) "Date of conviction" means the date judgment was entered against the individual.

(b) 10 U.S.C. 2408 provides that any individual who is convicted after September 29, 1988, of fraud or any other felony arising out of a contract with the DoD is prohibited from:

(1) Working in a management or supervisory capacity on any DoD contract or first-tier subcontract;

(2) Serving on the board of directors of any DoD Contractor or first-tier subcontractor; or

(3) Serving as a consultant to any DoD Contractor or first-tier subcontractor.

(c) Unless waived, the prohibition in paragraph (b) applies for five years from the date of conviction.

(d) 10 U.S.C. 2408 further provides that a defense Contractor or first-tier subcontractor shall be subject to a criminal penalty of not more than $500,000 if convicted of knowingly--

(1) Employing a person under a prohibition specified in paragraph (b) of this clause; or

(2) Allowing such a person to serve on the board of directors of the Contractor or first-tier subcontractor.

(e) In addition to the criminal penalties contained in 10 U.S.C. 2408, the Government may consider other available remedies, such as--

(1) Suspension or debarment;

(2) Cancellation of the contract at no cost to the Government; or

(3) Termination of the contract for default.

(f) The Contractor may submit written requests for waiver of the prohibitions in paragraph (b) of this clause to the Contracting Officer. Requests shall clearly identify--

(1) The person involved;

(2) The nature of the conviction and resultant sentence or punishment

imposed;

(3) The reasons for the requested waiver; and,

(4) An explanation of why a waiver is in the interest of national security.

(g) The Contractor agrees to include the substance of this clause, appropriately modified to reflect the identity and relationship of the parties, in all first-tier subcontracts exceeding the simplified acquisition threshold in Part 2 of the Federal Acquisition Regulation, except those for commercial items or components.

(h) Pursuant to 10 U.S.C. 2408(c), defense contractors and subcontractors may obtain information as to whether a particular person has been convicted of fraud or any other felony arising out of a contract with the DoD by contacting The Office of Justice Programs, The Denial of Benefits Office, U.S. Department of Justice, telephone (202) 616-3507.

(End of clause)

10 52.203-7002 DISPLAY OF DOD HOTLINE POSTER (DEC 1991)

(a) The Contractor shall display prominently in common work areas within business segments performing work under Department of Defense (DoD) contracts, DoD Hotline Posters prepared by the DoD Office of the Inspector General.

(b) DoD Hotline Posters may be obtained from the DoD Inspector General, ATTN: Defense Hotline, 400 Army Navy Drive, Washington, DC 22202-2884.

(c) The Contractor need not comply with paragraph (a) of this clause if it has established a mechanism, such as a hotline, by which employees may report suspected instances of improper conduct, and instructions that encourage employees to make such reports.

(End of clause)

11 52.204-2 II SECURITY REQUIREMENTS (AUG 1996)--ALTERNATE II (APR 1984)

(a) This clause applies to the extent that this contract involves access to information classified "Confidential," "Secret," or "Top Secret."

(b) The Contractor shall comply with (1) the Security Agreement (DD Form 441), including the National Industrial Security Program Operating Manual (DOD 5220.22-M), and (2) any revisions to that manual, notice of which has been furnished to the Contractor.

(c) If, subsequent to the date of this contract, the security classification or security requirements under this contract are changed by the Government and if the changes cause an increase or decrease in security costs or otherwise affect any other term or condition of this contract, the contract shall be subject to an equitable adjustment as if the changes were directed under the Changes clause of this contract.

(d) The Contractor agrees to insert terms that conform substantially to the language of this clause, including this paragraph (d) but excluding any reference to the Changes clause of this contract, in all subcontracts under this contract that involve access to classified information.

(e) The Contractor shall be responsible for furnishing to each employee and for requiring each employee engaged on the work to display such identification as may be approved and directed by the Contracting Officer. All prescribed identification shall immediately

be delivered to the Contracting Officer, for cancellation upon the release of any employee. When required by the Contracting Officer, the Contractor shall obtain and submit fingerprints of all persons employed or to be employed on the project.

(End of clause)

12 52.204-4 PRINTING/COPYING DOUBLE-SIDED ON RECYCLED PAPER (JUN 1996)

(a) In accordance with Executive Order 12873, dated October 20, 1993, as amended by Executive Order 12995, dated March 25, 1996, the Offeror/Contractor is encouraged to submit paper documents, such as offers, letters, or reports, that are printed/copied double-sided on recycled paper that has at least 20 percent postconsumer material.

(b) The 20 percent standard applies to high-speed copier paper, offset paper, forms bond, computer printout paper, carbonless paper, file folders, white woven envelopes, and other uncoated printed and writing paper, such as writing and office paper, book paper, cotton fiber paper, and cover stock. An alternative to meeting the 20 percent postconsumer material standard is 50 percent recovered material content of certain industrial by-products.

(End of clause)

13 52.204-4004 REQUIRED CENTRAL CONTRACTOR REGISTRATION (MAR 1998 DFARS 252.204-7004)

(a) Definitions.

As used in this clause --

(1) Central Contractor Registration (CCR) database means the primary DoD repository for contractor information required for the conduct of business with DoD.

(2) Data Universal Numbering System (DUNS) number means the 9-digit number assigned by Dun and Bradstreet Information Services to identify unique business entities.

(3) Data Universal Numbering System +4 (DUNS+4) number means the DUNS number assigned by Dun and Bradstreet plus a 4-digit suffix that may be assigned by a parent (controlling) business concern. This 4-digit suffix may be assigned at the discretion of the parent business concern for such purposes as identifying subunits or affiliates of the parent business concern.

(4) Registered in the CCR database means that all mandatory information, including the DUNS number or the DUNS+4 number, if applicable, and the corresponding Commercial and Government Entity (CAGE) code, is in the CCR database, the DUNS number and the CAGE code have been validated; and all edits have been succesfully completed.

(b) (1) By submission of an offer, the offeror acknowledges the requirement that a prospective awardee must be registered in the CCR database prior to award, during performance, and through final payment of any contract resulting from this solicitation, except for

awards to foreign vendors for work to be performed outside the United States.

(2) The offeror shall provide its DUNS or, if applicable, its DUNS+4 number with its offer, which will be used by the Contracting Officer to verify that the offeror is registered in the CCR database.

(3) Lack of registration in the CCR database will make an offeror ineligible for award.

(4) DoD has established a goal of registering an applicant in the CCR database within 48 hours after receipt of a complete and accurate application via the Internet. However, registration of an applicant submitting an application through a method other than the Internet may take up to 30 days. Therefore, offerors that are not registered should consider applying for registration immediately upon receipt of this solicitation.

(c) The Contractor is responsible for the accuracy and completeness of the data within the CCR and for any liability resulting from the Government's reliance on inaccurate or incomplete data. To remain registered in the CCR database after the initial registration, the Contractor is required to confirm on an annual basis that its information in the CCR database is accurate and complete.

(d) Offerors and contractors may obtain information on registration and annual confirmation requirements by calling 1-888-227-2423 or via the Internet at http://ccr.edi.disa.mil

14 52.204-7003 CONTROL OF GOVERNMENT PERSONNEL WORK PRODUCT (APR 1992)

The Contractor's procedures for protecting against unauthorized disclosure of information shall not require Department of Defense employees or members of the Armed Forces to relinquish control of their work products, whether classified or not, to the Contractor.

(End of clause)

15 52.205-7000 PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS (DEC 1991)

(a) Definition.

"Cooperative agreement holder" means a State or local government; a private, nonprofit organization; a tribal organization (as defined in section 4(c) of the Indian Self-Determination and Education Assistance Act (Pub. L. 93-268; 25 U.S.C. 450(c))); or an economic enterprise (as defined in section 3(e) of the Indian Financing Act of 1974 (Pub. L. 93-362; 25 U.S.C. 1452(e))) whether such economic enterprise is organized for profit or nonprofit purposes; which has an agreement with the Defense Logistics Agency to furnish procurement technical assistance to business entities.

(b) The Contractor shall provide cooperative agreement holders, upon their request, with a list of those appropriate employees or offices responsible for entering into subcontracts under defense contracts. The list shall include the business address, telephone number, and area of responsibility of each employee or office.

(c) The Contractor need not provide the listing to a particular cooperative agreement holder more frequently than once a year.

(End of clause)

16 52.209-6 PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (JUL 1995)

(a) The Government suspends or debars Contractors to protect the Government's interest. The Contractor shall not enter into any subcontract in excess of $25,000 with a Contractor that is debarred, suspended, or proposed for debarment unless there is a compelling reason to do so.

(b) The Contractor shall require each proposed first-tier subcontractor, whose subcontract will exceed $25,000, to disclose to the Contractor, in writing, whether as of the time of award of the subcontract, the subcontractor, or its principals, is or is not debarred, suspended, or proposed for debarment by the Federal Government.

(c) A corporate officer or a designee of the Contractor shall notify the Contracting Officer, in writing, before entering into a subcontract with a party that is debarred, suspended, or proposed for debarment (see FAR 9.404 for information on the List of Parties Excluded from Federal Procurement and Nonprocurement Programs). The notice must include the following:

(1) The name of the subcontractor.

(2) The Contractor's knowledge of the reasons for the subcontractor being on the List of Parties Excluded from Federal Procurement and Nonprocurement Programs.

(3) The compelling reason(s) for doing business with the subcontractor notwithstanding its inclusion on the List of Parties Excluded from Federal Procurement and Nonprocurement Programs.

(4) The systems and procedures the Contractor has established to ensure that it is fully protecting the Government's interests when dealing with such subcontractor in view of the specific basis for the party's debarment, suspension, or proposed debarment.

(End of clause)

17 52.209-7000 ACQUISITION FROM SUBCONTRACTORS SUBJECT TO ON-SITE INSPECTION UNDER THE INTERMEDIATE-RANGE NUCLEAR FORCES (INF) TREATY (NOV 1995)

(a) The Contractor shall not deny consideration for a subcontract award under this contract to a potential subcontractor subject to on-site inspection under the INF Treaty, or a similar treaty, solely or in part because of the actual or potential presence of Soviet inspectors at the subcontractor's facility, unless the decision is approved by the Contracting Officer.

(b) The Contractor shall incorporate this clause, including this paragraph (b), in all solicitations and contracts exceeding the simplified acquisition threshold in Part 13 of the Federal Acquisition Regulation, except those for commercial items.

(End of clause)

18 52.211-18 VARIATION IN ESTIMATED QUANTITY (APR 1984)

If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. If the quantity variation is such as to cause an increase in the time necessary for completion, the Contractor may request, in writing, an extension of time, to be received by the Contracting Officer within 10 days from the beginning of the delay, or within such further period as may be granted by the Contracting Officer before the date of final settlement of the contract. Upon the receipt of a written request for an extension, the Contracting Officer shall ascertain the facts and make an adjustment for extending the completion date as, in the judgement of the Contracting Officer, is justified.

(End of clause)

19 52.214-26 AUDIT AND RECORDS--SEALED BIDDING (OCT 1997)

(a) As used in this clause, records includes books, documents, accounting procedures and practices, and other data, regardless of type and regardless of whether such items are in written form, in the form of computer data, or in any other form.

(b) Cost or pricing data. If the Contractor has been required to submit cost or pricing data in connection with the pricing of any modification to this contract, the Contracting Officer, or an authorized representative of the Contracting Officer, in order to evaluate the accuracy, completeness, and currency of the cost or pricing data, shall have the right to examine and audit all of the Contractor's records, including computations and projections, related to--

(1) The proposal for the modification;

(2) The discussions conducted on the proposal(s), including those related to negotiating;

(3) Pricing of the modification; or

(4) Performance of the modification.

(c) Comptroller General. In the case of pricing any modification, the Comptroller General of the United States, or an authorized representative, shall have the same rights as specified in paragraph (b) of this clause.

(d) Availability. The Contractor shall make available at its office at all reasonable times the materials described in reproduction, until 3 years after final payment under this contract, or for any other period specified in Subpart 4.7 of the Federal Acquisition Regulation (FAR). FAR Subpart 4.7, Contractor Records Retention, in effect on the data of this contract, is incorporated by reference in its entirety and made a part of this contract.

(1) If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement.

(2) Records pertaining to appeals under the Disputes clause or to litigation or the settlement of claims arising under or relating to the performance of this contract shall be made available until disposition of such appeals, litigation, or claims.

(e) The Contractor shall insert a clause containing all the provisions of this clause, including this paragraph (e), in all subcontracts expected to exceed the threshold in FAR 15.403-4(a)(1) for submission of cost or pricing data.

(End of clause)

20 52.214-27 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1997)

(a) This clause shall become operative only for any modification to this contract involving aggregate increases and/or decreases in costs, plus applicable profits, expected to exceed the threshold for the submission of cost or pricing data at FAR 15.403-4(a)(1), except that this clause does not apply to a modification if an exception under FAR 15.403-1(b) applies.

(b) If any price, including profit, negotiated in connection with any modification under this clause, was increased by any significant amount because (1) the Contractor or a subcontractor furnished cost or pricing data that were not complete, accurate, and current as certified in its Certificate of Current Cost or Pricing Data, (2) a subcontractor or prospective subcontractor furnished the Contractor cost or pricing data that were not complete, accurate, and current as certified in the Contractor's Certificate of Current Cost or Pricing Data, or (3) any of these parties furnished data of any description that were not accurate, the price shall be reduced accordingly and the contract shall be modified to reflect the reduction. This right to a price reduction is limited to that resulting from defects in data relating to modifications for which this clause becomes operative under paragraph (a) above.

(c) Any reduction in the contract price under paragraph (b) above due to defective data from a prospective subcontractor that was not subsequently awarded the subcontract shall be limited to the amount, plus applicable overhead and profit markup, by which (1) the actual subcontract or (2) the actual cost to the Contractor, if there was no subcontract, was less than the prospective subcontract cost estimate submitted by the Contractor; provided, that the actual subcontract price was not itself affected by defective cost or pricing data.

(d)(1) If the Contracting Officer determines under paragraph (b) of this clause that a price or cost reduction should be made, the Contractor agrees not to raise the following matters as a defense:

(i) The Contractor or subcontractor was a sole source supplier or otherwise was in a superior bargaining position and thus the price of the contract would not have been modified even if accurate, complete, and current cost or pricing data had been submitted.

(ii) The Contracting Officer should have known that the cost or pricing data in issue were defective even though the Contractor or subcontractor took no affirmative action to bring the character of the data to the attention of the Contracting Officer.

(iii) The contract was based on an agreement about the total cost of the contract and there was no agreement about the cost of each item procured under the contract.

(iv) The Contractor or subcontractor did not submit a Certificate of Current Cost or Pricing Data.

(2)(i) Except as prohibited by subdivision (d)(2)(ii) of this clause, an offset in an amount determined appropriate by the Contracting Officer based upon the facts shall be allowed against the amount of a contract price reduction if--

(A) The Contractor certifies to the Contracting Officer that, to the best of the Contractor's knowledge and belief, the Contractor is entitled to the offset in the amount requested; and

(B) The Contractor proves that the cost or pricing data were available before the date of agreement on the price of the contract

(or price of the modification) and that the data were not submitted before such date.

(ii) An offset shall not be allowed if--

(A) The understated data was known by the Contractor to be understated when the Certificate of Current Cost or Pricing Data was signed; or

(B) The Government proves that the facts demonstrate that the contract price would not have increased in the amount to be offset even if the available data had been submitted before the date of agreement on price.

(e) If any reduction in the contract price under this clause reduces the price of items for which payment was made prior to the date of the modification reflecting the price reduction, the Contractor shall be liable to and shall pay the United States at the time such overpayment is repaid--

(1) Simple interest on the amount of such overpayment to be computed from the date(s) of overpayment to the Contractor to the date the Government is repaid by the Contractor at the applicable underpayment rate effective for each quarter prescribed by the Secretary of the Treasury under 26 U.S.C. 6621(a)(2); and

(2) A penalty equal to the amount of the overpayment, if the Contractor or subcontractor knowingly submitted cost or pricing data which were incomplete, inaccurate, or noncurrent.

(End of clause)

21 52.214-28 SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS--SEALED BIDDING (OCT 1997)

(a) The requirements of paragraphs (b) and (c) of this clause shall (1) become operative only for any modification to this contract involving aggregate increases and/or decreases in costs, plus applicable profits, expected to exceed the threshold for submission of cost or pricing data at FAR 15.403-4(a)(1), and (2) be limited to such modifications.

(b) Before awarding any subcontract expected to exceed the threshold for submission of cost or pricing data at FAR 15.403-4(a)(1), on the date of agreement on price or the date of award, whichever is later; or before pricing any subcontract modifications involving aggregate increases and/or decreases in costs, plus applicable profits, expected to exceed the threshold for submission of cost or pricing data at FAR 15.403-4(a)(1), the Contractor shall require the subcontractor to submit cost or pricing data (actually or by specific identification in writing), unless an exception under FAR 15.403-1(b) applies.

(c) The Contractor shall require the subcontractor to certify in substantially the form prescribed in subsection FAR 15.406-2 that, to the best of its knowledge and belief, the data submitted under paragraph (b) of this clause were accurate, complete, and current as of the date of agreement on the negotiated price of the subcontract or subcontract modification.

(d) The Contractor shall insert the substance of this clause, including this paragraph (d), in each subcontract that, when entered into, exceeds the threshold for submission of cost or pricing data at FAR 15.403-4(a)(1).

(End of clause)

22 52.219-6 NOTICE OF TOTAL SMALL BUSINESS SET-ASIDE (JUL 1996)

(a) Definition.

"Small business concern," as used in this clause, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the size standards in this solicitation.

(b) General. (1) Offers are solicited only from small business concerns. Offers received from concerns that are not small business concerns shall be considered nonresponsive and will be rejected.

(2) Any award resulting from this solicitation will be made to a small business concern.

(c) Agreement. A small business concern submitting an offer in its own name agrees to furnish, in performing the contract, only end items manufactured or produced by small business concerns in the United States. The term "United States" includes its territories and possessions, the Commonwealth of Puerto Rico, the Trust Territory of the Pacific Islands, and the District of Columbia. If this procurement is processed under simplified acquisition procedures and the total amount of this contract does not exceed $25,000, a small business concern may furnish the product of any domestic firm. This paragraph does not apply in connection with construction or service contracts.

(End of clause)

23 52.219-8 UTILIZATION OF SMALL, SMALL DISADVANTAGED AND WOMEN-OWNED SMALL BUSINESS CONCERNS (JUN 1997)

(a) It is the policy of the United States that small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals and small business concerns owned and controlled by women shall have the maximum practicable opportunity to participate in performing contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems. It is further the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals and small business concerns owned and controlled by women.

(b) The Contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract performance. The Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of the Contractor's compliance with this clause.

(c) As used in this contract, the term "small business concern" shall mean a small business as defined pursuant to section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto. The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern (1) which is at least 51 percent unconditionally owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 per centum of the stock of which is unconditionally owned by one or more socially and economically disadvantaged individuals; and (2) whose management and daily business operations are controlled by one or more of such individuals. This term also means a small business concern that is at least 51 percent

unconditionally owned by an economically disadvantaged Indian tribe or Native Hawaiian Organization, or a publicly owned business having at least 51 percent of its stock unconditionally owned by one of these entities which has its management and daily business controlled by members of an economically disadvantaged Indian tribe or Native Hawaiian Organization, and which meets the requirements of 13 CFR 124. The Contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to section 8(a) of the Small Business Act. The Contractor shall presume that socially and economically disadvantaged entities also include Indian Tribes and Native Hawaiian Organizations.

(d) The term "small business concern owned and controlled by women" shall mean a small business concern (1) which is at least 51 percent owned by one or more women, or, in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women, and (2) whose management and daily business operations are controlled by one or more women; and

(e) Contractors acting in good faith may rely on written representations by their subcontractors regarding their status as a small business concern, a small business concern owned and controlled by socially and economically disadvantaged individuals or a small business concern owned and controlled by women.

(End of clause)

24 52.219-14 LIMITATIONS ON SUBCONTRACTING (DEC 1996)

(a) This clause does not apply to the unrestricted portion of a partial set-aside.

(b) By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for--

(1) Services (except construction). At least 50 percent of the cost of contract performance incurred for personnel shall be expended for employees of the concern.

(2) Supplies (other than procurement from a nonmanufacturer of such supplies). The concern shall perform work for at least 50 percent of the cost of manufacturing the supplies, not including the cost of materials.

(3) General construction. The concern will perform at least 15 percent of the cost of the contract, not including the cost of materials, with its own employees.

(4) Construction by special trade contractors. The concern will perform at least 25 percent of the cost of the contract, not including the cost of materials, with its own employees.

(End of clause)

25 52.222-3 CONVICT LABOR (AUG 1996)

The Contractor agrees not to employ in the performance of this contract any person undergoing a sentence of imprisonment which has been imposed by any court of a State, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, or the Trust Territory of the Pacific Islands. This limitation, however, shall not prohibit the employment by the

Contractor in the performance of this contract of persons on parole or probation to work at paid employment during the term of their sentence or persons who have been pardoned or who have served their terms. Nor shall it prohibit the employment by the Contractor in the performance of this contract of persons confined for violation of the laws of any of the States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, or the Trust Territory of the Pacific Islands who are authorized to work at paid employment in the community under the laws of such jurisdiction, if--

(a)(1) The worker is paid or is in an approved work training program on a voluntary basis;

(2) Representatives of local union central bodies or similar labor union organizations have been consulted;

(3) Such paid employment will not result in the displacement of employed workers, or be applied in skills, crafts, or trades in which there is a surplus of available gainful labor in the locality, or impair existing contracts for services; and

(4) The rates of pay and other conditions of employment will not be less than those paid or provided for work of a similar nature in the locality in which the work is being performed; and

(b) The Attorney General of the United States has certified that the work-release laws or regulations of the jurisdiction involved are in conformity with the requirements of Executive Order 11755, as amended by Executive Orders 12608 and 12943.

(End of clause)

26 52.222-4 CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (JUL 1995)

(a) Overtime requirements. No Contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics (see Federal Acquisition Regulation (FAR) 22.300) shall require or permit any such laborers or mechanics in any workweek in which the individual is employed on such work to work in excess of 40 hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than 1 1/2 times the basic rate of pay for all hours worked in excess of 40 hours in such workweek.

(b) Violation; liability for unpaid wages; liquidated damages. In the event of any violation of the provisions set forth in paragraph (a) of this clause, the Contractor and any subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such Contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic employed in violation of the provisions set forth in paragraph (a) of this clause in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of 40 hours without payment of the overtime wages required by provisions set forth in paragraph (a) of this clause.

(c) Withholding for unpaid wages and liquidated damages. The Contracting Officer shall upon his or her own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the Contractor or subcontractor under any such contract or any other Federal

contract with the same Prime Contractor, or any other Federally-assisted contract subject to the Contract Work Hours and Safety Standards Act which is held by the same Prime Contractor, such sums as may be determined to be necessary to satisfy any liabilities of such Contractor or subcontractor for unpaid wages and liquidated damages as provided in the provisions set forth in paragraph (b) of this clause.

(d) Payrolls and basic records. (1) The Contractor or subcontractor shall maintain payrolls and basic payroll records during the course of contract work and shall preserve them for a period of 3 years from the completion of the contract for all laborers and mechanics working on the contract. Such records shall contain the name and address of each such employee, social security number, correct classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid. Nothing in this paragraph shall require the duplication of records required to be maintained for construction work by Department of Labor regulations at 29 CFR 5.5(a)(3) implementing the Davis-Bacon Act.

(2) The records to be maintained under paragraph (d)(1) of this clause shall be made available by the Contractor or subcontractor for inspection, copying, or transcription by authorized representatives of the Contracting Officer or the Department of Labor. The Contractor or subcontractor shall permit such representatives to interview employees during working hours on the job.

(e) Subcontracts. The Contractor or subcontractor shall insert in any subcontracts exceeding $100,000, the provisions set forth in paragraphs (a) through (e) of this clause and also a clause requiring the subcontractors to include these provisions in any lower tier subcontracts. The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the provisions set forth in paragraphs (a) through (e) of this clause.

(End of clause)

27 52.222-6 DAVIS-BACON ACT (FEB 1995)

(a) All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (d) of this clause; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such period. Such laborers and mechanics shall be paid not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled Apprentices and Trainees. Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time

actually worked therein; provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classifications and wage rates conformed under paragraph (b) of this clause) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

(b)(1) The Contracting Officer shall require that any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The Contracting Officer shall approve an additional classification and wage rate and fringe benefits therefor only when all the following criteria have been met:

(i) The work to be performed by the classification requested is not performed by a classification in the wage determination.

(ii) The classification is utilized in the area by the construction industry.

(iii) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(iv) With respect to helpers, such a classification prevails in the area in which the work is performed.

(2) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the Contracting Officer agree on the classification and wage rate (including the amount designated for fringe benefits, where appropriate), a report of the action taken shall be sent by the Contracting Officer to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210. The Administrator or an authorized representative will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

(3) In the event the Contractor, the laborers or mechanics to be employed in the classification, or their representatives, and the Contracting Officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the Contracting Officer shall refer the questions, including the views of all interested parties and the recommendation of the Contracting Officer, to the Administrator of the Wage and Hour Division for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

(4) The wage rate (including fringe benefits, where appropriate) determined pursuant to subparagraphs (b)(2) and (b)(3) of this clause shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

(c) Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(d) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or

mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program; provided, that the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

(End of clause)

28 52.222-7 WITHHOLDING OF FUNDS (FEB 1988)

The Contracting Officer shall, upon his or her own action or upon written request of an authorized representative of the Department of Labor, withhold or cause to be withheld from the Contractor under this contract or any other Federal contract with the same Prime Contractor, or any other Federally assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same Prime Contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the Contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work, all or part of the wages required by the contract, the Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

(End of clause)

29 52.222-8 PAYROLLS AND BASIC RECORDS (FEB 1988)

(a) Payrolls and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of 3 years thereafter for all laborers and mechanics working at the site of the work. Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made, and actual wages paid. Whenever the Secretary of Labor has found, under paragraph (d) of the clause entitled Davis-Bacon Act, that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon Act, the Contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

(b)(1) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Contracting Officer. The payrolls submitted shall set out accurately and completely

all of the information required to be maintained under paragraph (a) of this clause. This information may be submitted in any form desired. Optional Form WH-347 (Federal Stock Number 029-005-00014-1) is available for this purpose and may be purchased from the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402. The Prime Contractor is responsible for the submission of copies of payrolls by all subcontractors.

(2) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify--

(i) That the payroll for the payroll period contains the information required to be maintained under paragraph (a) of this clause and that such information is correct and complete;

(ii) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as set forth in the Regulations, 29 CFR Part 3; and

(iii) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(3) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by subparagraph (b)(2) of this clause.

(4) The falsification of any of the certifications in this clause may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Section 3729 of Title 31 of the United States Code.

(c) The Contractor or subcontractor shall make the records required under paragraph (a) of this clause available for inspection, copying, or transcription by the Contracting Officer or authorized representatives of the Contracting Officer or the Department of Labor. The Contractor or subcontractor shall permit the Contracting Officer or representatives of the Contracting Officer or the Department of Labor to interview employees during working hours on the job. If the Contractor or subcontractor fails to submit required records or to make them available, the Contracting Officer may, after written notice to the Contractor, take such action as may be necessary to cause the suspension of any further payment. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

(End of clause)

30 52.222-9 APPRENTICES AND TRAINEES (FEB 1988)

(a) Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency recognized by the Bureau, or if a person is

employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program, but who has been certified by the Bureau of Apprenticeship and Training or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated in this paragraph, shall be paid not less than the applicable wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractor's registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination. In the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the Contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(b) Trainees. Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed in the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate in the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate in the wage determination for the classification of work actually performed. In addition, any trainee performing work on the job site in excess of the ratio permitted under the registered program

shall be paid not less than the applicable wage rate in the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the Contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(c) Equal employment opportunity. The utilization of apprentices, trainees, and journeymen under this clause shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30.

(End of clause)

31 52.222-10 COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988)

The Contractor shall comply with the requirements of 29 CFR Part 3, which are hereby incorporated by reference in this contract.

(End of clause)

32 52.222-11 SUBCONTRACTS (LABOR STANDARDS) (FEB 1988)

(a) The Contractor or subcontractor shall insert in any subcontracts the clauses entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act--Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Withholding of Funds, Subcontracts (Labor Standards), Contract Termination--Debarment, Disputes Concerning Labor Standards, Compliance with Davis-Bacon and Related Act Regulations, and Certification of Eligibility, and such other clauses as the Contracting Officer may, by appropriate instructions, require, and also a clause requiring subcontractors to include these clauses in any lower tier subcontracts. The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with all the contract clauses cited in this paragraph.

(b)(1) Within 14 days after award of the contract, the Contractor shall deliver to the Contracting Officer a completed Statement and Acknowledgment Form (SF 1413) for each subcontract, including the subcontractor's signed and dated acknowledgment that the clauses set forth in paragraph (a) of this clause have been included in the subcontract.

(2) Within 14 days after the award of any subsequently awarded subcontract the Contractor shall deliver to the Contracting Officer an updated completed SF 1413 for such additional subcontract.

(End of clause)

33 52.222-12 CONTRACT TERMINATION--DEBARMENT (FEB 1988)

A breach of the contract clauses entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act--Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Subcontracts (Labor Standards), Compliance with Davis-Bacon and Related Act Regulations, or Certification of Eligibility may be grounds for termination of the contract, and for debarment as a Contractor and subcontractor as provided in 29 CFR 5.12.

(End of clause)

34 52.222-13 COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988)

All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR Parts 1, 3, and 5 are hereby incorporated by reference in this contract.

(End of clause)

35 52.222-14 DISPUTES CONCERNING LABOR STANDARDS (FEB 1988)

The United States Department of Labor has set forth in 29 CFR Parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees of their representatives.

(End of clause)

36 52.222-15 CERTIFICATION OF ELIGIBILITY (FEB 1988)

(a) By entering into this contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(b) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

(c) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(End of clause)

37 52.222-26 EQUAL OPPORTUNITY (APR 1984)

(a) If, during any 12-month period (including the 12 months preceding the award of this contract), the Contractor has been or is awarded nonexempt Federal contracts and/or subcontracts that have an aggregate value in excess of $10,000, the Contractor shall comply with subparagraphs (b)(1) through (11) below. Upon request, the Contractor shall provide information necessary to determine the applicability of this clause.

(b) During performing this contract, the Contractor agrees as follows:

(1) The Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.

(2) The Contractor shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. This shall include, but not be limited to, (i) employment, (ii) upgrading, (iii) demotion, (iv) transfer, (v) recruitment or recruitment advertising, (vi) layoff or termination, (vii) rates of pay or other forms of compensation, and (viii) selection for training, including apprenticeship.

(3) The Contractor shall post in conspicuous places available to

employees and applicants for employment the notices to be provided by the Contracting Officer that explain this clause.

(4) The Contractor shall, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(5) The Contractor shall send, to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, the notice to be provided by the Contracting Officer advising the labor union or workers' representative of the Contractor's commitments under this clause, and post copies of the notice in conspicuous places available to employees and applicants for employment.

(6) The Contractor shall comply with Executive Order 11246, as amended, and the rules, regulations, and orders of the Secretary of Labor.

(7) The Contractor shall furnish to the contracting agency all information required by Executive Order 11246, as amended, and by the rules, regulations, and orders of the Secretary of Labor. Standard Form 100 (EEO-1), or any successor form, is the prescribed form to be filed within 30 days following the award, unless filed within 12 months preceding the date of award.

(8) The Contractor shall permit access to its books, records, and accounts by the contracting agency or the Office of Federal Contract Compliance Programs (OFCCP) for the purposes of investigation to ascertain the Contractor's compliance with the applicable rules, regulations, and orders.

(9) If the OFCCP determines that the Contractor is not in compliance with this clause or any rule, regulation, or order of the Secretary of Labor, this contract may be canceled, terminated, or suspended in whole or in part and the Contractor may be declared ineligible for further Government contracts, under the procedures authorized in Executive Order 11246, as amended. In addition, sanctions may be imposed and remedies invoked against the Contractor as provided in Executive Order 11246, as amended, the rules, regulations, and orders of the Secretary of Labor, or as otherwise provided by law.

(10) The Contractor shall include the terms and conditions of subparagraph (b)(1) through (11) of this clause in every subcontract or purchase order that is not exempted by the rules, regulations, or orders of the Secretary of Labor issued under Executive Order 11246, as amended, so that these terms and conditions will be binding upon each subcontractor or vendor.

(11) The Contractor shall take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing these terms and conditions, including sanctions for noncompliance; provided, that if the Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of any direction, the Contractor may request the United States to enter into the litigation to protect the interests of the United States.

(c) Notwithstanding any other clause in this contract, disputes relative to this clause will be governed by the procedures in 41 CFR 60-1.1.

(End of clause)
(R 7-103.18 1978 SEP)
(R 1-12.803-2)
(R 7-607.13 1978 SEP)

38 52.222-27 AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (APR 1984)

(a) Definitions.

"Covered area," as used in this clause, means the geographical area described in the solicitation for this contract.

"Director," as used in this clause, means Director, Office of Federal Contract Compliance Programs (OFCCP), United States Department of Labor, or any person to whom the Director delegates authority.

"Employer's identification number," as used in this clause, means the Federal Social Security number used on the employer's quarterly federal tax return, U.S. Treasury Department Form 941.

"Minority," as used in this clause, means--

(1) American Indian or Alaskan Native (all persons having origins in any of the original peoples of North America and maintaining identifiable tribal affiliations through membership and participation or community identification).

(2) Asian and Pacific Islander (all persons having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent, or the Pacific Islands);

(3) Black (all persons having origins in any of the black African racial groups not of Hispanic origin); and

(4) Hispanic (all persons of Mexican, Puerto Rican, Cuban, Central or South American, or other Spanish culture or origin, regardless of race).

(b) If the Contractor, or a subcontractor at any tier, subcontracts a portion of the work involving any construction trade, each such subcontract in excess of $10,000 shall include this clause and the Notice containing the goals for minority and female participation stated in the solicitation for this contract.

(c) If the Contractor is participating in a Hometown Plan (41 CFR 60-4) approved by the U.S. Department of Labor in a covered area, either individually or through an association, its affirmative action obligations on all work in the plan area (including goals) shall comply with the plan for those trades that have unions participating in the plan. Contractors must be able to demonstrate participation in, and compliance with, the provisions of the plan. Each Contractor or subcontractor participating in an approved plan is also required to comply with its obligations under the Equal Opportunity clause, and to make a good faith effort to achieve each goal under the plan in each trade in which it has employees. The overall good-faith performance by other Contractors or subcontractors toward a goal in an approved plan does not excuse any Contractor's or subcontractor's failure to make good-faith efforts to achieve the plan's goals.

(d) The Contractor shall implement the affirmative action procedures in subparagraphs (g)(1) through (16) of this clause. The goals stated in the solicitation for this contract are expressed as percentages of the total hours of employment and training of minority and female utilization that the Contractor should reasonably be able to achieve in each construction trade in which it has employees in the covered area. If the Contractor performs construction work in a geographical area located outside of the covered area, it shall apply the goals established for the geographical area where that work is actually performed. The Contractor is expected to make substantially uniform progress toward its goals in each craft.

(e) Neither the terms and conditions of any collective bargaining agreement, nor the failure by a union with which the Contractor has a collective bargaining agreement, to refer minorities or women shall excuse the Contractor's obligations under this clause, Executive Order 11246, as

amended, or the regulations thereunder.

(f) In order for the nonworking training hours of apprentices and trainees to be counted in meeting the goals, apprentices and trainees must be employed by the Contractor during the training period, and the Contractor must have made a commitment to employ the apprentices and trainees at the completion of their training, subject to the availability of employment opportunities. Trainees must be trained pursuant to training programs approved by the U.S. Department of Labor.

(g) The Contractor shall take affirmative action to ensure equal employment opportunity. The evaluation of the Contractor's compliance with this clause shall be based upon its effort to achieve maximum results from its actions. The Contractor shall document these efforts fully and implement affirmative action steps at least as extensive as the following:

(1) Ensure a working environment free of harassment, intimidation, and coercion at all sites and in all facilities where the Contractor's employees are assigned to work. The Contractor, if possible, will assign two or more women to each construction project. The Contractor shall ensure that foremen, superintendents, and other onsite supervisory personnel are aware of and carry out the Contractor's obligation to maintain such a working environment, with specific attention to minority or female individuals working at these sites or facilities.

(2) Establish and maintain a current list of sources for minority and female recruitment. Provide written notification to minority and female recruitment sources and community organizations when the Contractor or its unions have employment opportunities available, and maintain a record of the organizations' responses.

(3) Establish and maintain a current file of the names, addresses, and telephone numbers of each minority and female off-the-street applicant, referrals of minorities or females from unions, recruitment sources, or community organizations, and the action taken with respect to each individual. If an individual was sent to the union hiring hall for referral and not referred back to the Contractor by the union or, if referred back, not employed by the Contractor, this shall be documented in the file, along with whatever additional actions the Contractor may have taken.

(4) Immediately notify the Director when the union or unions with which the Contractor has a collective bargaining agreement has not referred back to the Contractor a minority or woman sent by the Contractor, or when the Contractor has other information that the union referral process has impeded the Contractor's efforts to meet its obligations.

(5) Develop on-the-job training opportunities and/or participate in training programs for the area that expressly include minorities and women, including upgrading programs and apprenticeship and trainee programs relevant to the Contractor's employment needs, especially those programs funded or approved by the Department of Labor. The Contractor shall provide notice of these programs to the sources compiled under subparagraph (g)(2) above.

(6) Disseminate the Contractor's equal employment policy by--

(i) Providing notice of the policy to unions and to training, recruitment, and outreach programs, and requesting their cooperation in assisting the Contractor in meeting its contract obligations;

(ii) Including the policy in any policy manual and in collective bargaining agreements;

(iii) Publicizing the policy in the company newspaper, annual report, etc.;

(iv) Reviewing the policy with all management personnel and with all

minority and female employees at least once a year; and

(v) Posting the policy on bulletin boards accessible to employees at each location where construction work is performed.

(7) Review, at least annually, the Contractor's equal employment policy and affirmative action obligations with all employees having responsibility for hiring, assignment, layoff, termination, or other employment decisions. Conduct review of this policy with all onsite supervisory personnel before initiating construction work at a job site. A written record shall be made and maintained identifying the time and place of these meetings, persons attending, subject matter discussed, and disposition of the subject matter.

(8) Disseminate the Contractor's equal employment policy externally by including it in any advertising in the news media, specifically including minority and female news media. Provide written notification to, and discuss this policy with, other Contractors and subcontractors with which the Contractor does or anticipates doing business.

(9) Direct recruitment efforts, both oral and written, to minority, female, and community organizations, to schools with minority and female students, and to minority and female recruitment and training organizations serving the Contractor's recruitment area and employment needs. Not later than 1 month before the date for acceptance of applications for apprenticeship or training by any recruitment source, send written notification to organizations such as the above, describing the openings, screening procedures, and tests to be used in the selection process.

(10) Encourage present minority and female employees to recruit minority persons and women. Where reasonable, provide after-school, summer, and vacation employment to minority and female youth both on the site and in other areas of the Contractor's workforce.

(11) Validate all tests and other selection requirements where required under 41 CFR 60-3.

(12) Conduct, at least annually, an inventory and evaluation at least of all minority and female personnel for promotional opportunities. Encourage these employees to seek or to prepare for, through appropriate training, etc., opportunities for promotion.

(13) Ensure that seniority practices job classifications, work assignments, and other personnel practices do not have a discriminatory effect by continually monitoring all personnel and employment-related activities to ensure that the Contractor's obligations under this contract are being carried out.

(14) Ensure that all facilities and company activities are nonsegregated except that separate or single-user toilet and necessary changing facilities shall be provided to assure privacy between the sexes.

(15) Maintain a record of solicitations for subcontracts for minority and female construction contractors and suppliers, including circulation of solicitations to minority and female contractor associations and other business associations.

(16) Conduct a review, at least annually, of all supervisors' adherence to and performance under the Contractor's equal employment policy and affirmative action obligations.

(h) The Contractor is encouraged to participate in voluntary associations that may assist in fulfilling one or more of the affirmative action obligations contained in subparagraphs (g)(1) through (16). The efforts of a contractor association, joint contractor-union, contractor-community, or similar group of which the contractor is a member and participant may be asserted as fulfilling one or more of its

obligations under subparagraphs (g)(1) through (16), provided the Contractor--

(1) Actively participates in the group;

(2) Makes every effort to ensure that the group has a positive impact on the employment of minorities and women in the industry;

(3) Ensures that concrete benefits of the program are reflected in the Contractor's minority and female workforce participation;

(4) Makes a good-faith effort to meet its individual goals and timetables; and

(5) Can provide access to documentation that demonstrates the effectiveness of actions taken on behalf of the Contractor. The obligation to comply is the Contractor's, and failure of such a group to fulfill an obligation shall not be a defense for the Contractor's noncompliance.

(i) A single goal for minorities and a separate single goal for women shall be established. The Contractor is required to provide equal employment opportunity and to take affirmative action for all minority groups, both male and female, and all women, both minority and nonminority. Consequently, the Contractor may be in violation of Executive Order 11246, as amended, if a particular group is employed in a substantially disparate manner.

(j) The Contractor shall not use goals or affirmative action standards to discriminate against any person because of race, color, religion, sex, or national origin.

(k) The Contractor shall not enter into any subcontract with any person or firm debarred from Government contracts under Executive Order 11246, as amended.

(l) The Contractor shall carry out such sanctions and penalties for violation of this clause and of the Equal Opportunity clause, including suspension, termination, and cancellation of existing subcontracts, as may be imposed or ordered under Executive Order 11246, as amended, and its implementing regulations, by the OFCCP. Any failure to carry out these sanctions and penalties as ordered shall be a violation of this clause and Executive Order 11246, as amended.

(m) The Contractor in fulfilling its obligations under this clause shall implement affirmative action procedures at least as extensive as those prescribed in paragraph (g) above, so as to achieve maximum results from its efforts to ensure equal employment opportunity. If the Contractor fails to comply with the requirements of Executive Order 11246, as amended, the implementing regulations, or this clause, the Director shall take action as prescribed in 41 CFR 60-4.8.

(n) The Contractor shall designate a responsible official to--

(1) Monitor all employment-related activity to ensure that the Contractor's equal employment policy is being carried out;

(2) Submit reports as may be required by the Government; and

(3) Keep records that shall at least include for each employee the name, address, telephone number, construction trade, union affiliation (if any), employee identification number, social security number, race, sex, status (e.g., mechanic, apprentice, trainee, helper, or laborer), dates of changes in status, hours worked per week in the indicated trade, rate of pay, and locations at which the work was performed. Records shall be maintained in an easily understandable and retrievable form; however, to the degree that existing records satisfy this requirement, separate records are not required to be maintained.

(o) Nothing contained herein shall be construed as a limitation upon the application of other laws that establish different standards of compliance or upon the requirements for the hiring of local or other

area residents (e.g., those under the Public Works Employment Act of 1977 and the Community Development Block Grant Program).

(End of clause)

(R 7-603.60 1978 SEP)

39 52.222-35 AFFIRMATIVE ACTION FOR DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (APR 1998)

(a) Definitions. As used in this clause--

"All employment openings" includes all positions except executive and top management, those positions that will be filled from within the contractor's organization, and positions lasting 3 days or less. This term includes full-time employment, temporary employment of more than 3 days' duration, and part-time employment.

"Appropriate office of the State employment service system" means the local office of the Federal-State national system of public employment offices with assigned responsibility to serve the area where the employment opening is to be filled, including the District of Columbia, Guam, the Commonwealth of Puerto Rico, and the Virgin Islands.

"Positions that will be filled from within the Contractor's organization" means employment openings for which no consideration will be given to persons outside the Contractor's organization (including any affiliates, subsidiaries, and parent companies) and includes any openings that the Contractor proposes to fill from regularly established "recall" lists. The exception does not apply to a particular opening once an employer decides to consider applicants outside of its organization.

"Veteran of the Vietnam era" means a person who--

(1) Served on active duty for a period of more than 180 days, any part of which occurred between August 5, 1964, and May 7, 1975, and was discharged or released therefrom with other than a dishonorable discharge; or

(2) Was discharged or released from active duty for a service-connected disability if any part of such active duty was performed between August 5, 1964, and May 7, 1975.

(b) General. (1) Regarding any position for which the employee or applicant for employment is qualified, the Contractor shall not discriminate against the individual because the individual is a disabled veteran or a veteran of the Vietnam era. The Contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified disabled veterans and veterans of the Vietnam era without discrimination based upon their disability or veterans' status in all employment practices such as--

(i) Employment;

(ii) Upgrading;

(iii) Demotion or transfer;

(iv) Recruitment;

(v) Advertising;

(vi) Layoff or termination;

(vii) Rates of pay or other forms of compensation; and

(viii) Selection for training, including apprenticeship.

(2) The Contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (the Act), as amended.

(c) Listing openings. (1) The Contractor agrees to list all employment openings existing at contract award or occurring during contract performance, at an appropriate office of the State employment service system in the locality where the opening occurs. These openings include those occurring at any Contractor facility, including one not connected with performing this contract. An independent corporate affiliate is exempt from this requirement.

(2) State and local government agencies holding Federal contracts of $10,000 or more shall also list all employment openings with the appropriate office of the State employment service.

(3) The listing of employment openings with the State employment service system is required at least concurrently with using any other recruitment source or effort and involves the obligations of placing a bona fide job order, including accepting referrals of veterans and nonveterans. This listing does not require hiring any particular job applicant or hiring from any particular group of job applicants and is not intended to relieve the Contractor from any requirements of Executive orders or regulations concerning nondiscrimination in employment.

(4) Whenever the Contractor becomes contractually bound to the listing terms of this clause, it shall advise the State employment service system, in each State where it has establishments, of the name and location of each hiring location in the State. As long as the Contractor is contractually bound to these terms and has so advised the State system, it need not advise the State system of subsequent contracts. The Contractor may advise the State system when it is no longer bound by this contract clause.

(d) Applicability. This clause does not apply to the listing of employment openings that occur and are filled outside the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, and the Virgin Islands.

(e) Postings. (1) The Contractor agrees to post employment notices stating (i) the Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified disabled veterans and veterans of the Vietnam era, and (ii) the rights of applicants and employees.

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Deputy Assistant Secretary for Federal Contract Compliance Programs, Department of Labor (Deputy Assistant Secretary), and provided by or through the Contracting Officer.

(3) The Contractor shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the Contractor is bound by the terms of the Act, and is committed to take affirmative action to employ, and advance in employment, qualified disabled veterans and veterans of the Vietnam era.

(f) Noncompliance. If the Contractor does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Act.

(g) Subcontracts. The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary. The Contractor shall act as specified by the Deputy Assistant Secretary to enforce the terms, including action for noncompliance.

(End of clause)

40 52.222-36 AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS (APR 1984)

(a) General. (1) Regarding any position for which the employee or applicant for employment is qualified, the Contractor shall not discriminate against any employee or applicant because of physical or mental handicap. The Contractor agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as--

(i) Employment;
(ii) Upgrading;
(iii) Demotion or transfer;
(iv) Recruitment;
(v) Advertising;
(vi) Layoff or termination;
(vii) Rates of pay or other forms of compensation; and
(viii) Selection for training, including apprenticeship.

(2) The Contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Rehabilitation Act of 1973 (29 U.S.C. 793) (the Act), as amended.

(b) Postings. (1) The Contractor agrees to post employment notices stating (i) the Contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped individuals and (ii) the rights of applicants and employees.

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Director, Office of Federal Contract Compliance Programs, Department of Labor (Director), and provided by or through the Contracting Officer.

(3) The Contractor shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the Contractor is bound by the terms of Section 503 of the Act and is committed to take affirmative action to employ, and advance in employment, qualified physically and mentally handicapped individuals.

(c) Noncompliance. If the Contractor does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Act.

(d) Subcontracts. The Contractor shall include the terms of this clause in every subcontract or purchase order in excess of $2,500 unless exempted by rules, regulations, or orders of the Secretary. The Contractor shall act as specified by the Director to enforce the terms, including action for noncompliance.

(End of clause)
(R 7-103.28 1976 MAY)
(R FPR Temp. Reg. 38)

41 52.222-37 EMPLOYMENT REPORTS ON DISABLED VETERANS AND VETERANS OF THE VIETNAM ERA (APR 1998)

(a) Unless the Contractor is a State or local government agency, the Contractor shall report at least annually, as required by the Secretary of Labor, on--

(1) The number of disabled veterans and the number of veterans of the Vietnam era in the workforce of the Contractor by job category and hiring location; and

(2) The total number of new employees hired during the period covered by the report, and of that total, the number of disabled veterans, and the number of veterans of the Vietnam era.

(b) The above items shall be reported by completing the form entitled "Federal Contractor Veterans' Employment Report VETS-100."

(c) Reports shall be submitted no later than March 31 of each year beginning March 31, 1988.

(d) The employment activity report required by paragraph (a)(2) of this clause shall reflect total hires during the most recent 12-month period as of the ending date selected for the employment profile report required by paragraph (a)(1) of this clause. Contractors may select an ending date: (1) As of the end of any pay period during the period January through March 1st of the year the report is due, or (2) as of December 31, if the contractor has previous written approval from the Equal Employment Opportunity Commission to do so for purposes of submitting the Employer Information Report EEO-1 (Standard Form 100).

(e) The count of veterans reported according to paragraph (a) of this clause shall be based on voluntary disclosure. Each Contractor subject to the reporting requirements at 38 U.S.C. 4212 shall invite all disabled veterans and veterans of the Vietnam era who wish to benefit under the affirmative action program at 38 U.S.C. 4212 to identify themselves to the Contractor. The invitation shall state that the information is voluntarily provided; that the information will be kept confidential; that disclosure or refusal to provide the information will not subject the applicant or employee to any adverse treatment; and that the information will be used only in accordance with the regulations promulgated under 38 U.S.C. 4212.

(f) Subcontracts. The Contractor shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary.

(End of clause)

42 52.223-2 CLEAN AIR AND WATER (APR 1984)

(a) "Air Act", as used in this clause, means the Clean Air Act (42 U.S.C. 7401, et seq.).

"Clean air standards," as used in this clause, means--

(1) Any enforceable rules, regulations, guidelines, standards, limitations, orders, controls, prohibitions, work practices, or other requirements contained in, issued under, or otherwise adopted under the Air Act or Executive Order 11738;

(2) An applicable implementation plan as described in section 110(d) of the Air Act (42 U.S.C. 7410(d));

(3) An approved implementation procedure or plan under section 111(c) or section 111(d) of the Air Act (42 U.S.C. 7411(c) or (d)); or

(4) An approved implementation procedure under section 112(d) of the Air Act (42 U.S.C. 7412(d)).

"Clean water standards," as used in this clause, means any enforceable limitation, control, condition, prohibition, standard, or other requirement promulgated under the Water Act or contained in a permit issued to a discharger by the EPA or by a State under an approved program, as authorized by section 402 of the Water Act (33 U.S.C. 1342), or by local government to ensure compliance with pretreatment regulations as required

by section 307 of the Water Act (33 U.S.C. 1317).

"Compliance," as used in this clause, means compliance with--

(1) Clean air or water standards; or

(2) A schedule or plan ordered or approved by a court of competent jurisdiction, the EPA, or an air or water pollution control agency under the requirements of the Air Act or Water Act and related regulations.

"Facility," as used in this clause, means any building, plant, installation, structure, mine, vessel or other floating craft, location, or site of operations, owned, leased, or supervised by a Contractor or subcontractor, used in the performance of a contract or subcontract. When a location or site of operations includes more than one building, plant, installation, or structure, the entire location or site shall be deemed a facility except when the Administrator, or a designee, of the EPA determines that independent facilities are collocated in one geographical area.

"Water Act," as used in this clause, means Clean Water Act (33 U.S.C. 1251, et seq.).

(b) The Contractor agrees--

(1) To comply with all the requirements of section 114 of the Clean Air Act (42 U.S.C. 7414) and section 308 of the Clean Water Act (33 U.S.C. 1318) relating to inspection, monitoring, entry, reports, and information, as well as other requirements specified in section 114 and section 308 of the Air Act and the Water Act, and all regulations and guidelines issued to implement those acts before the award of this contract;

(2) That no portion of the work required by this prime contract will be performed in a facility listed on the EPA List of Violating Facilities on the date when this contract was awarded unless and until the EPA eliminates the name of the facility from the listing;

(3) To use best efforts to comply with clean air standards and clean water standards at the facility in which the contract is being performed; and

(4) To insert the substance of this clause into any nonexempt subcontract, including this subparagraph (b)(4).

(End of clause)

(R 7-103.29 1975 OCT)

(R 1-1.2302)

43 52.223-5 POLLUTION PREVENTION AND RIGHT-TO-KNOW INFORMATION (APR 1998)

(a) Executive Order 12856 of August 3, 1993, requires Federal facilities to comply with the provisions of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11001-11050) and the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13101-13109).

(b) The Contractor shall provide all information needed by the Federal facility to comply with the emergency planning reporting requirements of Section 302 of EPCRA; the emergency notice requirements of Section 304 of EPCRA; the list of Material Data Safety Sheets required by Section 311 of EPCRA; the emergency and hazardous chemical inventory forms of Section 312 of EPCRA; the toxic chemical release inventory of Section 313 of EPCRA, which includes the reduction and recycling information required by Section 6607 of PPA; and the toxic chemical reduction goals requirements of Section 3-302 of Executive Order 12856.

(End of clause)

44 52.223-6 DRUG-FREE WORKPLACE (JAN 1997)

(a) Definitions. As used in this clause--

"Controlled substance" means a controlled substance in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812) and as further defined in regulation at 21 CFR 1308.11 - 1308.15.

"Conviction" means a finding of guilt (including a plea of nolo contendere) or imposition of sentence, or both, by any judicial body charged with the responsibility to determine violations of the Federal or State criminal drug statutes.

"Criminal drug statute" means a Federal or non-Federal criminal statute involving the manufacture, distribution, dispensing, possession or use of any controlled substance.

"Drug-free workplace" means the site(s) for the performance of work done by the Contractor in connection with a specific contract at which employees of the Contractor are prohibited from engaging in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance.

"Employee" means an employee of a Contractor directly engaged in the performance of work under a Government contract. "Directly engaged" is defined to include all direct cost employees and any other Contractor employee who has other than a minimal impact or involvement in contract performance.

"Individual" means an offeror/contractor that has no more than one employee including the offeror/contractor.

(b) The Contractor, if other than an individual, shall--within 30 days after award (unless a longer period is agreed to in writing for contracts of 30 days or more performance duration), or as soon as possible for contracts of less than 30 days performance duration--

(1) Publish a statement notifying its employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the Contractor's workplace and specifying the actions that will be taken against employees for violations of such prohibition;

(2) Establish an ongoing drug-free awareness program to inform such employees about--

(i) The dangers of drug abuse in the workplace;

(ii) The Contractor's policy of maintaining a drug-free workplace;

(iii) Any available drug counseling, rehabilitation, and employee assistance programs; and

(iv) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(3) Provide all employees engaged in performance of the contract with a copy of the statement required by subparagraph (b)(1) of this clause;

(4) Notify such employees in writing in the statement required by subparagraph (b)(1) of this clause that, as a condition of continued employment on this contract, the employee will--

(i) Abide by the terms of the statement; and

(ii) Notify the employer in writing of the employee's conviction under a criminal drug statute for a violation occurring in the workplace no later than 5 days after such conviction.

(5) Notify the Contracting Officer in writing within 10 days after receiving notice under subdivision (b)(4)(ii) of this clause, from an employee or otherwise receiving actual notice of such conviction. The notice shall include the position title of the employee;

(6) Within 30 days after receiving notice under subdivision (b)(4)(ii) of this clause of a conviction, take one of the following actions with

respect to any employee who is convicted of a drug abuse violation occurring in the workplace:

(i) Taking appropriate personnel action against such employee, up to and including termination; or

(ii) Require such employee to satisfactorily participate in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency, and

(7) Make a good faith effort to maintain a drug-free workplace through implementation of subparagraphs (b)(1) through (b)(6) of this clause.

(c) The Contractor, if an individual, agrees by award of the contract or acceptance of a purchase order, not to engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance while performing this contract.

(d) In addition to other remedies available to the Government, the Contractor's failure to comply with the requirements of paragraph (b) or (c) of this clause may, pursuant to FAR 23.506, render the Contractor subject to suspension of contract payments, termination of the contract for default, and suspension or debarment.

(End of clause)

45 52.223-14 TOXIC CHEMICAL RELEASE REPORTING (OCT 1996)

(a) Unless otherwise exempt, the Contractor, as owner or operator of a facility used in the performance of this contract, shall file by July 1 for the prior calendar year an annual Toxic Chemical Release Inventory Form (Form R) as described in sections 313(a) and (g) of the Emergency Planning and Community Right-to-Know Act of 1986 (EPCRA) (42 U.S.C. 11023(a) and (g)), and section 6607 of the Pollution Prevention Act of 1990 (PPA) (42 U.S.C. 13106). The Contractor shall file, for each facility subject to the Form R filing and reporting requirements, the annual Form R throughout the life of the contract.

(b) A Contractor owned or operated facility used in the performance of this contract is exempt from the requirement to file an annual Form R if--

(1) The facility does not manufacture, process, or otherwise use any toxic chemicals listed under section 313(c) of EPCRA, 42 U.S.C. 11023(c);

(2) The facility does not have 10 or more full-time employees as specified in section 313(b)(1)(A) of EPCRA, 42 U.S.C. 11023(b)(1)(A);

(3) The facility does not meet the reporting thresholds of toxic chemicals established under section 313(f) of EPCRA, 42 U.S.C. 11023(f) (including the alternate thresholds at 40 CFR 372.27, provided an appropriate certification form has been filed with EPA);

(4) The facility does not fall within Standard Industrial Classification Code (SIC) designations 20 through 39 as set forth in Section 19.102 of the Federal Acquisition Regulation (FAR); or

(5) The facility is not located within any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Northern Mariana Islands, or any other territory or possession over which the United States has jurisdiction.

(c) If the Contractor has certified to an exemption in accordance with one or more of the criteria in paragraph (b) of this clause, and after award of the contract circumstances change so that any of its owned or operated facilities used in the performance of this contract is no longer exempt--

(1) The Contractor shall notify the Contracting Officer; and

(2) The Contractor, as owner or operator of a facility used in the performance of this contract that is no longer exempt, shall (i) submit a Toxic Chemical Release Inventory Form (Form R) on or before July 1 for the prior calendar year during which the facility becomes eligible; and (ii) continue to file the annual Form R for the life of the contract for such facility.

(d) The Contracting Officer may terminate this contract or take other action as appropriate, if the Contractor fails to comply accurately and fully with the EPCRA and PPA toxic chemical release filing and reporting requirements.

(e) Except for acquisitions of commercial items as defined in FAR Part 2, the Contractor shall--

(1) For competitive subcontracts expected to exceed $100,000 (including all options), include a solicitation provision substantially the same as the provision at FAR 52.223-13, Certification of Toxic Chemical Release Reporting; and

(2) Include in any resultant subcontract exceeding $100,000 (including all options), the substance of this clause, except this paragraph (e).

(End of clause)

46 52.223-7004 DRUG-FREE WORK FORCE (SEP 1988)

(a) Definitions.

(1) "Employee in a sensitive position," as used in this clause, means an employee who has been granted access to classified information; or employees in other positions that the Contractor determines involve national security, health or safety, or functions other than the foregoing requiring a high degree of trust and confidence.

(2) "Illegal drugs," as used in this clause, means controlled substances included in Schedules I and II, as defined by section 802(6) of Title 21 of the United States Code, the possession of which is unlawful under Chapter 13 of that Title. The term "illegal drugs" does not mean the use of a controlled substance pursuant to a valid prescription or other uses authorized by law.

(b) The Contractor agrees to institute and maintain a program for achieving the objective of a drug-free work force. While this clause defines criteria for such a program, contractors are encouraged to implement alternative approaches comparable to the criteria in paragraph (c) that are designed to achieve the objectives of this clause.

(c) Contractor programs shall include the following, or appropriate alternatives:

(1) Employee assistance programs emphasizing high level direction, education, counseling, rehabilitation, and coordination with available community resources;

(2) Supervisory training to assist in identifying and addressing illegal drug use by Contractor employees;

(3) Provision for self-referrals as well as supervisory referrals to treatment with maximum respect for individual confidentiality consistent with safety and security issues;

(4) Provision for identifying illegal drug users, including testing on a controlled and carefully monitored basis. Employee drug testing programs shall be established taking account of the following:

(i) The Contractor shall establish a program that provides for testing for the use of illegal drugs by employees in sensitive positions. The extent of and criteria for such testing shall be

determined by the Contractor based on considerations that include the nature of the work being performed under the contract, the employee's duties, the efficient use of Contractor resources, and the risks to health, safety, or national security that could result from the failure of an employee adequately to discharge his or her position.

(ii) In addition, the Contractor may establish a program for employee drug testing--

(A) When there is a reasonable suspicion that an employee uses illegal drugs; or

(B) When an employee has been involved in an accident or unsafe practice;

(C) As part of or as a follow-up to counseling or rehabilitation for illegal drug use;

(D) As part of a voluntary employee drug testing program.

(iii) The Contractor may establish a program to test applicants for employment for illegal drug use.

(iv) For the purpose of administering this clause, testing for illegal drugs may be limited to those substances for which testing is prescribed by section 2.1 of Subpart B of the "Mandatory Guidelines for Federal Workplace Drug Testing Programs" (53 FR 11980 (April 11 1988)), issued by the Department of Health and Human Services.

(d) Contractors shall adopt appropriate personnel procedures to deal with employees who are found to be using drugs illegally. Contractors shall not allow any employee to remain on duty or perform in a sensitive position who is found to use illegal drugs until such time as the Contractor, in accordance with procedures established by the Contractor, determines that the employee may perform in such a position.

(e) The provisions of this clause pertaining to drug testing programs shall not apply to the extent they are inconsistent with state or local law, or with an existing collective bargaining agreement; provided that with respect to the latter, the Contractor agrees that those issues that are in conflict will be a subject of negotiation at the next collective bargaining session.

(End of clause)

47 52.225-5 BUY AMERICAN ACT--CONSTRUCTION MATERIALS (JUN 1997)

(a) The Buy American Act (41 U.S.C. 10) provides that the Government give preference to domestic construction material.

"Components," means those articles, materials, and supplies incorporated directly into construction materials.

"Construction materials," means an article, material, or supply brought to the construction site for incorporation into the building or work. Construction material also includes an item brought to the site pre-assembled from articles, materials or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, which are discrete systems incorporated into a public building or work and which are produced as a complete system, shall be evaluated as a single and distinct construction material regardless of when or how the individual parts or components of such systems are delivered to the construction site.

"Domestic construction material," means (1) an unmanufactured construction material mined or produced in the United States, or (2) a construction material manufactured in the United States, if the cost of its components mined, produced, or manufactured in the United States exceeds 50 percent of the cost of all its components. Components of foreign origin of

the same class or kind as the construction materials determined to be unavailable pursuant to subparagraph 25.202(a)(2) of the Federal Acquisition Regulation (FAR) shall be treated as domestic.

(b)(1) The Buy American Act (41 U.S.C. 10a-10d) requires that only domestic construction material be used in performing this contract, except as provided in paragraphs (b)(2) and (b)(3) of this clause.

(2) This requirement does not apply to the excepted construction material or components listed by the Government as follows:
%%Insert list of applicable accepted materials or indicate "none"
None

(3) Other foreign construction material may be added to the list in paragraph (b)(2) of this clause if the Government determines that--

(i) The cost would be unreasonable (the cost of a particular domestic construction material shall be determined to be unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent, unless the agency head determines a higher percentage to be appropriate);

(ii) The application of the restriction of the Buy American Act to a particular construction material would be impracticable or inconsistent with the public interest; or

(iii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available commercial quantities of a satisfactory quality.

(4) The Contractor agrees that only domestic construction material will be used by the Contractor, subcontractors, material men, and suppliers in the performance of this contract, except for foreign construction materials, if any, listed in paragraph (b)(2) of this clause.

(c) Request for determination. (1) Contractors requesting to use foreign construction material under paragraph (b)(3) of this clause shall provide adequate information for Government evaluation of the request for a determination regarding the inapplicability of the Buy American Act. Each submission shall include a description of the foreign and domestic construction materials, including unit of measure, quantity, price, time of delivery or availability, location of the construction project, name and address of the proposed contractor, and a detailed justification of the reason for use of foreign materials cited in accordance with paragraph (b)(3) of this clause. A submission based on unreasonable cost shall include a reasonable survey of the market and a completed price comparison table in the format in paragraph (d) of this clause. The price of construction material shall include all delivery costs to the construction site and any applicable duty (whether or not a duty-free certificate may be issued).

(2) If the Government determines after contract award that an exception to the Buy American Act applies, the contract shall be modified to allow use of the foreign construction material, and adequate consideration shall be negotiated. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration shall not be less than the differential established in paragraph (b)(3)(i) of this clause.

(3) If the Government does not determine that an exception to the Buy American Act applies, the use of that particular foreign construction material will be a failure to comply with the Act.

(d) For evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the following information and any applicable supporting data based on the survey of suppliers shall be included in the request:

Foreign and Domestic Construction Materials Price Comparison

| Construction material description | Unit of measure | Quantity | Price (dollars) + |
|---|---|---|---|
| Item 1: | | | |
| Foreign construction material....... | ......... | .......... | ........... |
| Domestic construction material...... | ......... | .......... | ........... |
| Item 2: | | | |
| Foreign construction material....... | ......... | .......... | ........... |
| Domestic construction material...... | ......... | .......... | ........... |

List name, address, telephone number, and contact for suppliers surveyed. Attach copy of response; if oral, attach summary. Include other applicable supporting information.

+ Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued).

(End of clause)

48 52.225-11 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (OCT 1996)

(a) Unless advance written approval of the Contracting Officer is obtained, the Contractor shall not acquire, for use in the performance of this contract, any supplies or services originating from sources within, or that were located in or transported from or through, countries whose products are banned from importation into the United States under regulations of the Office of Foreign Assets Control, Department of the Treasury. Those countries include Cuba, Iran, Iraq, Libya, and North Korea.

(b) The Contractor shall not acquire for use in the performance of this contract any supplies or services from entities controlled by the Government of Iraq.

(c) The Contractor agrees to insert the provisions of this clause, including this paragraph (c), in all subcontracts hereunder.

(End of clause)

49 52.225-7012 PREFERENCE FOR CERTAIN DOMESTIC COMMODITIES (SEP 1997)

(a) The Contractor agrees to deliver under this contract only such of the following articles that have been grown, reprocessed, reused, or produced in the United States, its possessions, or Puerto Rico--

(1) Food;
(2) Clothing;
(3) Tents, tarpaulins, or covers;
(4) Cotton and other natural fiber products;
(5) Woven silk or woven silk blends;
(6) Spun silk yarn for cartridge cloth;
(7) Synthetic fabric, and coated synthetic fabric, including all textile fibers and yarns that are for use in such fabrics;
(8) Canvas products;
(9) Wool (whether in the form of fiber or yarn or contained in fabrics, materials, or manufactured articles); or
(10) Any item of individual equipment (Federal Supply Class 8465) manufactured from or containing such fibers, yarns, fabrics, or materials.

(b) This clause does not apply--

(1) To supplies listed in FAR 25.108(d)(1), or other supplies for which the Government has determined that a satisfactory quality and sufficient quantity cannot be acquired as and when needed at U.S. market prices;

(2) To foods which have been manufactured or processed in the United States, its possessions, or Puerto Rico;

(3) To chemical warfare protective clothing produced in the countries listed in subsection 225.872-1 of the Defense FAR Supplement; or

(4) To purchase of fibers and yarns that are for use in synthetic fabric or coated synthetic fabric (but not the purchase of the synthetic or coated synthetic fabric itself), if such fabric is to be used as a component of an end item that is not a textile product. Examples of textile products, made in whole or in part of fabric, include--

(i) Draperies, floor coverings, furnishings, and bedding (Federal Supply Group 72, Household and Commercial Furnishings and Appliances);

(ii) Items made in whole or in part of fabric in Federal Supply Group 83, Textile/leather/furs/apparel/findings/tents/flags, or Federal Supply Group 84, Clothing, Individual Equipment and Insignia;

(iii) Upholstered seats (whether for household, office, or other use); and

(iv) Parachutes (Federal Supply Class 1670).

(End of clause)

50 52.225-7031 SECONDARY ARAB BOYCOTT OF ISRAEL (JUN 1992)

(a) Definitions.

As used in this clause--

(1) "Foreign person" means any person other than a United States person as defined in section 16(2) of the Export Administration Act of 1979 (50 U.S.C. App. Sec 2415).

(2) "United States person" is defined in section 16(2) of the Export Administration Act of 1979 and means any United States resident or national (other than an individual resident outside the United States and employed by other than a United States person), any domestic concern (including any permanent domestic establishment of any foreign concern), and any foreign subsidiary or affiliate (including any permanent foreign establishment) of any domestic concern which is controlled in fact by such domestic concern, as determined under regulations of the President.

(b) Certification.

By submitting this offer, the Offeror, if a foreign person, company or entity, certifies that it--

(1) Does not comply with the Secondary Arab Boycott of Israel; and

(2) Is not taking or knowingly agreeing to take any action, with respect to the Secondary Boycott of Israel by Arab countries, which 50 U.S.C. App. Sec 2407(a) prohibits a United States person from taking.

(End of clause)

51 52.227-1 AUTHORIZATION AND CONSENT (JUL 1995)

(a) The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, of any invention described in and covered by a United States patent (1) embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract or (2) used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions

forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance. The entire liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

(b) The Contractor agrees to include, and require inclusion of, this clause, suitably modified to identify the parties, in all subcontracts at any tier for supplies or services (including construction, architect-engineer services, and materials, supplies, models, samples, and design or testing services expected to exceed the simplified acquisition threshold); however, omission of this clause from any subcontract, including those at or below the simplified acquisition threshold, does not affect this authorization and consent.

(End of clause)

52 52.227-2 NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (AUG 1996)

(a) The Contractor shall report to the Contracting Officer, promptly and in reasonable written detail, each notice or claim of patent or copyright infringement based on the performance of this contract of which the Contractor has knowledge.

(b) In the event of any claim or suit against the Government on account of any alleged patent or copyright infringement arising out of the performance of this contract or out of the use of any supplies furnished or work or services performed under this contract, the Contractor shall furnish to the Government, when requested by the Contracting Officer, all evidence and information in possession of the Contractor pertaining to such suit or claim. Such evidence and information shall be furnished at the expense of the Government except where the Contractor has agreed to indemnify the Government.

(c) The Contractor agrees to include, and require inclusion of, this clause in all subcontracts at any tier for supplies or services (including construction and architect-engineer subcontracts and those for material, supplies, models, samples, or design or testing services) expected to exceed the simplified acquisition threshold at FAR 2.101.

(End of clause)

53 52.227-4 PATENT INDEMNITY--CONSTRUCTION CONTRACTS (APR 1984)

Except as otherwise provided, the Contractor agrees to indemnify the Government and its officers, agents, and employees against liability, including costs and expenses, for infringement upon any United States patent (except a patent issued upon an application that is now or may hereafter be withheld from issue pursuant to a Secrecy Order under 35 U.S.C. 181) arising out of performing this contract or out of the use or disposal by or for the account of the Government of supplies furnished or work performed under this contract.

(End of clause)

(R 7-602.16 1964 JUN)

54 52.227-7033 RIGHTS IN SHOP DRAWINGS (APR 1966)

(a) Shop drawings for construction means drawings, submitted to the Government by the Construction Contractor, subcontractor or any lower-tier subcontractor pursuant to a construction contract, showing in detail (i) the proposed fabrication and assembly of structural elements and (ii) the installation (i.e., form, fit, and attachment details) of materials or equipment. The Government may duplicate, use, and disclose in any manner and for any purpose shop drawings delivered under this contract.

(b) This clause, including this paragraph (b), shall be included in all subcontracts hereunder at any tier.

(End of clause)

55 52.228-2 ADDITIONAL BOND SECURITY (OCT 1997)

The Contractor shall promptly furnish additional security required to protect the Government and persons supplying labor or materials under this contract if--

(a) Any surety upon any bond, or issuing financial institution for other security, furnished with this contract becomes unacceptable to the Government;

(b) Any surety fails to furnish reports on its financial condition as required by the Government;

(c) The contract price is increased so that the penal sum of any bond becomes inadequate in the opinion of the Contracting Officer; or

(d) An irrevocable letter of credit (ILC) used as security will expire before the end of the period of required security. If the Contractor does not furnish an acceptable extension or replacement ILC, or other acceptable substitute, at least 30 days before an ILC's scheduled expiration, the Contracting officer has the right to immediately draw on the ILC.

(End of clause)

56 52.228-5 INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

(a) The Contractor shall, at its own expense, provide and maintain during the entire performance of this contract, at least the kinds and minimum amounts of insurance required in the Schedule or elsewhere in the contract.

(b) Before commencing work under this contract, the Contractor shall notify the Contracting Officer in writing that the required insurance has been obtained. The policies evidencing required insurance shall contain an endorsement to the effect that any cancellation or any material change adversely affecting the Government's interest shall not be effective (1) for such period as the laws of the State in which this contract is to be performed prescribe, or (2) until 30 days after the insurer or the Contractor gives written notice to the Contracting Officer, whichever period is longer.

(c) The Contractor shall insert the substance of this clause, including this paragraph (c), in subcontracts under this contract that require work on a Government installation and shall require subcontractors to provide and maintain the insurance required in the Schedule or elsewhere in the contract. The Contractor shall maintain a copy of all subcontractors' proofs of required insurance, and shall make copies available to the Contracting Officer upon request.

(End of clause)

57 52.228-11 PLEDGES OF ASSETS (FEB 1992)

(a) Offerors shall obtain from each person acting as an individual surety on a bid guarantee, a performance bond, or a payment bond--

(1) Pledge of assets; and

(2) Standard Form 28, Affidavit of Individual Surety.

(b) Pledges of assets from each person acting as an individual surety shall be in the form of--

(1) Evidence of an escrow account containing cash, certificates of deposit, commercial or Government securities, or other assets described in FAR 28.203-2 (except see 28.203-2(b)(2) with respect to Government securities held in book entry form) and/or;

(2) A recorded lien on real estate. The offeror will be required to provide--

(i) Evidence of title in the form of a certificate of title prepared by a title insurance company approved by the United States Department of Justice. This title evidence must show fee simple title vested in the surety along with any concurrent owners; whether any real estate taxes are due and payable; and any recorded encumbrances against the property, including the lien filed in favor of the Government as required by FAR 28.203-3(d);

(ii) Evidence of the amount due under any encumbrance shown in the evidence of title;

(iii) A copy of the current real estate tax assessment of the property or a current appraisal dated no earlier than 6 months prior to the date of the bond, prepared by a professional appraiser who certifies that the appraisal has been conducted in accordance with the generally accepted appraisal standards as reflected in the Uniform Standards of Professional Appraisal Practice, as promulgaged by the Appraisal Foundation.

(End of clause)

58 52.228-14 IRREVOCABLE LETTER OF CREDIT (OCT 1997)

(a) "Irrevocable letter of credit" (ILC), as used in this clause, means a written commitment by a federally insured financial institution to pay all or part of a stated amount of money, until the expiration date of the letter, upon presentation by the Government (the beneficiary) of a written demand therefor. Neither the financial institution nor the offeror/Contractor can revoke or condition the letter of credit.

(b) If the offeror intends to use an ILC in lieu of a bid bond, or to secure other types of bonds such as performance and payment bonds, the letter of credit and letter of confirmation formats in paragraphs (e) and (f) of this clause shall be used.

(c) The letter of credit shall be irrevocable, shall require presentation of no document other than a written demand and the ILC (including confirming letter, if any), shall be issued/confirmed by an acceptable federally insured financial institution as provided in paragraph (d) of this clause, and--

(1) If used as a bid guarantee, the ILC shall expire no earlier than 60 days after the close of the bid acceptance period;

(2) If used as an alternative to corporate or individual sureties as security for a performance or payment bond, the offeror/Contractor may submit an ILC with an initial expiration date estimated to cover the

entire period for which financial security is required or may submit an ILC with an initial expiration date that is a minimum period of one year from the date of issuance. The ILC shall provide that, unless the issuer provides the beneficiary written notice of non-renewal at least 60 days in advance of the current expiration date, the ILC is automatically extended without amendment for one year from the expiration date, or any future expiration date, until the period of required coverage is completed and the Contracting Officer provides the financial institution with a written statement waiving the right to payment. The period of required coverage shall be:

(i) For contracts subject to the Miller Act, the later of--

(A) One year following the expected date of final payment;

(B) For performance bonds only, until completion of any warranty period; or

(C) For payment bonds only, until resolution of all claims filed against the payment bond during the one-year period following final payment.

(ii) For contracts not subject to the Miller Act, the later of--

(A) 90 days following final payment; or

(B) For performance bonds only, until completion of any warranty period.

(d) Only federally insured financial institutions rated investment grade or higher shall issue or confirm the ILC. The offeror/Contractor shall provide the Contracting Officer a credit rating that indicates the financial institution has the required rating(s) as of the date of issuance of the ILC. Unless the financial institution issuing the ILC had letter of credit business of at least $25 million in the past year, ILCs over $5 million must be confirmed by another acceptable financial institution that had letter of credit business of at least $25 million in the past year.

(e) The following format shall be used by the issuing financial institution to create an ILC:

(Issuing Financial Institution's Letterhead or Name and Address)

Issue Date ____________________

Irrevocable Letter of Credit No. ____________________

Account party's name ____________________

Account party's address ____________________

For Solicitation No. ____________________

(For reference only)

TO: (U.S. Government agency)

(U.S. Government agency's address)

1. We hereby establish this irrevocable and transferable Letter of Credit in your favor for one or more drawings up to United States $________. This Letter of Credit is payable at (issuing financial institution's and, if any, confirming financial institution's) office at (issuing financial institution's address and, if any, confirming financial institution's address) and expires with our close of business on ________, or any automatically extended expiration date.

2. We hereby undertake to honor your or the transferee's sight draft(s) drawn on the issuing or, if any, the confirming financial institution, for all or any part of this credit if presented with this Letter of Credit and confirmation, if any, at the office specified in paragraph 1 of this Letter of Credit on or before the expiration date or any automatically extended expiration date.

3. (This paragraph is omitted if used as a bid guarantee, and subsequent paragraphs are renumbered.) It is a condition of this Letter of Credit that it is deemed to be automatically extended without amendment for one year from the expiration date hereof, or any future

expiration date, unless at least 60 days prior to any expiration date, we notify you or the transferee by registered mail, or other receipted means of delivery, that we elect not to consider this Letter of Credit renewed for any such additional period. At the time we notify you, we also agree to notify the account party (and confirming financial institution, if any) by the same means of delivery.

4. This Letter of Credit is transferable. Transfers and assignments of proceeds are to be effected without charge to either the beneficiary or the transferee/assignee of proceeds. Such transfer or assignment shall be only at the written direction of the Government (the beneficiary) in a form satisfactory to the issuing financial institution and the confirming financial institution, if any.

5. This Letter of Credit is subject to the Uniform Customs and Practice (UCP) for Documentary Credits, 1993 Revision, International Chamber of Commerce Publication No. 500, and to the extent not inconsistent therewith, to the laws of ____________ (state of confirming financial institution, if any, otherwise state of issuing financial institution).

6. If this credit expires during an interruption of business of this financial institution as described in Article 17 of the UCP, the financial institution specifically agrees to effect payment if this credit is drawn against within 30 days after the resumption of our business.

Sincerely,
(Issuing financial institution)

(f) The following format shall be used by the financial institution to confirm an ILC:

(Confirming Financial Institution's Letterhead or Name and Address)

Date ________________ 19______

Our Letter of Credit Advice Number ______________________________

Beneficiary: ______________________________
(U.S. Government agency)

Issuing Financial Institution: ______________________________

Issuing Financial Institution's LC No.: ______________________________

Gentlemen:

1. We hereby confirm the above indicated Letter of Credit, the original of which is attached, issued by __________ (name of issuing financial institution) for drawings of up to United States dollars __________/U.S. $__________ and expiring with our close of business on __________ (the expiration date), or any automatically extended expiration date.

2. Draft(s) drawn under the Letter of Credit and this Confirmation are payable at our office located at ____________.

3. We hereby undertake to honor sight draft(s) drawn under and presented with the Letter of Credit and this Confirmation at our offices as specified herein.

4. (This paragraph is omitted if used as a bid guarantee, and subsequent paragraphs are renumbered.) It is a condition of this confirmation that it be deemed automatically extended without amendment for one year from the expiration date hereof, or any automatically extended expiration date, unless:

(a) At least 60 days prior to any such expiration date, we shall notify the Contracting Officer, or the transferee and the issuing financial institution, by registered mail or other receipted means of delivery, that we elect not to consider this confirmation extended for any such additional period; or

(b) The issuing financial institution shall have exercised its right to notify you or the transferee, the account party, and ourselves, of

its election not to extend the expiration date of the Letter of Credit.

5. This confirmation is subject to the Uniform Customs and Practice (UCP) for Documentary Credits, 1993 Revision, International Chamber of Commerce Publication No. 500, and to the extent not inconsistent therewith, to the laws of __________ (state of confirming financial institution).

6. If this confirmation expires during an interruption of business of this financial institution as described in Article 17 of the UCP, we specifically agree to effect payment if this credit is drawn against within 30 days after the resumption of our business.

Sincerely,

(Confirming financial institution)

(g) The following format shall be used by the Contracting Officer for a sight draft to draw on the Letter of Credit:

SIGHT DRAFT

______________________________________________

(City, State)

______________________, 19______

______________________________________________

(Name and address of financial institution)

Pay to the order of ______________________________________________

(Beneficiary Agency)

the sum of United States $ ______________________________________________

This draft is drawn under ______________________________________________

Irrevocable Letter of Credit No. ______________________________________________

By: ______________________________________________

(Beneficiary Agency)

(End of clause)

59 52.228-15 Performance and Payment Bonds--Construction (SEP 1996)

(a) Definitions. As used in this clause--

Contract price means the award price of the contract or, for requirements contracts, the price payable for the estimated quantity; or for indefinite-delivery type contracts, the price payable for the specified minimum quantity.

(b) Unless the resulting contract price is $100,000 or less, the successful offeror shall be required to furnish performance and payment bonds to the Contracting Officer as follows:

(1) Performance Bonds (Standard Form 25):

(i) The penal amount of performance bonds shall be 100 percent of the original contract price.

(ii) The Government may require additional performance bond protection when the contract price is increased. The increase in protection shall generally equal 100 percent of the increase in contract price.

(iii) The Government may secure additional protection by directing the Contractor to increase the penal amount of the existing bond or to obtain an additional bond.

(2) Payment Bonds (Standard Form 25-A):

(i) The penal amount of payment bonds shall equal--

(A) 50 percent of the contract price if the contract price is not more than $1 million;

(B) 40 percent of the contract price if the contract price is more than $1 million but not more than $5 million; or

(C) $2.5 million if the contract price is more than $5

million.

(ii) If the original contract price is $5 million or less, the Government may require additional protection if the contract price is increased. The penal amount of the total protection shall meet the requirement of subparagraph (b)(2)(i) of this clause.

(iii) The Government may secure additional protection by directing the Contractor to increase the penal sum of the existing bond or to obtain an additional bond.

(c) The Contractor shall furnish all executed bonds, including any necessary reinsurance agreements, to the Contracting Officer, within the time period specified in the Bid Guarantee provision of the solicitation, or otherwise specified by the Contracting Officer, but in any event, before starting work.

(d) The bonds shall be in the form of firm commitment, supported by corporate sureties whose names appear on the list contained in Treasury Department Circular 570, individual sureties, or by other acceptable security such as postal money order, certified check, cashier's check, irrevocable letter of credit, or, in accordance with Treasury Department regulations, certain bonds or notes of the United States. Treasury Circular 570 is published in the Federal Register, or may be obtained from the U.S. Department of Treasury, Financial Management Service, Surety Bond Branch, 401 14th Street, NW., 2nd Floor, West Wing, Washington, DC 20227.

(End of clause)

60 52.229-3 FEDERAL, STATE, AND LOCAL TAXES (JAN 1991)

(a) "Contract date," as used in this clause, means the date set for bid opening or, if this is a negotiated contract or a modification, the effective date of this contract or modification.

"All applicable Federal, State, and local taxes and duties," as used in this clause, means all taxes and duties, in effect on the contract date, that the taxing authority is imposing and collecting on the transactions or property covered by this contract.

"After-imposed Federal tax," as used in this clause, means any new or increased Federal excise tax or duty, or tax that was exempted or excluded on the contract date but whose exemption was later revoked or reduced during the contract period, on the transactions or property covered by this contract that the Contractor is required to pay or bear as the result of legislative, judicial, or administrative action taking effect after the contract date. It does not include social security tax or other employment taxes.

"After-relieved Federal tax," as used in this clause, means any amount of Federal excise tax or duty, except social security or other employment taxes, that would otherwise have been payable on the transactions or property covered by this contract, but which the Contractor is not required to pay or bear, or for which the Contractor obtains a refund or drawback, as the result of legislative, judicial, or administrative action taking effect after the contract date.

(b) The contract price includes all applicable Federal, State, and local taxes and duties.

(c) The contract price shall be increased by the amount of any after-imposed Federal tax, provided the Contractor warrants in writing that no amount for such newly imposed Federal excise tax or duty or rate increase was included in the contract price, as a contingency reserve or otherwise.

(d) The contract price shall be decreased by the amount of any after-relieved Federal tax.

(e) The contract price shall be decreased by the amount of any Federal excise tax or duty, except social security or other employment taxes, that the Contractor is required to pay or bear, or does not obtain a refund of, through the Contractor's fault, negligence, or failure to follow instructions of the Contracting Officer.

(f) No adjustment shall be made in the contract price under this clause unless the amount of the adjustment exceeds $250.

(g) The Contractor shall promptly notify the Contracting Officer of all matters relating to any Federal excise tax or duty that reasonably may be expected to result in either an increase or decrease in the contract price and shall take appropriate action as the Contracting Officer directs.

(h) The Government shall, without liability, furnish evidence appropriate to establish exemption from any Federal, State, or local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption.

(End of clause)

61 52.229-5 TAXES--CONTRACTS PERFORMED IN U.S. POSSESSIONS OR PUERTO RICO (APR 1984)

The term "local taxes," as used in the Federal, State, and local taxes clause of this contract, includes taxes imposed by a possession of the United States or by Puerto Rico.

(End of clause)
(AV 7-103.10(c) 1963 NOV)
(AV 1-11.401-3(a))

62 52.231-4500 EQUIPMENT OWNERSHIP AND OPERATING EXPENSE SCHEDULE (MAR 1995) - (EFARS 52.231-5000)

(a) This statement shall become operative only for negotiated contracts where cost or pricing data is requested, and for modifications to sealed bid or negotiated contracts where cost or pricing data is requested. This clause does not apply to terminations. See 52.231-4501, Basis for Settlement of Proposals, and FAR Part 49.

(b) Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the Contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the Contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region I. Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the Contracting Officer. For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule. For forward pricing, the schedule in effect at the time of negotiations shall apply. For retroactive pricing, the schedule in effect at the time the work was performed shall

apply.

(c) Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and FAR 31.205.36. Rates for equipment rented from an organization under common control, lease-purchase arrangements, and sale-leaseback arrangements, will be determined using the schedule, except that actual rates will be used for equipment leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated lessees.

(d) When actual equipment costs are proposed and the total amount of the pricing action exceeds the small pruchase threshold, the Contractingt Officer shall request the Contractor to submit either certified cost or pricing data, or partial/limited data, as appropriate. The data shall be submitted on Standard Form 1411, Contract Pricing Proposal Cover Sheet.

63 52.232-5 PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (MAY 1997)

(a) Payment of price. The Government shall pay the Contractor the contract price as provided in this contract.

(b) Progress payments. The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.

(1) The Contractor's request for progress payments shall include the following substantiation:

(i) An itemization of the amounts requested, related to the various elements of work required by the contract covered by the payment requested.

(ii) A listing of the amount included for work performed by each subcontractor under the contract.

(iii) A listing of the total amount of each subcontract under the contract.

(iv) A listing of the amounts previously paid to each such subcontractor under the contract.

(v) Additional supporting data in a form and detail required by the Contracting Officer.

(2) In the preparation of estimates, the Contracting Officer may authorize material delivered on the site and preparatory work done to be taken into consideration. Material delivered to the Contractor at locations other than the site also may be taken into consideration if--

(i) Consideration is specifically authorized by this contract; and

(ii) The Contractor furnishes satisfactory evidence that it has acquired title to such material and that the material will be used to perform this contract.

(c) Contractor certification. Along with each request for progress payments, the Contractor shall furnish the following certification, or payment shall not be made: (However, if the Contractor elects to delete paragraph (c)(4) from the certification, the certification is still acceptable.)

I hereby certify, to the best of my knowledge and belief, that--

(1) The amounts requested are only for performance in accordance with the specifications, terms, and conditions of the contract;

(2) Payments to subcontractors and suppliers have been made from previous payments received under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and the requirements of chapter 39 of Title 31, United States Code;

(3) This request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract; and

(4) This certification is not to be construed as final acceptance of a subcontractor's performance.

______________________________

(Name)

______________________________

(Title)

______________________________

(Date)

(d) Refund of unearned amounts. If the Contractor, after making a certified request for progress payments, discovers that a portion or all of such request constitutes a payment for performance by the Contractor that fails to conform to the specifications, terms, and conditions of this contract (hereinafter referred to as the "unearned amount"), the Contractor shall--

(1) Notify the Contracting Officer of such performance deficiency; and

(2) Be obligated to pay the Government an amount (computed by the Contracting Officer in the manner provided in paragraph (j) of this clause) equal to interest on the unearned amount from the 8th day after the date of receipt of the unearned amount until--

(i) The date the Contractor notifies the Contracting Officer that the performance deficiency has been corrected; or

(ii) The date the Contractor reduces the amount of any subsequent certified request for progress payments by an amount equal to the unearned amount.

(e) Retainage. If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved. When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment shall be made for the completed work without retention of a percentage.

(f) Title, liability, and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as--

(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or

(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

(g) Reimbursement for bond premiums. In making these progress payments, the Government shall, upon request, reimburse the Contractor for the amount of premiums paid for performance and payment bonds (including coinsurance

and reinsurance agreements, when applicable) after the Contractor has furnished evidence of full payment to the surety. The retainage provisions in paragraph (e) of this clause shall not apply to that portion of progress payments attributable to bond premiums.

(h) Final payment. The Government shall pay the amount due the Contractor under this contract after--

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release. A release may also be required of the assignee if the Contractor's claim to amounts payable under this contract has been assigned under the Assignment of Claims Act of 1940 (31 U.S.C. 3727 and 41 U.S.C. 15).

(i) Limitation because of undefinitized work. Notwithstanding any provision of this contract, progress payments shall not exceed 80 percent on work accomplished on undefinitized contract actions. A "contract action" is any action resulting in a contract, as defined in FAR Subpart 2.1, including contract modifications for additional supplies or services, but not including contract modifications that are within the scope and under the terms of the contract, such as contract modifications issued pursuant to the Changes clause, or funding and other administrative changes.

(j) Interest computation on unearned amounts. In accordance with 31 U.S.C. 3903(c)(1), the amount payable under subparagraph (d)(2) of this clause shall be--

(1) Computed at the rate of average bond equivalent rates of 91-day Treasury bills auctioned at the most recent auction of such bills prior to the date the Contractor receives the unearned amount; and

(2) Deducted from the next available payment to the Contractor.

(End of clause)

64 52.232-17 INTEREST (JUN 1996)

(a) Except as otherwise provided in this contract under a Price Reduction for Defective Cost or Pricing Data clause or a Cost Accounting Standards clause, all amounts that become payable by the Contractor to the Government under this contract (net of any applicable tax credit under the Internal Revenue Code (26 U.S.C. 1481)) shall bear simple interest from the date due until paid unless paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraph (b) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

(b) Amounts shall be due at the earliest of the following dates:

(1) The date fixed under this contract.

(2) The date of the first written demand for payment consistent with this contract, including any demand resulting from a default termination.

(3) The date the Government transmits to the Contractor a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt.

(4) If this contract provides for revision of prices, the date of written notice to the Contractor stating the amount of refund payable

in connection with a pricing proposal or a negotiated pricing agreement not confirmed by contract modification.

(c) The interest charge made under this clause may be reduced under the procedures prescribed in 32.614-2 of the Federal Acquisition Regulation in effect on the date of this contract.

(End of clause)

65 52.232-23 ASSIGNMENT OF CLAIMS (JAN 1986)

(a) The Contractor, under the Assignment of Claims Act, as amended, 31 U.S.C. 3727, 41 U.S.C. 15 (hereafter referred to as "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.

(b) Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this contract, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

(c) The Contractor shall not furnish or disclose to any assignee under this contract any classified document (including this contract) or information related to work under this contract until the Contracting Officer authorizes such action in writing.

(End of clause)

66 52.232-27 PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (JUN 1997)

Notwithstanding any other payment terms in this contract, the Government will make invoice payments and contract financing payments under the terms and conditions specified in this clause. Payment shall be considered as being made on the day a check is dated or the date of an electronic funds transfer. Definitions of pertinent terms are set forth in section 32.902 of the Federal Acquisition Regulation. All days referred to in this clause are calendar days, unless otherwise specified. (However, see subparagraph (a)(3) concerning payments due on Saturdays, Sundays, and legal holidays.)

(a) Invoice payments--

(1) Types of invoice payments. For purposes of this clause, there are several types of invoice payments that may occur under this contract, as follows:

(i) Progress payments, if provided for elsewhere in this contract, based on Contracting Officer approval of the estimated amount and value of work or services performed, including payments for reaching milestones in any project:

(A) The due date for making such payments shall be 14 days after receipt of the payment request by the designated billing office. If the designated billing office fails to annotate the payment request with the actual date of receipt at the time of receipt, the payment due date shall be the 14th day after the date of the Contractor's payment request, provided a proper payment request is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) The due date for payment of any amounts retained by the

Contracting Officer in accordance with the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts, shall be as specified in the contract or, if not specified, 30 days after approval for release to the Contractor by the Contracting Officer.

(ii) Final payments based on completion and acceptance of all work and presentation of release of all claims against the Government arising by virtue of the contract, and payments for partial deliveries that have been accepted by the Government (e.g., each separate building, public work, or other division of the contract for which the price is stated separately in the contract):

(A) The due date for making such payments shall be either the 30th day after receipt by the designated billing office of a proper invoice from the Contractor, or the 30th day after Government acceptance of the work or services completed by the Contractor, whichever is later. If the designated billing office fails to annotate the invoice with the date of actual receipt at the time of receipt, the invoice payment due date shall be the 30th day after the date of the Contractor's invoice, provided a proper invoice is received and there is no disagreement over quantity, quality, or Contractor compliance with contract requirements.

(B) On a final invoice where the payment amount is subject to contract settlement actions (e.g., release of claims), acceptance shall be deemed to have occurred on the effective date of the contract settlement.

(2) Contractor's invoice. The Contractor shall prepare and submit invoices to the designated billing office specified in the contract. A proper invoice must include the items listed in paragraphs (a)(2)(i) through (a)(2)(ix) of this clause. If the invoice does not comply with these requirements, it shall be returned within 7 days after the date the designated billing office received the invoice, with a statement of the reasons why it is not a proper invoice. Untimely notification will be taken into account in computing any interest penalty owed the Contractor in the manner described in subparagraph (a)(4) of this clause.

(i) Name and address of the Contractor.

(ii) Invoice date. (The Contractor is encouraged to date invoices as close as possible to the date of mailing or transmission.)

(iii) Contract number or other authorization for work or services performed (including order number and contract line item number).

(iv) Description of work or services performed.

(v) Delivery and payment terms (e.g., prompt payment discount terms).

(vi) Name and address of Contractor official to whom payment is to be sent (must be the same as that in the contract or in a proper notice of assignment).

(vii) Name (where practicable), title, phone number, and mailing address of person to be notified in the event of a defective invoice.

(viii) For payments described in paragraph (a)(1)(i) of this clause, substantiation of the amounts requested and certification in accordance with the requirements of the clause at 52.232-5, Payments Under Fixed-Price Construction Contracts.

(ix) Any other information or documentation required by the contract.

(x) While not required, the Contractor is strongly encouraged to assign an identification number to each invoice.

(3) Interest penalty. An interest penalty shall be paid automatically by the designated payment office, without request from the Contractor, if payment is not made by the due date and the conditions listed in paragraphs (a)(3)(i) through (a)(3)(iii) of this clause are met, if applicable. However, when the due date falls on a Saturday, Sunday, or

legal holiday when Federal Government offices are closed and Government business is not expected to be conducted, payment may be made on the following business day without incurring a late payment interest penalty.

(i) A proper invoice was received by the designated billing office.

(ii) A receiving report or other Government documentation authorizing payment was processed and there was no disagreement over quantity, quality, Contractor compliance with any contract term or condition, or requested progress payment amount.

(iii) In the case of a final invoice for any balance of funds due the Contractor for work or services performed, the amount was not subject to further contract settlement actions between the Government and the Contractor.

(4) Computing penalty amount. The interest penalty shall be at the rate established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) that is in effect on the day after the due date, except where the interest penalty is prescribed by other governmental authority (e.g., tariffs). This rate is referred to as the "Renegotiation Board Interest Rate," and it is published in the Federal Register semiannually on or about January 1 and July 1. The interest penalty shall accrue daily on the invoice principal payment amount approved by the Government until the payment date of such approved principal amount; and will be compounded in 30-day increments inclusive from the first day after the due date through the payment date. That is, interest accrued at the end of any 30-day period will be added to the approved invoice principal payment amount and will be subject to interest penalties if not paid in the succeeding 30-day period. If the designated billing office failed to notify the Contractor of a defective invoice within the periods prescribed in subparagraph (a)(2) of this clause, the due date on the corrected invoice will be adjusted by subtracting from such date the number of days taken beyond the prescribed notification of defects period. Any interest penalty owed the Contractor will be based on this adjusted due date. Adjustments will be made by the designated payment office for errors in calculating interest penalties.

(i) For the sole purpose of computing an interest penalty that might be due the Contractor for payments described in paragraph (a)(1)(ii) of this clause, Government acceptance or approval shall be deemed to have occurred constructively on the 7th day after the Contractor has completed the work or services in accordance with the terms and conditions of the contract. In the event that actual acceptance or approval occurs within the constructive acceptance or approval period, the determination of an interest penalty shall be based on the actual date of acceptance or approval. Constructive acceptance or constructive approval requirements do not apply if there is a disagreement over quantity, quality, or Contractor compliance with a contract provision. These requirements also do not compel Government officials to accept work or services, approve Contractor estimates, perform contract administration functions, or make payment prior to fulfilling their responsibilities.

(ii) The following periods of time will not be included in the determination of an interest penalty:

(A) The period taken to notify the Contractor of defects in invoices submitted to the Government, but this may not exceed 7 days.

(B) The period between the defects notice and resubmission of the corrected invoice by the Contractor.

(C) For incorrect electronic funds transfer (EFT) information, in accordance with the EFT clause of this contract.

(iii) Interest penalties will not continue to accrue after the filing

of a claim for such penalties under the clause at 52.233-1, Disputes, or for more than 1 year. Interest penalties of less than $1 need not be paid.

(iv) Interest penalties are not required on payment delays due to disagreement between the Government and the Contractor over the payment amount or other issues involving contract compliance, or on amounts temporarily withheld or retained in accordance with the terms of the contract. Claims involving disputes, and any interest that may be payable, will be resolved in accordance with the clause at 52.233-1, Disputes.

(5) Prompt payment discounts. An interest penalty also shall be paid automatically by the designated payment office, without request from the Contractor, if a discount for prompt payment is taken improperly. The interest penalty will be calculated on the amount of discount taken for the period beginning with the first day after the end of the discount period through the date when the Contractor is paid.

(6) Additional interest penalty.

(i) A penalty amount, calculated in accordance with subdivision (a)(6)(iii) of this clause, shall be paid in addition to the interest penalty amount if the Contractor--

(A) Is owed an interest penalty of $1 or more;

(B) Is not paid the interest penalty within 10 days after the date the invoice amount is paid; and

(C) Makes a written demand to the designated payment office for additional penalty payment, in accordance with subdivision (a)(6)(ii) of this clause, postmarked not later than 40 days after the date the invoice amount is paid.

(ii)(A) Contractors shall support written demands for additional penalty payments with the following data. No additional data shall be required. Contractors shall--

(1) Specifically assert that late payment interest is due under a specific invoice, and request payment of all overdue late payment interest penalty and such additional penalty as may be required;

(2) Attach a copy of the invoice on which the unpaid late payment interest was due; and

(3) State that payment of the principal has been received, including the date of receipt.

(B) Demands must be postmarked on or before the 40th day after payment was made, except that--

(1) If the postmark is illegible or nonexistent, the demand must have been received and annotated with the date of receipt by the designated payment office on or before the 40th day after payment was made; or

(2) If the postmark is illegible or nonexistent and the designated payment office fails to make the required annotation, the demand's validity will be determined by the date the Contractor has placed on the demand; provided such date is no later than the 40th day after payment was made.

(iii)(A) The additional penalty shall be equal to 100 percent of any original late payment interest penalty, except--

(1) The additional penalty shall not exceed $5,000;

(2) The additional penalty shall never be less than $25; and

(3) No additional penalty is owed if the amount of the underlying interest penalty is less than $1.

(B) If the interest penalty ceases to accrue in accordance with the limits stated in subdivision (a)(4)(iii) of this clause, the amount of the additional penalty shall be calculated on the amount of

interest penalty that would have accrued in the absence of these limits, subject to the overall limits on the additional penalty specified in subdivision (a)(6)(iii)(A) of this clause.

(C) For determining the maximum and minimum additional penalties, the test shall be the interest penalty due on each separate payment made for each separate contract. The maximum and minimum additional penalty shall not be based upon individual invoices unless the invoices are paid separately. Where payments are consolidated for disbursing purposes, the maximum and minimum additional penalty determination shall be made separately for each contract therein.

(D) The additional penalty does not apply to payments regulated by other Government regulations (e.g., payments under utility contracts subject to tariffs and regulation).

(b) Contract financing payments--

(1) Due dates for recurring financing payments. If this contract provides for contract financing, requests for payment shall be submitted to the designated billing office as specified in this contract or as directed by the Contracting Officer. Contract financing payments shall be made on the 14th day after receipt of a proper contract financing request by the designated billing office. In the event that an audit or other review of a specific financing request is required to ensure compliance with the terms and conditions of the contract, the designated payment office is not compelled to make payment by the due date specified.

(2) Due dates for other contract financing. For advance payments, loans, or other arrangements that do not involve recurring submissions of contract financing requests, payment shall be made in accordance with the corresponding contract terms or as directed by the Contracting Officer.

(3) Interest penalty not applicable. Contract financing payments shall not be assessed an interest penalty for payment delays.

(c) Subcontract clause requirements. The Contractor shall include in each subcontract for property or services (including a material supplier) for the purpose of performing this contract the following:

(1) Prompt payment for subcontractors. A payment clause that obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract.

(2) Interest for subcontractors. An interest penalty clause that obligates the Contractor to pay to the subcontractor an interest penalty for each payment not made in accordance with the payment clause--

(i) For the period beginning on the day after the required payment date and ending on the date on which payment of the amount due is made; and

(ii) Computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(3) Subcontractor clause flowdown. A clause requiring each subcontractor to include a payment clause and an interest penalty clause conforming to the standards set forth in subparagraphs (c)(1) and (c)(2) of this clause in each of its subcontracts, and to require each of its subcontractors to include such clauses in their subcontracts with each lower-tier subcontractor or supplier.

(d) Subcontract clause interpretation. The clauses required by paragraph (c) of this clause shall not be construed to impair the right of the Contractor or a subcontractor at any tier to negotiate, and to include in

their subcontract, provisions that--

(1) Retainage permitted. Permit the Contractor or a subcontractor to retain (without cause) a specified percentage of each progress payment otherwise due to a subcontractor for satisfactory performance under the subcontract without incurring any obligation to pay a late payment interest penalty, in accordance with terms and conditions agreed to by the parties to the subcontract, giving such recognition as the parties deem appropriate to the ability of a subcontractor to furnish a performance bond and a payment bond;

(2) Withholding permitted. Permit the Contractor or subcontractor to make a determination that part or all of the subcontractor's request for payment may be withheld in accordance with the subcontract agreement; and

(3) Withholding requirements. Permit such withholding without incurring any obligation to pay a late payment penalty if--

(i) A notice conforming to the standards of paragraph (g) of this clause previously has been furnished to the subcontractor; and

(ii) A copy of any notice issued by a Contractor pursuant to subdivision (d)(3)(i) of this clause has been furnished to the Contracting Officer.

(e) Subcontractor withholding procedures. If a Contractor, after making a request for payment to the Government but before making a payment to a subcontractor for the subcontractor's performance covered by the payment request, discovers that all or a portion of the payment otherwise due such subcontractor is subject to withholding from the subcontractor in accordance with the subcontract agreement, then the Contractor shall--

(1) Subcontractor notice. Furnish to the subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon ascertaining the cause giving rise to a withholding, but prior to the due date for subcontractor payment;

(2) Contracting Officer notice. Furnish to the Contracting Officer, as soon as practicable, a copy of the notice furnished to the subcontractor pursuant to subparagraph (e)(1) of this clause;

(3) Subcontractor progress payment reduction. Reduce the subcontractor's progress payment by an amount not to exceed the amount specified in the notice of withholding furnished under subparagraph (e)(1) of this clause;

(4) Subsequent subcontractor payment. Pay the subcontractor as soon as practicable after the correction of the identified subcontract performance deficiency, and--

(i) Make such payment within--

(A) Seven days after correction of the identified subcontract performance deficiency (unless the funds therefor must be recovered from the Government because of a reduction under paragraph (e)(5)(i)) of this clause; or

(B) Seven days after the Contractor recovers such funds from the Government; or

(ii) Incur an obligation to pay a late payment interest penalty computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty;

(5) Notice to Contracting Officer. Notify the Contracting Officer upon--

(i) Reduction of the amount of any subsequent certified application for payment; or

(ii) Payment to the subcontractor of any withheld amounts of a

progress payment, specifying--

(A) The amounts withheld under subparagraph (e)(1) of this clause; and

(B) The dates that such withholding began and ended; and

(6) Interest to Government. Be obligated to pay to the Government an amount equal to interest on the withheld payments (computed in the manner provided in 31 U.S.C. 3903(c)(1)), from the 8th day after receipt of the withheld amounts from the Government until--

(i) The day the identified subcontractor performance deficiency is corrected; or

(ii) The date that any subsequent payment is reduced under subdivision (e)(5)(i) of this clause.

(f) Third-party deficiency reports--

(1) Withholding from subcontractor. If a Contractor, after making payment to a first-tier subcontractor, receives from a supplier or subcontractor of the first-tier subcontractor (hereafter referred to as a "second-tier subcontractor") a written notice in accordance with section 2 of the Act of August 24, 1935 (40 U.S.C. 270b, Miller Act), asserting a deficiency in such first-tier subcontractor's performance under the contract for which the Contractor may be ultimately liable, and the Contractor determines that all or a portion of future payments otherwise due such first-tier subcontractor is subject to withholding in accordance with the subcontract agreement, the Contractor may, without incurring an obligation to pay an interest penalty under subparagraph (e)(6) of this clause--

(i) Furnish to the first-tier subcontractor a notice conforming to the standards of paragraph (g) of this clause as soon as practicable upon making such determination; and

(ii) Withhold from the first-tier subcontractor's next available progress payment or payments an amount not to exceed the amount specified in the notice of withholding furnished under paragraph (f)(1)(i) of this clause.

(2) Subsequent payment or interest charge. As soon as practicable, but not later than 7 days after receipt of satisfactory written notification that the identified subcontract performance deficiency has been corrected, the Contractor shall--

(i) Pay the amount withheld under paragraph (f)(1)(ii) of this clause to such first-tier subcontractor; or

(ii) Incur an obligation to pay a late payment interest penalty to such first-tier subcontractor computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 12 of the Contracts Disputes Act of 1978 (41 U.S.C. 611) in effect at the time the Contractor accrues the obligation to pay an interest penalty.

(g) Written notice of subcontractor withholding. A written notice of any withholding shall be issued to a subcontractor (with a copy to the Contracting Officer of any such notice issued by the Contractor), specifying--

(1) The amount to be withheld;

(2) The specific causes for the withholding under the terms of the subcontract; and

(3) The remedial actions to be taken by the subcontractor in order to receive payment of the amounts withheld.

(h) Subcontractor payment entitlement. The Contractor may not request payment from the Government of any amount withheld or retained in accordance with paragraph (d) of this clause until such time as the Contractor has determined and certified to the Contracting Officer that the

subcontractor is entitled to the payment of such amount.

(i) Prime-subcontractor disputes. A dispute between the Contractor and subcontractor relating to the amount or entitlement of a subcontractor to a payment or a late payment interest penalty under a clause included in the subcontract pursuant to paragraph (c) of this clause does not constitute a dispute to which the United States is a party. The United States may not be interpleaded in any judicial or administrative proceeding involving such a dispute.

(j) Preservation of prime-subcontractor rights. Except as provided in paragraph (i) of this clause, this clause shall not limit or impair any contractual, administrative, or judicial remedies otherwise available to the Contractor or a subcontractor in the event of a dispute involving late payment or nonpayment by the Contractor or deficient subcontract performance or nonperformance by a subcontractor.

(k) Non-recourse for prime contractor interest penalty. The Contractor's obligation to pay an interest penalty to a subcontractor pursuant to the clauses included in a subcontract under paragraph (c) of this clause shall not be construed to be an obligation of the United States for such interest penalty. A cost-reimbursement claim may not include any amount for reimbursement of such interest penalty.

(End of clause)

67 52.232-33 MANDATORY INFORMATION FOR ELECTRONIC FUNDS TRANSFER PAYMENT (AUG 1996)

(a) Method of payment. Payments by the Government under this contract, including invoice and contract financing payments, may be made by check or electronic funds transfer (EFT) at the option of the Government. If payment is made by EFT, the Government may, at its option, also forward the associated payment information by electronic transfer. As used in this clause, the term "EFT" refers to the funds transfer and may also include the information transfer.

(b) Mandatory submission of Contractor's EFT information.

(1) The Contractor is required, as a condition to any payment under this contract, to provide the Government with the information required to make payment by EFT as described in paragraph (d) of this clause, unless the payment office determines that submission of the information is not required. However, until January 1, 1999, in the event the Contractor certifies in writing to the payment office that the Contractor does not have an account with a financial institution or an authorized payment agent, payment shall be made by other than EFT. For any payments to be made after January 1, 1999, the Contractor shall provide EFT information as described in paragraph (d) of this clause.

(2) If the Contractor provides EFT information applicable to multiple contracts, the Contractor shall specifically state the applicability of this EFT information in terms acceptable to the payment office.

(c) Contractor's EFT information. Prior to submission of the first request for payment (whether for invoice or contract financing payment) under this contract, the Contractor shall provide the information required to make contract payment by EFT, as described in paragraph (d) of this clause, directly to the Government payment office named in this contract. If more than one payment office is named for the contract, the Contractor shall provide a separate notice to each office. In the event that the EFT information changes, the Contractor shall be responsible for providing the changed information to the designated payment office(s).

(d) Required EFT information. The Government may make payment by EFT

through either an Automated Clearing House (ACH) subject to the banking laws of the United States or the Federal Reserve Wire Transfer System at the Government's option. The Contractor shall provide the following information for both methods in a form acceptable to the designated payment office. The Contractor may supply this data for this or multiple contracts (see paragraph (b) of this clause).

(1) The contract number to which this notice applies.

(2) The Contractor's name and remittance address, as stated in the contract, and account number at the Contractor's financial agent.

(3) The signature (manual or electronic, as appropriate), title, and telephone number of the Contractor official authorized to provide this information.

(4) For ACH payments only:

(i) Name, address, and 9-digit Routing Transit Number of the Contractor's financial agent.

(ii) Contractor's account number and the type of account (checking, saving, or lockbox).

(5) For Federal Reserve Wire Transfer System payments only:

(i) Name, address, telegraphic abbreviation, and the 9-digit Routing Transit Number for the Contractor's financial agent.

(ii) If the Contractor's financial agent is not directly on-line to the Federal Reserve Wire Transfer System and, therefore, not the receiver of the wire transfer payment, the Contractor shall also provide the name, address, and 9-digit Routing Transit Number of the correspondent financial institution receiving the wire transfer payment.

(e) Suspension of payment.

(1) Notwithstanding the provisions of any other clause of this contract, the Government is not required to make any payment under this contract until after receipt, by the designated payment office, of the correct EFT payment information from the Contractor or a certificate submitted in accordance with paragraph (b) of this clause. Until receipt of the correct EFT information, any invoice or contract financing request shall be deemed not to be a valid invoice or contract financing request as defined in the Prompt Payment clause of this contract.

(2) If the EFT information changes after submission of correct EFT information, the Government shall begin using the changed EFT information no later than the 30th day after its receipt to the extent payment is made by EFT. However, the Contractor may request that no further payments be made until the changed EFT information is implemented by the payment office. If such suspension would result in a late payment under the Prompt Payment clause of this contract, the Contractor's request for suspension shall extend the due date for payment by the number of days of the suspension.

(f) Contractor EFT arrangements. The Contractor shall designate a single financial agent capable of receiving and processing the electronic funds transfer using the EFT methods described in paragraph (d) of this clause. The Contractor shall pay all fees and charges for receipt and processing of transfers.

(g) Liability for uncompleted or erroneous transfers.

(1) If an uncompleted or erroneous transfer occurs because the Government failed to use the Contractor-provided EFT information in the correct manner, the Government remains responsible for (i) making a correct payment, (ii) paying any prompt payment penalty due, and (iii) recovering any erroneously directed funds.

(2) If an uncompleted or erroneous transfer occurs because Contractor-provided EFT information was incorrect at the time of

Government release of the EFT payment transaction instruction to the Federal Reserve System, and--

(i) If the funds are no longer under the control of the payment office, the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds; or

(ii) If the funds remain under the control of the payment office, the Government retains the right to either make payment by mail or suspend the payment in accordance with paragraph (e) of this clause.

(h) EFT and prompt payment.

(1) A payment shall be deemed to have been made in a timely manner in accordance with the Prompt Payment clause of this contract if, in the EFT payment transaction instruction given to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specified payment date is a valid date under the rules of the Federal Reserve System.

(2) When payment cannot be made by EFT because of incorrect EFT information provided by the Contractor, no interest penalty is due after the date of the uncompleted or erroneous payment transaction, provided that notice of the defective EFT information is issued to the Contractor within 7 days after the Government is notified of the defective EFT information.

(i) EFT and assignment of claims. If the Contractor assigns the proceeds of this contract as provided for in the Assignment of Claims clause of this contract, the assignee shall provide the assignee EFT information required by paragraph (d) of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were the Contractor. EFT information which shows the ultimate recipient of the transfer to be other than the Contractor, in the absence of a proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph (e) of this clause.

(j) Payment office discretion. If the Contractor does not wish to receive payment by EFT methods for one or more payments, the Contractor may submit a request to the designated payment office to refrain from requiring EFT information or using the EFT payment method. The decision to grant the request is solely that of the Government.

(k) Change of EFT information by financial agent. The Contractor agrees that the Contractor's financial agent may notify the Government of a change to the routing transit number, Contractor account number, or account type. The Government shall use the changed data in accordance with paragraph (e)(2) of this clause. The Contractor agrees that the information provided by the agent is deemed to be correct information as if it were provided by the Contractor. The Contractor agrees that the agent's notice of changed EFT data is deemed to be a request by the Contractor in accordance with paragraph (e)(2) that no further payments be made until the changed EFT information is implemented by the payment office.

(End of clause)

68 52.232-7006 REDUCTION OR SUSPENSION OF CONTRACT PAYMENTS UPON FINDING OF FRAUD (AUG 1992)

(a) 10 U.S.C. 2307(e) permits the head of the agency to reduce or suspend further payments to the Contractor upon a written determination by the agency head that substantial evidence exists that the Contractor's request for advance, partial, or progress payments is based on fraud. The

provisions of 10 U.S.C. 2307(e) are in addition to any other rights or remedies provided the Government by law or under contract.

(b) Actions taken by the Government in accordance with 10 U.S.C. 2307(e) shall not constitute an excusable delay under the Default clause of this contract or otherwise relieve the Contractor of its obligations to perform under this contract.

(End of clause)

69 52.233-1 DISPUTES (OCT 1995)

(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph (d)(2) of this clause. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(2)(i) Contractors shall provide the certification specified in subparagraph (d)(2)(iii) of this clause when submitting any claim--

(A) Exceeding $100,000; or

(B) Regardless of the amount claimed, when using--

(1) Arbitration conducted pursuant to 5 U.S.C. 575-580; or

(2) Any other alternative means of dispute resolution (ADR) technique that the agency elects to handle in accordance with the Administrative Dispute Resolution Act (ADRA).

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows:

"I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duty authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the

Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use ADR. If the Contractor refuses an offer for alternative disputes resolution, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the request. When using arbitration conducted pursuant to 5 U.S.C. 575-580, or when using any other ADR technique that the agency elects to handle in accordance with the ADRA, any claim, regardless of amount, shall be accompanied by the certification described in subparagraph (d)(2)(iii) of this clause, and executed in accordance with subparagraph (d)(3) of this clause.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in (FAR) 48 CFR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(End of clause)

70 52.233-3 PROTEST AFTER AWARD (AUG 1996)

(a) Upon receipt of a notice of protest (as defined in FAR 33.101) or a determination that a protest is likely (see FAR 33.102(d)), the Contracting Officer may, by written order to the Contractor, direct the Contractor to stop performance of the work called for by this contract. The order shall be specifically identified as a stop-work order issued under this clause. Upon receipt of the order, the Contractor shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage. Upon receipt of the final decision in the protest, the Contracting Officer shall either--

(1) Cancel the stop-work order; or

(2) Terminate the work covered by the order as provided in the Default, or the Termination for Convenience of the Government, clause of this contract.

(b) If a stop-work order issued under this clause is canceled either before or after a final decision in the protest, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if--

(1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and

(2) The Contractor asserts its right to an adjustment within 30 days

after the end of the period of work stoppage; provided, that if the Contracting Officer decides the facts justify the action, the Contracting Officer may receive and act upon a proposal at any time before final payment under this contract.

(c) If a stop-work order is not canceled and the work covered by the order is terminated for the convenience of the Government, the Contracting Officer shall allow reasonable costs resulting from the stop-work order in arriving at the termination settlement.

(d) If a stop-work order is not canceled and the work covered by the order is terminated for default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable costs resulting from the stop-work order.

(e) The Government's rights to terminate this contract at any time are not affected by action taken under this clause.

(f) If, as the result of the Contractor's intentional or negligent misstatement, misrepresentation, or miscertification, a protest related to this contract is sustained, and the Government pays costs, as provided in FAR 33.102(b)(2) or 33.104(h)(1), the Government may require the Contractor to reimburse the Government the amount of such costs. In addition to any other remedy available, and pursuant to the requirements of Subpart 32.6, the Government may collect this debt by offsetting the amount against any payment due the Contractor under any contract between the Contractor and the Government.

(End of clause)

71 52.236-2 DIFFERING SITE CONDITIONS (APR 1984)

(a) The Contractor shall promptly, and before the conditions are disturbed, give a written notice to the Contracting Officer of (1) subsurface or latent physical conditions at the site which differ materially from those indicated in this contract, or (2) unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract.

(b) The Contracting Officer shall investigate the site conditions promptly after receiving the notice. If the conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performing any part of the work under this contract, whether or not changed as a result of the conditions, an equitable adjustment shall be made under this clause and the contract modified in writing accordingly.

(c) No request by the Contractor for an equitable adjustment to the contract under this clause shall be allowed, unless the Contractor has given the written notice required; provided, that the time prescribed in (a) above for giving written notice may be extended by the Contracting Officer.

(d) No request by the Contractor for an equitable adjustment to the contract for differing site conditions shall be allowed if made after final payment under this contract.

(End of clause)

72 52.236-3 SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984)

(a) The Contractor acknowledges that it has taken steps reasonably

necessary to ascertain the nature and location of the work, and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials; (2) the availability of labor, water, electric power, and roads; (3) uncertainties of weather, river stages, tides, or similar physical conditions at the site; (4) the conformation and conditions of the ground; and (5) the character of equipment and facilities needed preliminary to and during work performance. The Contractor also acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site, including all exploratory work done by the Government, as well as from the drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work, or for proceeding to successfully perform the work without additional expense to the Government.

(b) The Government assumes no responsibility for any conclusions or interpretations made by the Contractor based on the information made available by the Government. Nor does the Government assume responsibility for any understanding reached or representation made concerning conditions which can affect the work by any of its officers or agents before the execution of this contract, unless that understanding or representation is expressly stated in this contract.

(End of clause)

73 52.236-5 MATERIAL AND WORKMANSHIP (APR 1984)

(a) All equipment, material, and articles incorporated into the work covered by this contract shall be new and of the most suitable grade for the purpose intended, unless otherwise specifically provided in this contract. References in the specifications to equipment, material, articles, or patented processes by trade name, make, or catalog number, shall be regarded as establishing a standard of quality and shall not be construed as limiting competition. The Contractor may, at its option, use any equipment, material, article, or process that, in the judgment of the Contracting Officer, is equal to that named in the specifications, unless otherwise specifically provided in this contract.

(b) The Contractor shall obtain the Contracting Officer's approval of the machinery and mechanical and other equipment to be incorporated into the work. When requesting approval, the Contractor shall furnish to the Contracting Officer the name of the manufacturer, the model number, and other information concerning the performance, capacity, nature, and rating of the machinery and mechanical and other equipment. When required by this contract or by the Contracting Officer, the Contractor shall also obtain the Contracting Officer's approval of the material or articles which the Contractor contemplates incorporating into the work. When requesting approval, the Contractor shall provide full information concerning the material or articles. When directed to do so, the Contractor shall submit samples for approval at the Contractor's expense, with all shipping charges prepaid. Machinery, equipment, material, and articles that do not have the required approval shall be installed or used at the risk of subsequent rejection.

(c) All work under this contract shall be performed in a skillful and workmanlike manner. The Contracting Officer may require, in writing, that the Contractor remove from the work any employee the Contracting Officer deems incompetent, careless, or otherwise objectionable.

(End of clause)

(R 7-602.9 1964 JUN)

74 52.236-6 SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the work site a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

(End of clause)

75 52.236-7 PERMITS AND RESPONSIBILITIES (NOV 1991)

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

(End of clause)

76 52.236-8 OTHER CONTRACTS (APR 1984)

The Government may undertake or award other contracts for additional work at or near the site of the work under this contract. The Contractor shall fully cooperate with the other contractors and with Government employees and shall carefully adapt scheduling and performing the work under this contract to accommodate the additional work, heeding any direction that may be provided by the Contracting Officer. The Contractor shall not commit or permit any act that will interfere with the performance of work by any other contractor or by Government employees.

(End of clause)

77 52.236-9 PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT, UTILITIES, AND IMPROVEMENTS (APR 1984)

(a) The Contractor shall preserve and protect all structures, equipment, and vegetation (such as trees, shrubs, and grass) on or adjacent to the work site, which are not to be removed and which do not unreasonably interfere with the work required under this contract. The Contractor shall only remove trees when specifically authorized to do so, and shall avoid damaging vegetation that will remain in place. If any limbs or branches of trees are broken during contract performance, or by the careless operation of equipment, or by workmen, the Contractor shall trim those limbs or branches with a clean cut and paint the cut with a

tree-pruning compound as directed by the Contracting Officer.

(b) The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site, and (2) on adjacent property of a third party, the locations of which are made known to or should be known by the Contractor. The Contractor shall repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, the Contracting Officer may have the necessary work performed and charge the cost to the Contractor.

(End of clause)

78 52.236-10 OPERATIONS AND STORAGE AREAS (APR 1984)

(a) The Contractor shall confine all operations (including storage of materials) on Government premises to areas authorized or approved by the Contracting Officer. The Contractor shall hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by the Contractor's performance.

(b) Temporary buildings (e.g., storage sheds, shops, offices) and utilities may be erected by the Contractor only with the approval of the Contracting Officer and shall be built with labor and materials furnished by the Contractor without expense to the Government. The temporary buildings and utilities shall remain the property of the Contractor and shall be removed by the Contractor at its expense upon completion of the work. With the written consent of the Contracting Officer, the buildings and utilities may be abandoned and need not be removed.

(c) The Contractor shall, under regulations prescribed by the Contracting Officer, use only established roadways, or use temporary roadways constructed by the Contractor when and as authorized by the Contracting Officer. When materials are transported in prosecuting the work, vehicles shall not be loaded beyond the loading capacity recommended by the manufacturer of the vehicle or prescribed by any Federal, State, or local law or regulation. When it is necessary to cross curbs or sidewalks, the Contractor shall protect them from damage. The Contractor shall repair or pay for the repair of any damaged curbs, sidewalks, or roads.

(End of clause)

79 52.236-11 USE AND POSSESSION PRIOR TO COMPLETION (APR 1984)

(a) The Government shall have the right to take possession of or use any completed or partially completed part of the work. Before taking possession of or using any work, the Contracting Officer shall furnish the Contractor a list of items of work remaining to be performed or corrected on those portions of the work that the Government intends to take possession of or use. However, failure of the Contracting Officer to list any item of work shall not relieve the Contractor of responsibility for complying with the terms of the contract. The Government's possession or use shall not be deemed an acceptance of any work under the contract.

(b) While the Government has such possession or use, the Contractor shall be relieved of the responsibility for the loss of or damage to the work resulting from the Government's possession or use,

notwithstanding the terms of the clause in this contract entitled "Permits and Responsibilities." If prior possession or use by the Government delays the progress of the work or causes additional expense to the Contractor, an equitable adjustment shall be made in the contract price or the time of completion, and the contract shall be modified in writing accordingly.

(End of clause)

80 52.236-12 CLEANING UP (APR 1984)

The Contractor shall at all times keep the work area, including storage areas, free from accumulations of waste materials. Before completing the work, the Contractor shall remove from the work and premises any rubbish, tools, scaffolding, equipment, and materials that are not the property of the Government. Upon completing the work, the Contractor shall leave the work area in a clean, neat, and orderly condition satisfactory to the Contracting Officer.

(End of clause)

81 52.236-13 I ACCIDENT PREVENTION (NOV 1991)--ALTERNATE I (NOV 1991)

(a) The Contractor shall provide and maintain work environments and procedures which will (1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities; (2) avoid interruptions of Government operations and delays in project completion dates; and (3) control costs in the performance of this contract.

(b) For these purposes on contracts for construction or dismantling, demolition, or removal of improvements, the Contractor shall--

(1) Provide appropriate safety barricades, signs, and signal lights;

(2) Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for the purposes are taken.

(c) If this contract is for construction or dismantling, demolition or removal of improvements with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the latest version of U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1, in effect on the date of the solicitation.

(d) Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to the Contractor or the Contractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. The Contractor shall not be entitled to any equitable adjustment of the contract price or extension of the performance schedule on any stop work order issued under this clause.

(e) The Contractor shall insert this clause, including this paragraph (e), with appropriate changes in the designation of the parties, in

subcontracts.

(f) Before commencing the work, the Contractor shall--

(1) Submit a written proposed plan for implementing this clause. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in contract work performance and a plan for controlling these hazards; and

(2) Meet with representatives of the Contracting Officer to discuss and develop a mutual understanding relative to administration of the overall safety program.

(End of clause)

82 52.236-15 SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984)

(a) The Contractor shall, within five days after the work commences on the contract or another period of time determined by the Contracting Officer, prepare and submit to the Contracting Officer for approval three copies of a practicable schedule showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting and completing the several salient features of the work (including acquiring materials, plant, and equipment). The schedule shall be in the form of a progress chart of suitable scale to indicate appropriately the percentage of work scheduled for completion by any given date during the period. If the Contractor fails to submit a schedule within the time prescribed, the Contracting Officer may withhold approval of progress payments until the Contractor submits the required schedule.

(b) The Contractor shall enter the actual progress on the chart as directed by the Contracting Officer, and upon doing so shall immediately deliver three copies of the annotated schedule to the Contracting Officer. If, in the opinion of the Contracting Officer, the Contractor falls behind the approved schedule, the Contractor shall take steps necessary to improve its progress, including those that may be required by the Contracting Officer, without additional cost to the Government. In this circumstance, the Contracting Officer may require the Contractor to increase the number of shifts, overtime operations, days of work, and/or the amount of construction plant, and to submit for approval any supplementary schedule or schedules in chart form as the Contracting Officer deems necessary to demonstrate how the approved rate of progress will be regained.

(c) Failure of the Contractor to comply with the requirements of the Contracting Officer under this clause shall be grounds for a determination by the Contracting Officer that the Contractor is not prosecuting the work with sufficient diligence to ensure completion within the time specified in the contract. Upon making this determination, the Contracting Officer may terminate the Contractor's right to proceed with the work, or any separable part of it, in accordance with the default terms of this contract.

(End of clause)

83 52.236-17 LAYOUT OF WORK (APR 1984)

The Contractor shall lay out its work from Government-established base lines and bench marks indicated on the drawings, and shall be responsible for all measurements in connection with the layout. The Contractor shall furnish, at its own expense, all stakes, templates, platforms, equipment, tools, materials, and labor required to lay out any part of the work. The Contractor shall be responsible for executing the work to the lines and grades that may be established or indicated by the Contracting Officer.

The Contractor shall also be responsible for maintaining and preserving all stakes and other marks established by the Contracting Officer until authorized to remove them. If such marks are destroyed by the Contractor or through its negligence before their removal is authorized, the Contracting Officer may replace them and deduct the expense of the replacement from any amounts due or to become due to the Contractor.

(End of clause)

(R 7-604.3 1965 JAN)

84 52.236-21 II SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997)--ALTERNATE II (APR 1984)

(a) The Contractor shall keep on the work site a copy of the drawings and specifications and shall at all times give the Contracting Officer access thereto. Anything mentioned in the specifications and not shown on the drawings, or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between drawings and specifications, the specifications shall govern. In case of discrepancy in the figures, in the drawings, or in the specifications, the matter shall be promptly submitted to the Contracting Officer, who shall promptly make a determination in writing. Any adjustment by the Contractor without such a determination shall be at its own risk and expense. The Contracting Officer shall furnish from time to time such detailed drawings and other information as considered necessary, unless otherwise provided.

(b) Wherever in the specifications or upon the drawings the words "directed", "required", "ordered", "designated", "prescribed", or words of like import are used, it shall be understood that the "direction", "requirement", "order", "designation", or "prescription", of the Contracting Officer is intended and similarly the words "approved", "acceptable", "satisfactory", or words of like import shall mean "approved by", or "acceptable to", or "satisfactory to" the Contracting Officer, unless otherwise expressly stated.

(c) Where "as shown", "as indicated", "as detailed", or words of similar import are used, it shall be understood that the reference is made to the drawings accompanying this contract unless stated otherwise. The word "provided" as used herein shall be understood to mean "provide complete in place", that is "furnished and installed".

(d) Shop drawings means drawings, submitted to the Government by the Contractor, subcontractor, or any lower tier subcontractor pursuant to a construction contract, showing in detail (1) the proposed fabrication and assembly of structural elements and (2) the installation (i.e., fit, and attachment details) of materials or equipment. It includes drawings, diagrams, layouts, schematics, descriptive literature, illustrations, schedules, performance and test data, and similar materials furnished by the contractor to explain in detail specific portions of the work required by the contract. The Government may duplicate, use, and disclose in any manner and for any purpose shop drawings delivered under this contract.

(e) If this contract requires shop drawings, the Contractor shall coordinate all such drawings, and review them for accuracy, completeness, and compliance with contract requirements and shall indicate its approval thereon as evidence of such coordination and review. Shop drawings submitted to the Contracting Officer without evidence of the Contractor's approval may be returned for resubmission. The Contracting Officer will indicate an approval or disapproval of the shop drawings and if not approved as submitted shall indicate the Government's reasons therefor.

Any work done before such approval shall be at the Contractor's risk. Approval by the Contracting Officer shall not relieve the Contractor from responsibility for any errors or omissions in such drawings, nor from responsibility for complying with the requirements of this contract, except with respect to variations described and approved in accordance with (f) below.

(f) If shop drawings show variations from the contract requirements, the Contractor shall describe such variations in writing, separate from the drawings, at the time of submission. If the Contracting Officer approves any such variation, the Contracting Officer shall issue an appropriate contract modification, except that, if the variation is minor or does not involve a change in price or in time of performance, a modification need not be issued.

(g) The Contractor shall submit to the Contracting Officer for approval four copies (unless otherwise indicated) of all shop drawings as called for under the various headings of these specifications. Three sets (unless otherwise indicated) of all shop drawings, will be retained by the Contracting Officer and one set will be returned to the Contractor. Upon completing the work under this contract, the Contractor shall furnish six (6) sets of prints of all shop drawings as finally approved. These drawings shall show changes and revisions made up to the time the equipment is completed and accepted.

(End of clause)

85 52.236-26 PRECONSTRUCTION CONFERENCE (FEB 1995)

If the Contracting Officer decides to conduct a preconstruction conference, the successful offeror will be notified and will be required to attend. The Contracting Officer's notification will include specific details regarding the date, time, and location of the conference, any need for attendance by subcontractors, and information regarding the items to be discussed.

(End of clause)

86 52.236-7000 MODIFICATION PROPOSALS--PRICE BREAKDOWN (DEC 1991)

(a) The Contractor shall furnish a price breakdown, itemized as required and within the time specified by the Contracting Officer, with any proposal for a contract modification.

(b) The price breakdown--

(1) Must include sufficient detail to permit an analysis of profit, and of all costs for--

(i) Material;

(ii) Labor;

(iii) Equipment;

(iv) Subcontracts; and

(v) Overhead; and

(2) Must cover all work involved in the modification, whether the work was deleted, added, or changed.

(c) The Contractor shall provide similar price breakdowns to support any amounts claimed for subcontracts.

(d) The Contractor's proposal shall include a justification for any time extension proposed.

(End of clause)

87 52.242-13 BANKRUPTCY (JUL 1995)

In the event the Contractor enters into proceedings relating to bankruptcy, whether voluntary or involuntary, the Contractor agrees to furnish, by certified mail or electronic commerce method authorized by the contract, written notification of the bankruptcy to the Contracting Officer responsible for administering the contract. This notification shall be furnished within five days of the initiation of the proceedings relating to bankruptcy filing. This notification shall include the date on which the bankruptcy petition was filed, the identity of the court in which the bankruptcy petition was filed, and a listing of Government contract numbers and contracting offices for all Government contracts against which final payment has not been made. This obligation remains in effect until final payment under this contract.

(End of clause)

88 52.242-14 SUSPENSION OF WORK (APR 1984)

(a) The Contracting Officer may order the Contractor, in writing, to suspend, delay, or interrupt all or any part of the work of this contract for the period of time that the Contracting Officer determines appropriate for the convenience of the Government.

(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.

(c) A claim under this clause shall not be allowed (1) for any costs incurred more than 20 days before the Contractor shall have notified the Contracting Officer in writing of the act or failure to act involved (but this requirement shall not apply as to a claim resulting from a suspension order), and (2) unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the suspension, delay, or interruption, but not later than the date of final payment under the contract.

(End of clause)

89 52.242-7000 POSTAWARD CONFERENCE (DEC 1991)

The Contractor agrees to attend any postaward conference convened by the contracting activity or contract administration office in accordance with Federal Acquisition Regulation Subpart 42.5.

(End of clause)

90 52.243-4 CHANGES (AUG 1987)

(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract, including changes--

(1) In the specifications (including drawings and designs);

(2) In the method or manner of performance of the work;

(3) In the Government-furnished facilities, equipment, materials, services, or site; or

(4) Directing acceleration in the performance of the work.

(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction, interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating (1) the date, circumstances, and source of the order and (2) that the Contractor regards the order as a change order.

(c) Except as provided in this clause, no order, statement, or conduct of the Contracting Officer shall be treated as a change under this clause or entitle the Contractor to an equitable adjustment.

(d) If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer shall make an equitable adjustment and modify the contract in writing. However, except for an adjustment based on defective specifications, no adjustment for any change under paragraph (b) of this clause shall be made for any costs incurred more than 20 days before the Contractor gives written notice as required. In the case of defective specifications for which the Government is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with the defective specifications.

(e) The Contractor must assert its right to an adjustment under this clause within 30 days after (1) receipt of a written change order under paragraph (a) of this clause or (2) the furnishing of a written notice under paragraph (b) of this clause, by submitting to the Contracting Officer a written statement describing the general nature and amount of the proposal, unless this period is extended by the Government. The statement of proposal for adjustment may be included in the notice under paragraph (b) above.

(f) No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract.

(End of clause)

91 52.243-7001 PRICING OF CONTRACT MODIFICATIONS (DEC 1991)

When costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR Part 31 and DFARS Part 231, in effect on the date of this contract, apply.

(End of clause)

92 52.243-7002 CERTIFICATION OF REQUESTS FOR EQUITABLE ADJUSTMENT (JUL 1997)

(a) In accordance with 10 U.S.C. 2410(a), any request for equitable

adjustment to contract terms that exceeds the simplified acquisition threshold shall bear, at the time of submission, the following certificate executed by an individual authorized to certify the request on behalf of the Contractor:

I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief.

________________________________________

(Official's Name)

________________________________________

(Title)

(b) The certification in paragraph (a) of this clause requires full disclosure of all relevant facts, including--

(1) Cost or pricing data if required in accordance with FAR 15.804-2; and

(2) Actual cost data and data to support any estimated costs, even if cost of pricing data are not required.

(c) The certification requirement in paragraph (a) of this clause does not apply to--

(1) Requests for routine contract payments; for example, requests for payment for accepted supplies and services, routine vouchers under a cost-reimbursement type contract, or progress payment invoices; or

(2) Final adjustments under an incentive provision of the contract.

(d) The amount requested shall accurately reflect the contract adjustment for which the Contractor believes the Government is liable. The request shall include only costs for performing the change, and shall not include any costs that already have been reimbursed or that have been separately claimed. All indirect costs included in the request shall be properly allocable to the change in accordance with applicable acquisition regulations.

(End of clause)

93 52.246-12 INSPECTION OF CONSTRUCTION (AUG 1996)

(a) Definition. "Work" includes, but is not limited to, materials, workmanship, and manufacture and fabrication of components.

(b) The Contractor shall maintain an adequate inspection system and perform such inspections as will ensure that the work performed under the contract conforms to contract requirements. The Contractor shall maintain complete inspection records and make them available to the Government. All work shall be conducted under the general direction of the Contracting Officer and is subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract.

(c) Government inspections and tests are for the sole benefit of the Government and do not--

(1) Relieve the Contractor of responsibility for providing adequate quality control measures;

(2) Relieve the Contractor of responsibility for damage to or loss of the material before acceptance;

(3) Constitute or imply acceptance; or

(4) Affect the continuing rights of the Government after acceptance of the completed work under paragraph (i) below.

(d) The presence or absence of a Government inspector does not relieve the Contractor from any contract requirement, nor is the inspector authorized to change any term or condition of the specification without the

Contracting Officer's written authorization.

(e) The Contractor shall promptly furnish, at no increase in contract price, all facilities, labor, and material reasonably needed for performing such safe and convenient inspections and tests as may be required by the Contracting Officer. The Government may charge to the Contractor any additional cost of inspection or test when work is not ready at the time specified by the Contractor for inspection or test, or when prior rejection makes reinspection or retest necessary. The Government shall perform all inspections and tests in a manner that will not unnecessarily delay the work. Special, full size, and performance tests shall be performed as described in the contract.

(f) The Contractor shall, without charge, replace or correct work found by the Government not to conform to contract requirements, unless in the public interest the Government consents to accept the work with an appropriate adjustment in contract price. The Contractor shall promptly segregate and remove rejected material from the premises.

(g) If the Contractor does not promptly replace or correct rejected work, the Government may (1) by contract or otherwise, replace or correct the work and charge the cost to the Contractor or (2) terminate for default the Contractor's right to proceed.

(h) If, before acceptance of the entire work, the Government decides to examine already completed work by removing it or tearing it out, the Contractor, on request, shall promptly furnish all necessary facilities, labor, and material. If the work is found to be defective or nonconforming in any material respect due to the fault of the Contractor or its subcontractors, the Contractor shall defray the expenses of the examination and of satisfactory reconstruction. However, if the work is found to meet contract requirements, the Contracting Officer shall make an equitable adjustment for the additional services involved in the examination and reconstruction, including, if completion of the work was thereby delayed, an extension of time.

(i) Unless otherwise specified in the contract, the Government shall accept, as promptly as practicable after completion and inspection, all work required by the contract or that portion of the work the Contracting Officer determines can be accepted separately. Acceptance shall be final and conclusive except for latent defects, fraud, gross mistakes amounting to fraud, or the Government's rights under any warranty or guarantee.

(End of clause)

94 52.247-7023 TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995)

(a) Definitions. As used in this clause--

(1) "Components" means articles, materials, and supplies incorporated directly into end products at any level of manufacture, fabrication, or assembly by the Contractor or any subcontractor.

(2) "Department of Defense (DoD)" means the Army, Navy, Air Force, Marine Corps, and defense agencies.

(3) "Foreign flag vessel" means any vessel that is not a U.S.-flag vessel.

(4) "Ocean transportation" means any transportation aboard a ship, vessel, boat, barge, or ferry through international waters.

(5) "Subcontractor" means a supplier, materialman, distributor, or vendor at any level below the prime contractor whose contractual obligation to perform results from, or is conditioned upon, award of the prime contract and who is performing any part of the work or other requirement of the prime contract. However, effective May 1, 1996, the

term does not include a supplier, materialman, distributor, or vendor of commercial items or commercial components.

(6) "Supplies" means all property, except land and interests in land, that is clearly identifiable for eventual use by or owned by the DoD at the time of transportation by sea.

(i) An item is clearly identifiable for eventual use by the DoD if, for example, the contract documentation contains a reference to a DoD contract number or a military destination.

(ii) Supplies includes (but is not limited to) public works; buildings and facilities; ships; floating equipment and vessels of every character, type, and description, with parts, subassemblies, accessories, and equipment; machine tools; material; equipment; stores of all kinds; end items; construction materials; and components of the foregoing.

(7) "U.S.-flag vessel" means a vessel of the United States or belonging to the United States, including any vessel registered or having national status under the laws of the United States.

(b) The Contractor shall employ U.S.-flag vessels in the transportation by sea of any supplies to be furnished in the performance of this contract. The Contractor and its subcontractors may request that the Contracting Officer authorize shipment in foreign-flag vessels, or designate available U.S.-flag vessels, if the Contractor or a subcontractor believes that--

(1) U.S.-flag vessels are not available for timely shipment;

(2) The freight charges are inordinately excessive or unreasonable; or

(3) Freight charges are higher than charges to private persons for transportation of like goods.

(c) The Contractor must submit any request for use of other than U.S.-flag vessels in writing to the Contracting Officer at least 45 days prior to the sailing date necessary to meet its delivery schedules. The Contracting Officer will process requests submitted after such date(s) as expeditiously as possible, but the Contracting Officer's failure to grant approvals to meet the shipper's sailing date will not of itself constitute a compensable delay under this or any other clause of this contract. Requests shall contain at a minimum--

(1) Type, weight, and cube of cargo;

(2) Required shipping date;

(3) Special handling and discharge requirements;

(4) Loading and discharge points;

(5) Name of shipper and consignee;

(6) Prime contract number; and

(7) A documented description of efforts made to secure U.S.-flag vessels, including points of contact (with names and telephone numbers) with at least two U.S.-flag carriers contacted. Copies of telephone notes, telegraphic and facsimile message or letters will be sufficient for this purpose.

(d) The Contractor shall, within 30 days after each shipment covered by this clause, provide the Contracting Officer and the Division of National Cargo, Office of Market Development, Maritime Administration, U.S. Department of Transportation, Washington, DC 20590, one copy of the rated on board vessel operating carrier's ocean bill of lading, which shall contain the following information--

(1) Prime contract number;

(2) Name of vessel;

(3) Vessel flag of registry;

(4) Date of loading;

(5) Port of loading;

(6) Port of final discharge;

(7) Description of commodity;
(8) Gross weight in pounds and cubic feet if available;
(9) Total ocean freight in U.S. dollars; and
(10) Name of the steamship company.

(e) The Contractor agrees to provide with its final invoice under this contract a representation that to the best of its knowledge and belief--

(1) No ocean transportation was used in the performance of this contract;

(2) Ocean transportation was used and only U.S.-flag vessels were used for all ocean shipments under the contract;

(3) Ocean transportation was used, and the Contractor had the written consent of the Contracting Officer for all non-U.S.-flag ocean transportation; or

(4) Ocean transportation was used and some or all of the shipments were made on non-U.S.-flag vessels without the written consent of the Contracting Officer. The Contractor shall describe these shipments in the following format:

| | Item Description | Contract Line Items | Quantity |
|---|---|---|---|
| Total........ | | | |

(f) If the final invoice does not include the required representation, the Government will reject and return it to the Contractor as an improper invoice for the purposes of the Prompt Payment clause of this contract. In the event there has been unauthorized use of non-U.S.-flag vessels in the performance of this contract, the Contracting Officer is entitled to equitably adjust the contract, based on the unauthorized use.

(g) The Contractor shall include this clause, including this paragraph (g) in all subcontracts under this contract, which exceed the simplified acquisition threshold in Part 13 of the Federal Acquisition Regulation.

(End of clause)

95 52.247-7024 NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA (NOV 1995)

(a) The Contractor has indicated by the response to the solicitation provision, Representation of Extent of Transportation by Sea, that it did not anticipate transporting by sea any supplies. If, however, after the award of this contract, the Contractor learns that supplies, as defined in the Transportation of Supplies by Sea clause of this contract, will be transported by sea, the Contractor--

(1) Shall notify the Contracting Officer of that fact; and

(2) Hereby agrees to comply with all the terms and conditions of the Transportation of Supplies by Sea clause of this contract.

(b) The Contractor shall include this clause, including this paragraph (b), revised as necessary to reflect the relationship of the contracting parties, in all subcontracts hereunder, except (effective May 1, 1996) subcontracts for the acquisition of commercial items or components.

(End of clause)

96 52.248-3 I VALUE ENGINEERING--CONSTRUCTION (MAR 1989)--ALTERNATE I (APR 1984)

(a) General. The Contractor is encouraged to develop, prepare, and submit value engineering change proposals (VECP's) voluntarily. The Contractor shall share in any instant contract savings realized from accepted VECP's, in accordance with paragraph (f) below.

(b) Definitions. "Collateral costs," as used in this clause, means agency costs of operation, maintenance, logistic support, or Government-furnished property.

"Collateral savings," as used in this clause, means those measurable net reductions resulting from a VECP in the agency's overall projected collateral costs, exclusive of acquisition savings, whether or not the acquisition cost changes.

"Contractor's development and implementation costs," as used in this clause, means those costs the Contractor incurs on a VECP specifically in developing, testing, preparing, and submitting the VECP, as well as those costs the Contractor incurs to make the contractual changes required by Government acceptance of a VECP.

"Government costs," as used in this clause, means those agency costs that result directly from developing and implementing the VECP, such as any net increases in the cost of testing, operations, maintenance, and logistic support. The term does not include the normal administrative costs of processing the VECP.

"Instant contract savings," as used in this clause, means the estimated reduction in Contractor cost of performance resulting from acceptance of the VECP, minus allowable Contractor's development and implementation costs, including subcontractors' development and implementation costs (see paragraph (h) below).

"Value engineering change proposal (VECP)" means a proposal that--

(1) Requires a change to this, the instant contract, to implement; and

(2) Results in reducing the contract price or estimated cost without impairing essential functions or characteristics; provided, that it does not involve a change--

(i) In deliverable end item quantities only; or

(ii) To the contract type only.

(c) VECP preparation. As a minimum, the Contractor shall include in each VECP the information described in subparagraphs (1) through (7) below. If the proposed change is affected by contractually required configuration management or similar procedures, the instructions in those procedures relating to format, identification, and priority assignment shall govern VECP preparation. The VECP shall include the following:

(1) A description of the difference between the existing contract requirement and that proposed, the comparative advantages and disadvantages of each, a justification when an item's function or characteristics are being altered, and the effect of the change on the end item's performance.

(2) A list and analysis of the contract requirements that must be changed if the VECP is accepted, including any suggested specification revisions.

(3) A separate, detailed cost estimate for (i) the affected portions of the existing contract requirement and (ii) the VECP. The cost reduction associated with the VECP shall take into account the Contractor's allowable development and implementation costs, including any amount attributable to subcontracts under paragraph (h) below.

(4) A description and estimate of costs the Government may incur in implementing the VECP, such as test and evaluation and operating and support costs.

(5) A prediction of any effects the proposed change would have on

collateral costs to the agency.

(6) A statement of the time by which a contract modification accepting the VECP must be issued in order to achieve the maximum cost reduction, noting any effect on the contract completion time or delivery schedule.

(7) Identification of any previous submissions of the VECP, including the dates submitted, the agencies and contract numbers involved, and previous Government actions, if known.

(d) Submission. The Contractor shall submit VECP's to the Resident Engineer at the worksite, with a copy to the Contracting Officer.

(e) Government action. (1) The Contracting Officer shall notify the Contractor of the status of the VECP within 45 calendar days after the contracting office receives it. If additional time is required, the Contracting Officer shall notify the Contractor within the 45-day period and provide the reason for the delay and the expected date of the decision. The Government will process VECP's expeditiously; however, it shall not be liable for any delay in acting upon a VECP.

(2) If the VECP is not accepted, the Contracting Officer shall notify the Contractor in writing, explaining the reasons for rejection. The Contractor may withdraw any VECP, in whole or in part, at any time before it is accepted by the Government. The Contracting Officer may require that the Contractor provide written notification before undertaking significant expenditures for VECP effort.

(3) Any VECP may be accepted, in whole or in part, by the Contracting Officer's award of a modification to this contract citing this clause. The Contracting Officer may accept the VECP, even though an agreement on price reduction has not been reached, by issuing the Contractor a notice to proceed with the change. Until a notice to proceed is issued or a contract modification applies a VECP to this contract, the Contractor shall perform in accordance with the existing contract. The Contracting Officer's decision to accept or reject all or part of any VECP shall be final and not subject to the Disputes clause or otherwise subject to litigation under the Contract Disputes Act of 1978 (41 U.S.C. 601-613).

(f) Sharing. (1) Rates. The Government's share of savings is determined by subtracting Government costs from instant contract savings and multiplying the result by (i) 45 percent for fixed-price contracts or (ii) 75 percent for cost-reimbursement contracts.

(2) Payment. Payment of any share due the Contractor for use of a VECP on this contract shall be authorized by a modification to this contract to--

(i) Accept the VECP;

(ii) Reduce the contract price or estimated cost by the amount of instant contract savings; and

(iii) Provide the Contractor's share of savings by adding the amount calculated to the contract price or fee.

(g) Subcontracts. The Contractor shall include an appropriate value engineering clause in any subcontract of $50,000 or more and may include one in subcontracts of lesser value. In computing any adjustment in this contract's price under paragraph (f) above, the Contractor's allowable development and implementation costs shall include any subcontractor's allowable development and implementation costs clearly resulting from a VECP accepted by the Government under this contract, but shall exclude any value engineering incentive payments to a subcontractor. The Contractor may choose any arrangement for subcontractor value engineering incentive payments; provided, that these payments shall not reduce the Government's share of the savings resulting from the VECP.

(h) Data. The Contractor may restrict the Government's right to use any part of a VECP or the supporting data by marking the following legend on

the affected parts:
"These data, furnished under the Value Engineering--Construction clause of contract ___________________, shall not be disclosed outside the Government or duplicated, used, or disclosed, in whole or in part, for any purpose other than to evaluate a value engineering change proposal submitted under the clause. This restriction does not limit the Government's right to use information contained in these data if it has been obtained or is otherwise available from the Contractor or from another source without limitations."

If a VECP is accepted, the Contractor hereby grants the Government unlimited rights in the VECP and supporting data, except that, with respect to data qualifying and submitted as limited rights technical data, the Government shall have the rights specified in the contract modification implementing the VECP and shall appropriately mark the data. (The terms "unlimited rights" and "limited rights" are defined in Part 27 of the Federal Acquisition Regulation.)

(End of clause)

97 52.249-2 I TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996)--ALTERNATE I (SEP 1996)

(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated, and (ii) the completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property

related to this contract that is in the possession of the Contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (b)(6) of this clause; provided, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(c) The Contractor shall submit complete termination inventory schedules no later than 120 days from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 120-day period.

(d) After expiration of the plant clearance period as defined in Subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, of termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary, before final settlement.

(e) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1 year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

(f) Subject to paragraph (e) of this clause, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid or remaining to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (f) or paragraph (g) of this clause, exclusive of costs shown in subparagraph (g)(3) of this clause, may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be modified, and the Contractor paid the agreed amount. Paragraph (g) of this clause shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(g) If the Contractor and Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under paragraph (f) of this clause:

(1) For contract work performed before the effective date of termination, the total (without duplication of any items) of--

(i) The cost of this work;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (g)(1)(i) of this clause; and

(iii) A sum, as profit on subdivision (g)(1)(i) of this clause, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(2) The reasonable costs of settlement of the work terminated, including--

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

(h) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (g) of this clause, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(i) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (e), (g), or (l) of this clause, except that if the Contractor failed to submit the termination settlement proposal or request for equitable adjustment within the time provided in paragraph (e) or (l), respectively, and failed to request a time extension, there is no right of appeal.

(k) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the terminated portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(l) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(m)(1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the

Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(n) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of clause)

98 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)

(a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contract or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the Government in completing the work.

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if-

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (i) acts of God or of the public enemy, (ii) acts of the Government in either its sovereign or contractual capacity, (iii) acts of another Contractor in the performance of a contract with the Government, (iv) fires, (v) floods, (vi) epidemics, (vii) quarantine restrictions, (viii) strikes, (ix) freight embargoes, (x) unusually severe weather, or (xi) delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

(2) The Contractor, within 10 days from the beginning of any delay

(unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action, the time for completing the work shall be extended. The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the Disputes clause.

(c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government.

(d) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

(End of clause)

END OF SECTION 00700

TABLE OF CONTENTS
SECTION 00800
SPECIAL CONTRACT REQUIREMENTS


| | | | |
|---|---|---|---|
| 1 | 52.39-4003 | YEAR 2000 COMPLIANCE -- CONSTRUCTION CONTRACTS | 00800-1 |
| 2 | 52.201-7000 | CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991) | 00800-1 |
| 3 | 52.211-10 | COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984) | 00800-1 |
| 4 | 52.211-12 | LIQUIDATED DAMAGES--CONSTRUCTION (APR 1984) | 00800-1 |
| 5 | 52.236-16 I | QUANTITY SURVEYS (APR 1984)--ALTERNATE I (APR 1984) | 00800-2 |
| 6 | 52.236-4004 III | PHYSICAL DATA (APR 1984) | 00800-2 |
| 7 | 52.236-7002 | OBSTRUCTION OF NAVIGABLE WATERWAYS (DEC 1991) | 00800-3 |
| 8 | 52.246-21 | WARRANTY OF CONSTRUCTION (MAR 1994) | 00800-4 |
| 9 | 52.777-4016 | WORK UNDER OTHER CONTRACTS | 00800-4 |
| 10 | 52.777-4019 | REQUIRED INSURANCE | 00800-5 |
| 11 | 52.777-4020 | PAYMENT FOR PERFORMANCE AND PAYMENT BONDS | 00800-5 |
| 12 | 52.777-4022 | TIME EXTENSIONS FOR UNUSUALLY SEVERE WEATHER | 00800-6 |
| 13 | 52.777-4047 | PARTNERING | 00800-7 |
| 14 | 52.777-4049 | WAGE RATES | 00800-7 |
| 15 | 52.777-4080 | CONTRACT ADMINISTRATION | 00800-7 |

SECTION 00800

SPECIAL CONTRACT REQUIREMENTS

1 52.039-4003 YEAR 2000 COMPLIANCE -- CONSTRUCTION CONTRACTS.

(a) In accordance with FAR 39.106, the Contractor shall ensure that with respect to any design, construction, goods, or services under this contract as well as any subsequent task/delivery orders or modifications issued under this contract, all information technology contained therein will be Year 2000 compliant.

(b) In addition, the Contractor shall:

(1) Perform, maintain, and provide an inventory of all major components to include structures, equipment, items, parts, and furnishings under this contract and each task/delivery order or modification which may be affected by the Y2K compliance requirement.

(2) Indicate whether each component is currently Year 2000 compliant or requires an upgrade for compliance prior to Government acceptance.

2 52.201-7000 CONTRACTING OFFICER'S REPRESENTATIVE (DEC 1991)

(a) Definition. "Contracting officer's representative" means an individual designated in accordance with subsection 201.602-2 of the Defense Federal Acquisition Regulation Supplement and authorized in writing by the Contracting Officer to perform specific technical or administrative functions.

(b) If the Contracting Officer designates a contracting officer's representative (COR), the Contractor will receive a copy of the written designation. It will specify the extent of the COR's authority to act on behalf of the Contracting Officer. The COR is not authorized to make any commitments or changes that will affect price, quality, quantity, delivery, or any other term or condition of the contract.

(End of clause)

3 52.211-10 COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)

The Contractor shall be required to (a) commence work under this contract within ten (10) calendar days after the date the Contractor receives the notice to proceed, (b) prosecute the work diligently, and (c) complete the entire work ready for use not later than three hundred sixty-five (365) calendar days after the date of receipt of the Notice to Proceed. The time stated for completion shall include final cleanup of the premises.

(End of clause)

4 52.211-12 LIQUIDATED DAMAGES--CONSTRUCTION (APR 1984)

(a) If the Contractor fails to complete the work within the time specified in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sum of $1,075.00 for each day of delay.

(b) If the Government terminates the Contractor's right to proceed, the resulting damage will consist of liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned the Government in completing the work.

(c) If the Government does not terminate the Contractor's right to proceed, the resulting damage will consist of liquidated damages until the work is completed or accepted.

(End of clause)

5 52.236-16 I QUANTITY SURVEYS (APR 1984)--ALTERNATE I (APR 1984)

(a) Quantity surveys shall be conducted, and the data derived from these surveys shall be used in computing the quantities of work performed and the actual construction completed and in place.

(b) The Contractor shall conduct the original and final surveys and surveys for any periods for which progress payments are requested. All these surveys shall be conducted under the direction of a representative of the Contracting Officer, unless the Contracting Officer waives this requirement in a specific instance. The Government shall make such computations as are necessary to determine the quantities of work performed or finally in place. The Contractor shall make the computations based on the surveys for any periods for which progress payments are requested.

(c) Promptly upon completing a survey, the Contractor shall furnish the originals of all field notes and all other records relating to the survey or to the layout of the work to the Contracting Officer, who shall use them as necessary to determine the amount of progress payments. The Contractor shall retain copies of all such material furnished to the Contracting Officer.

(End of clause)
(R 7-603.50(a) 1979 MAR)
(R 7-603.50(b) 1979 MAR)

6 52.236-4004 III PHYSICAL DATA (APR 1984)

Data and information furnished or referred to below is for the Contractor's information. The Government shall not be responsible for any interpretation of or conclusion drawn from the data or information by the Contractor.

(a) The indications of physical conditions on the drawings and in the specifications are the result of site investigations by surveys, auger borings and core borings.

(b) Weather Conditions. Weather conditions are typical for Southwestern Pennsylvania in season.

(c) Transportation Facilities. Roads adjacent to and leading to the site of the work are shown on the drawings. The Contractor shall make his own investigation of available roads for transportation, of load limits on bridges and roads and of other conditions affecting transportation of materials and equipment to the site of the work. The most feasible means of

access may be via the inland waterway system.

(d) River Traffic. Tows of petroleum products, coal, iron and steel products, sand, gravel and chemicals comprises the bulk of the traffic passing the site.

(e) Obstruction of Channel. The Government will not undertake to keep the channel free from vessels or other obstructions, except to the extend of such regulations, if any, as may be prescribed by the Secretary of Army, in accordance with the provisions of Section 7 of the River and Harbor Act approved 8 August 1917. The Contractor will be required to conduct the work in such manner as to obstruct navigation as little as possible, and in case the Contractor's plant so obstructs the channel as to make difficult or endanger the passage of vessels, said plant shall be promptly moved on the approach of any vessels to such an extent as may be necessary to afford a practicable passage. Upon completion of the work, the Contractor shall promptly remove his plant, including ranges, buoys, piles and other marks placed by him under the contract whether in navigable waters or on shore.

(f) Hydrographs and Hydrologic Information. Included in the file of drawings.

(g) Contractor's Responsibility for Traffic. The Contractor shall be solely responsible for conducting his operations in such manner as to avoid any interference with the safe and uninterrupted passage of all established river, rail, highway and road traffic throughout the period of this contract. He shall be responsible for any action, in connection with his operations, which causes interference with or prevents the safe passage of traffic past the site of the work.

7 52.236-7002 OBSTRUCTION OF NAVIGABLE WATERWAYS (DEC 1991)

(a) The Contractor shall--

(1) Promptly recover and remove any material, plant, machinery, or appliance which the Contractor loses, dumps, throws overboard, sinks, or misplaces, and which, in the opinion of the Contracting Officer, may be dangerous to or obstruct navigation;

(2) Give immediate notice, with description and locations of any such obstructions, to the Contracting Officer; and

(3) When required by the Contracting Officer, mark or buoy such obstructions until the same are removed.

(b) The Contracting Officer may--

(1) Remove the obstructions by contract or otherwise should the Contractor refuse, neglect, or delay compliance with paragraph (a) of this clause; and

(2) Deduct the cost of removal from any monies due or to become due to the Contractor; or

(3) Recover the cost of removal under the Contractor's bond.

(c) The Contractor's liability for the removal of a vessel wrecked or sunk without fault or negligence is limited to that provided in sections 15, 19, and 20 of the River and Harbor Act of March 3, 1899 (33 U.S.C. 410 et seq.).

(End of clause)

8 52.246-21 WARRANTY OF CONSTRUCTION (MAR 1994)

(a) In addition to any other warranties in this contract, the Contractor warrants, except as provided in paragraph (i) of this clause, that work performed under this contract conforms to the contract requirements and is free of any defect in equipment, material, or design furnished, or workmanship performed by the Contractor or any subcontractor or supplier at any tier.

(b) This warranty shall continue for a period of 1 year from the date of final acceptance of the work. If the Government takes possession of any part of the work before final acceptance, this warranty shall continue for a period of 1 year from the date the Government takes possession.

(c) The Contractor shall remedy at the Contractor's expense any failure to conform, or any defect. In addition, the Contractor shall remedy at the Contractor's expense any damage to Government-owned or controlled real or personal property, when that damage is the result of--

(1) The Contractor's failure to conform to contract requirements; or

(2) Any defect of equipment, material, workmanship, or design furnished.

(d) The Contractor shall restore any work damaged in fulfilling the terms and conditions of this clause. The Contractor's warranty with respect to work repaired or replaced will run for 1 year from the date of repair or replacement.

(e) The Contracting Officer shall notify the Contractor, in writing, within a reasonable time after the discovery of any failure, defect, or damage.

(f) If the Contractor fails to remedy any failure, defect, or damage within a reasonable time after receipt of notice, the Government shall have the right to replace, repair, or otherwise remedy the failure, defect, or damage at the Contractor's expense.

(g) With respect to all warranties, express or implied, from subcontractors, manufacturers, or suppliers for work performed and materials furnished under this contract, the Contractor shall--

(1) Obtain all warranties that would be given in normal commercial practice;

(2) Require all warranties to be executed, in writing, for the benefit of the Government, if directed by the Contracting Officer; and

(3) Enforce all warranties for the benefit of the Government, if directed by the Contracting Officer.

(h) In the event the Contractor's warranty under paragraph (b) of this clause has expired, the Government may bring suit at its expense to enforce a subcontractor's, manufacturer's, or supplier's warranty.

(i) Unless a defect is caused by the negligence of the Contractor or subcontractor or supplier at any tier, the Contractor shall not be liable for the repair of any defects of material or design furnished by the Government nor for the repair of any damage that results from any defect in Government-furnished material or design.

(j) This warranty shall not limit the Government's rights under the Inspection and Acceptance clause of this contract with respect to latent defects, gross mistakes, or fraud.

(End of clause)
(R 7-604.4 1976 JUL)

9 52.777-4016 WORK UNDER OTHER CONTRACTS

Attention is directed to the fact that other Contractors may be employed by the Government or by local interests at or in the vicinity of the work covered by these specifications. All Contractors shall have equal rights to the use of all roads and grounds so far as practicable and this Contractor shall cooperate with other Contractors so that the work may be performed with the maximum efficiency. Should a disagreement occur between Contractors as to the use of facilities or in other matters, the decision of the Contracting Officer shall govern. (See also the clause of the contract entitled "Other Contracts").

10 52.777-4019 REQUIRED INSURANCE

a. The Contractor shall procure and maintain during the entire period of his performance under this contract, the following minimum insurance. (See also the clause of the contract entitled "Insurance - Work on a Government Installation").

| Type | Bodily Injury | Amount | Property Damage |
|---|---|---|---|
| Comprehensive General Liability | $500,000 | Per Occurrence | $100,000 |
| Automobile Liability | 200,000 | Each Person | XXXXXXX |
| | 500,000 | Per Occurrence | 20,000 |
| Workmen's Compensation and Employers Liability | | $100,000 | |

b. The Contracting Officer will notify the Contractor of any noncompliance with the foregoing provisions. The Contractor shall, after receipt of such notice, immediately comply. Such notice, when delivered to the Contractor or his representative at the site or mailed to the Contractor's address, will be deemed sufficient for the purpose. If the Contractor fails or refuses to comply promptly, the Contracting Officer may issue an order stopping all or part of the work until the Contractor complies. No part of the time lost due to any such stop orders shall be made the subject of a claim for extension of time or for excess costs or damages by the Contractor. Compliance with the provisions of this article by subcontractors will be the responsibility of the Contractor.

c. Longshoreman and Harbor Worker's Insurance MAY be required for this work. Please consult with your insurance carrier and applicable statutes (33 USC 901, et. seq.).

11 52.777-4020 PAYMENT FOR PERFORMANCE AND PAYMENT BONDS

a. Paragraph (g) of the clause entitled "Payments Under Fixed-Price Construction Contracts", provides for reimbursement of premiums paid to the surety or sureties for performance and payment bonds. In order to ensure sufficient funds have been set-aside for payment of such premiums, bidders shall insert in Bid Item No. 0001, an appropriate not-to-exceed dollar amount. Failure of bidders to insert a not-to-exceed dollar amount in Bid Item No. 0001 will cause the bid to be rejected as non-responsive.

b. Notwithstanding the clause entitled, "Payments Under Fixed-Price Construction Contracts", the Contractor shall be reimbursed the actual bond costs only, as established by evidence of

full payment to the surety, up to the dollar amount set forth in Bid Item No. 0001. In no case will the Contractor be reimbursed an amount which exceeds the dollar amount set forth in Bid Item No. 0001.

c. The Government will reimburse only the Prime Contractor for actual paid bond premiums. The Government will not reimburse any subcontractor's paid bond premiums.

12 52.777-4022 TIME EXTENSIONS FOR UNUSUALLY SEVERE WEATHER

a. This provision specifies the procedure for the determination of time extensions for unusually severe weather in accordance with the clause entitled "Default (Fixed-Price Construction)". In order for the Contracting Officer to award a time extension under this clause, the following conditions must be satisfied.

(1) The weather experienced at the project site during the contract period must be found to be unusually severe; that is, more severe than the adverse weather anticipated for the project location during any given month.

(2) The unusually severe weather must actually cause a delay to the completion of the project. This delay must be beyond the control and without the fault or negligence of the Contractor.

b. The following schedule of monthly anticipated adverse weather delays is based on National Oceanic and Atmospheric Administration (NOAA) or similar data for the project location and will constitute the base line for monthly weather time evaluations. The Contractor's progress schedule must reflect these anticipated adverse weather delays in all weather dependent activities.

MONTHLY ANTICIPATED ADVERSE WEATHER DELAY
WORK DAYS BASED ON (5) DAY WORK WEEK

| JAN | FEB | MAR | APR | MAY | JUN | JUL | AUG | SEP | OCT | NOV | DEC |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 8 | 6 | 5 | 6 | 5 | 5 | 4 | 4 | 4 | 5 | 8 |

c. Upon acknowledgment of the Notice to Proceed (NTP) and continuing throughout the contract, the Contractor will record on the daily CQC report, the occurrence of adverse weather and resultant impact to normally scheduled work. Actual adverse weather delay days must prevent work on critical activities for 50 percent or more on the Contractor's scheduled work day. The number of actual adverse weather delay days shall include days impacted by actual adverse weather (even if adverse weather occurred in previous month), be calculated chronologically from the first to the last day of each month, and be recorded as full days. If the number of actual adverse weather delay days exceeds the number of days anticipated in paragraph b. above, the Contracting Officer will convert any qualifying delays to work days, giving full consideration for equivalent fair weather work days, and issue a modification in accordance with the clause entitled, "Default (Fixed-Price Construction)".

d. The anticipated adverse weather work days listed above are based on days with precipitation greater than 0.1 inch and/or maximum temperature below 32 degrees F. The numbers shown represent the number of work days (not calendar days) normally expected to have these particular weather conditions based on historical data obtained

from the "Climatography of the United States No. 20". The actual number of days will vary. This information is furnished for computation of possible time extensions due to weather delays and is not intended to imply that no work can be done on these days. The Contractor shall make his own determination of the effect of these conditions on his operations under this contract, and schedule his work accordingly.

13 52.777-4047 PARTNERING

In order to most effectively accomplish this contract, the Government is willing to form a cohesive partnership with the Contractor and its subcontractors. This partnership would strive to draw on the strengths of each organization in an effort to deliver a quality product, in an efficient and safe manner, on schedule. This partnership would be bilateral in makeup and participation will be totally voluntary. Any cost associated with effectuating this partnership will be agreed to by both parties and will be shared equally with no change in the contract price.

14 52.777-4049 WAGE RATES

The attached schedule of wage rates, Department of Labor General Decision No. PA980004 contains rates applicable to all work under the contract.

15 52.777-4080 CONTRACT ADMINISTRATION

After award of the contract and receipt of a signed copy of Notice to Proceed, the contract will be transferred to Mr. Ronald J. Dunnington, Successor Contracting Officer, for contract administration. All correspondence or telephone inquiries prior to issuance of Notice to Proceed should be addressed to:

US Army Engineer District, Pittsburgh
Contracting Division, Rm 727
William S. Moorhead Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-4186
Telephone: 412-395-7479

All correspondence or telephone inquiries after issuance of Notice to Proceed which need to be addressed to the Contracting Officer should be sent to:

US Army Engineer District, Pittsburgh
Contracting Division, Rm 727
William S. Moorhead Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-4186
Telephone: 412-395-7471

All correspondence or telephone inquiries after issuance of Notice to

Proceed which need to be addressed to the Area Engineer should be sent to:

US Army Engineer District, Pittsburgh
Area Engineer Office
3510 Grand Avenue, Neville Island
Pittsburgh, PA 15225-1584
Telephone: 412-644-6318

An original and two (2) complete copies of all correspondence shall be furnished to the Area Office.

END OF SECTION 00800

BOND NO.: 1142814

| PERFORMANCE BOND (See instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract): March 24 1999 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Airport Industrial Park, Inc. d/b/a<br>P.B.C. Contracting Engineers<br>4414 Lexington Street<br>Pittsburgh, PA 15214 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☑ CORPORATION<br>STATE OF INCORPORATION: Pennsylvania |

| SURETY(IES) (Name and business address) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| AMWEST SURETY INSURANCE COMPANY<br>4 Northshore Center, Ste 500<br>104 Isabella Street<br>Pittsburgh, PA 15212 | 4 | 144 | 931 | 00 |
| | CONTRACT DATE: 03/25/1999 | | CONTRACT NO.: DACW59-99-C-0042 | |

**OBLIGATION**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
William A. [signature] 4/8/99
OFFICE OF COUNSEL DATE

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal -

(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under contract, and (2) performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

**PRINCIPAL**

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | Paul E. Chambers Pres. (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | Paul E. Chambers<br>President | | | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) (Typed) | | |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | AMWEST SURETY INSURANCE COMPANY<br>4 Northshore Ctr #500, Pittsburgh, PA 15212 | STATE OF INC. NEBRASKA | LIABILITY LIMIT $ 7,410,000.00 | Corporate Seal |
| SIGNATURE(S) | 1. James K. Flavin [signature] | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact James K. Flavin | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV 5-96)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

BOND NO. 1[illegible]

## CORPORATE SURETY(IES) (Continued)

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. Attorney-in-Fact | 2. | | |

| BOND PREMIUM | RATE PER THOUSAND ($) | TOTAL ($) |
|---|---|---|
| | | 33,451.00 |

## INSTRUCTIONS

1. This form is authorized for use in connection with Government contracts. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)". In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal"; and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

BOND NO.: 1361636 ... NUM: PAGE ONE OF TWO PAGES

| PAYMENT BOND | DATE BOND EXECUTED (Must be same or later than date of contract) March 25 1999 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office Of Federal Acquisition Washington, DC 20405; and to the Office of Management and the Budget, Paperwork Reduction Project (9000-0045), Washington, D C 20503

PRINCIPAL (Legal name and business address)

Airport Industrial Park, Inc. d/b/a
F.R.O. Contracting Engineers
4410 Lorigan Street
Pittsburgh, PA 15224

TYPE OF ORGANIZATION ("X" one)

- [ ] INDIVIDUAL
- [ ] PARTNERSHIP
- [ ] JOINT VENTURE
- [x] CORPORATION

STATE OF INCORPORATION

Pennsylvania

SURETY(IES) (Name and business address)

AMWEST SURETY INSURANCE COMPANY
4 Northshore Center, Ste 200
106 Isabella Street
Pittsburgh, PA 15212

PENAL SUM OF BOND

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 1 | 169 | 772 | 40 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 03/23/1999 | DACW59-99-C-0001 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly" and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY
[signature] 4/14/99
OFFICE OF COUNSEL DATE

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

PRINCIPAL

| | | | |
|---|---|---|---|
| Signature(s) | 1. [signature] (Seal) | 2. (Seal) | 3. (Seal) |
| Name(s) & Title(s) (Typed) | 1. Paul E. Chambers President | 2. | 3. |

INDIVIDUAL SURETIES

| | | |
|---|---|---|
| Signature(s) | 1. (Seal) | 2. (Seal) |
| Name(s) (Typed) | 1. | 2. |

CORPORATE SURETY(IES)

| | | | | |
|---|---|---|---|---|
| SURETY A Name & Address | AMWEST SURETY INSURANCE COMPANY 4 Northshore Center #200, Pittsburgh, PA 15212 | STATE OF INC. NEBRASKA | LIABILITY LIMIT $ 2,810,110.00 | [corporate seal] |
| Signature(s) | 1. [signature] | 2. | | |
| Name(s) & Titles (Typed) | 1. Attorney-in-Fact James K. Flavion | 2. | | |

BOND NO. [illegible] PAGE TWO OF TWO PAGES

**CORPORATE SURETY(IES) (Continued from page one)**

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY C | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY D | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY E | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY F | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |
| SURETY G | Name & Address | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | Signature(s) | 1. | 2. | | |
| | Name(s) & Title(s) (Typed) | 1. Attorney-in-Fact | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270 a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)". In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal"; and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction regarding adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

# LIMITED POWER OF ATTORNEY

**Amwest Surety Insurance Company**
**Far West Insurance Company**

POWER NUMBER 8000043632

This document is printed on white paper containing the artificial watermarked logo ( ) of Amwest Surety Insurance Company on the front and brown security paper on the back. Only unaltered originals of the Limited Power of Attorney ("POA") are valid. This POA may not be used in conjunction with any other POA. No representations or warranties regarding this POA may be made by any person. This POA is governed by the laws of the State of Nebraska and is only valid until the expiration date. Amwest Surety Insurance Company and Far West Insurance Company (collectively the "Company") shall not be liable on any limited POA which is fraudulently produced, forged or otherwise distributed without the permission of the Company. Any party concerned about the validity of this POA or an accompanying Company bond should call your local Amwest branch office at (412) 322-2311

KNOW ALL BY THESE PRESENT, that Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation (collectively the "Company"), do hereby make, constitute and appoint:

James K. Flavien
Timothy F. Salvati
Karen M. Comport
James M. Griffith
As Employees of Amwest Surety Insurance Co

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereto if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follows:

All Bonds up to $15,000,000.00

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company, which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors of both Amwest Surety Insurance Company and Far West Insurance Company set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of each company, are now in full force and effect.

Bond No. 1382830 Signed & sealed this 25th day of March 19 99

Karen G. Cohen, Secretary

**RESOLUTIONS OF THE BOARD OF DIRECTORS**

This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975 and Far West Insurance Company at a meeting duly held on July 28, 1983:

RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.

RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and bind upon the Company:

(i) when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or
(ii) when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or
(iii) when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company and Far West Insurance Company have caused these presents to be signed by its proper officers, and its corporate seals to be hereunto affixed this 25th day of September, 1998.

John E. Savage, President

Karen G. Cohen, Secretary

State of California
County of Los Angeles

On September 25, 1998 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature (Seal)

PEGGY B. LOFTON
Commission #1068068
Notary Public — California
Los Angeles County
My Comm. Expires Aug 6, 1999

5230 Las Virgenes Road Calabasas, CA 91302 TEL 818 871-2000

# REINSURANCE AGREEMENT FOR A MILLER ACT PERFORMANCE BOND

(See instructions on reverse)

| | |
|---|---|
| 1. DIRECT WRITING COMPANY* <br> Amwest Surety Insurance Company <br> 5230 Las Virgenes Road <br> Calabasas, CA 91302 | 1A. DATE DIRECT WRITING COMPANY EXECUTES THIS AGREEMENT <br> March 25, 1999 <br> 1B. STATE OF INCORPORATION <br> Nebraska |
| 2. REINSURING COMPANY* <br> Swiss Reinsurance America Corporation <br> 237 Park Avenue <br> New York, NY 10017 | 2A. AMOUNT OF THIS REINSURANCE <br> $ 2,646,131.00 <br> 2B. DATE REINSURING COMPANY EXECUTES THIS AGREEMENT <br> March 15, 1999 <br> 2C. STATE OF INCORPORATION <br> New York |

| 3. DESCRIPTION OF CONTRACT | | 4. DESCRIPTION OF BOND | |
|---|---|---|---|
| 3A. AMOUNT OF CONTRACT <br> $4,646,931.00 | | 4A. PENAL SUM OF BOND <br> $4,646,931.00 | |
| 3B. CONTRACT DATE <br> March 25, 1999 | 3C. CONTRACT NO. <br> DACW59-99-C-0002 | 4B. DATE OF BOND <br> March 25, 1999 | 4C. BOND NO. <br> 1382830 |
| 3D. DESCRIPTION OF CONTRACT <br> New Dock Front, Pittsburgh Engineer Warehouse and Repair Shops, Neville Island, PA <br> REVIEWED AND APPROVED FOR LEGAL SUFFICIENCY <br> William G. Schrade 4/14/99 <br> OFFICE OF COUNSEL DATE | | 4D. PRINCIPAL* <br> Airport Industrial Park, Inc. d/b/a <br> P.E.C. Contracting Engineers <br> 4420 Lorigan Street <br> Pittsburgh, PA 15224 | |
| 3E. CONTRACTING AGENCY <br> Dept of Army, Corps of Engineers | | 4E. STATE OF INCORPORATION (If Corporate Principal) <br> Pennsylvania | |

AGREEMENT.

(a) The Direct Writing Company named above is bound as a surety to the United States of America on the performance bond described above, wherein the above described is the principal, for the protection of the United States on the contract described above. The contract is for the construction, alteration, or repair of a public building or public work of the United States and the performance bond was furnished to the United States under the Act of August 24, 1935, as amended (40 U.S.C. 270a-270e), known as the Miller Act. The Direct Writing Company has applied to the Reinsuring Company named above to be reinsured and countersecured in the amount shown opposite the name of the Reinsuring Company (referred to as the "Amount of this Reinsurance"), or for whatever amount less than the "Amount of this Reinsurance" the Direct Writing Company is liable to pay under or by virtue of the performance bond.

(b) For a sum mutually agreed upon, paid the the Direct Writing Company to the Reinsuring Company which acknowledges its receipt, the parties to this Agreement covenant and agree to the terms and conditions of this agreement.

TERMS AND CONDITIONS.

(a) The purpose and intent of this agreement is to guarantee and indemnify the United States against loss under the performance bond to the extent of the "Amount of this Reinsurance," or any sum less than the "Amount of this Reinsurance" that is owing and unpaid by the Direct Writing Company to the United States under the performance bond.

(b) If the Direct Writing Company fails to pay any default under the performance bond equal to or in excess of the "Amount of this Reinsurance," the Reinsuring Company covenants and agrees to pay to the United States, the obligee on the performance bond, the "Amount of this Reinsurance." If the Direct Writing Company fails to pay to the United States any default for a sum less than the "Amount of this Reinsurance" the Reinsuring Company covenants and agrees to pay to the United States the full amount of the default, or so much thereof that is not paid to the United States by the Direct Writing Company.

(c) If there is a default on the performance bond for the "Amount of this Reinsurance," or more, the Reinsuring Company and the Direct Writing Company hereby covenant and agree that the United States may bring suit against the Reinsuring Company for the "Amount of this Reinsurance" or, in the case the amount of the default is for less than the "Amount of this Reinsurance," for the full amount of the default.

WITNESS.

The Direct Writing Company and the Reinsuring Company, respectively, have caused this Agreement to be signed and impressed with their respective corporate seals by officers possessing power to sign this instrument, and to be duly attested by officers empowered thereto, on the day and date above written opposite their respective names.

* Items 1, 2, 4D—Furnish legal name, business address and ZIP Code.

5. DIRECT WRITING COMPANY

| 5A. (1) SIGNATURE | (2) ATTEST: SIGNATURE | |
|---|---|---|
| [signature] | [signature] | Corporate Seal |
| 5B. (1) NAME AND TITLE (Typed) | (2) NAME AND TITLE (Typed) | |
| James K. Flavion, Attorney-in-Fact | James M. Griffith, Witness | |

6. REINSURING COMPANY

| 6A. (1) SIGNATURE | (2) ATTEST: SIGNATURE | |
|---|---|---|
| [signature] | [signature] | Corporate Seal |
| 6B. (1) NAME AND TITLE (Typed) | (2) NAME AND TITLE (Typed) | |
| James K. Flavion, Attorney-in-Fact | Karen M. Comport, Witness | |

## INSTRUCTIONS

This form is to be used in cases where it is desired to cover the excess of a Direct Writing Company's underwriting limitation by reinsurance instead of co-insurance on Miller Act performance bonds running to the United States. See FAR (48 CFR) 28.202-1 and 53.228(h).

Execute and file this form, as follows

Original and copies (as specified by the bond-approving officer), signed and sealed, shall accompany the bond or be filed within the time period shown in the bid or proposal.

One carbon copy, signed and sealed, shall accompany the Direct Writing Company's quarterly Schedule of Excess Risks filed with the Department of the Treasury.

Other copies may be prepared for the use of the Direct Writing Company and the Reinsuring Company. Each Reinsuring Company should use a separate form.

# LIMITED POWER OF ATTORNEY

## Amwest Surety Insurance Company
## Far West Insurance Company

POWER NUMBER 0000851034

This document is printed on white paper containing the artificial watermarked logo ( ) of Amwest Surety Insurance Company on the front and brown security paper on the back. Only unaltered originals of the Limited Power of Attorney ("POA") are valid. This POA may not be used in conjunction with any other POA. No representations or warranties regarding this POA may be made by any person. This POA is governed by the laws of the State of Nebraska and is only valid until the expiration date. Amwest Surety Insurance Company and Far West Insurance Company (collectively the "Company") shall not be liable on any limited POA which is fraudulently produced, forged or otherwise distributed without the permission of the Company. Any party concerned about the validity of this POA or an accompanying Company bond should call your local Amwest branch office at (413) 322-2311

KNOW ALL BY THESE PRESENT, that Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation (collectively the "Company"), do hereby make, constitute and appoint:

James K. Flavies
Timothy F. Selvad
Karen M. Gemmert
James M. Griffith
As Employees of Amwest Surety Insurance Co

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereto if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follows:

All Bonds up to $25,000,000.00

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company, which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors of both Amwest Surety Insurance Company and Far West Insurance Company set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of each company, are now in full force and effect.

Bond No. 1382830 Signed & sealed this 25th day of March 19 99

Karen G. Cohen, Secretary

**RESOLUTIONS OF THE BOARD OF DIRECTORS**

This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975 and Far West Insurance Company at a meeting duly held on July 28, 1983:

RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.

RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and binding upon the Company:

(i) when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or
(ii) when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or
(iii) when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.

RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company and Far West Insurance Company have caused these presents to be signed by its proper officers, and its corporate seals to be hereunto affixed this 25th day of September, 1998.

John E. Savage, President

Karen G. Cohen, Secretary

State of California
County of Los Angeles

On September 25, 1998 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature (Seal)

PEGGY B. LOFTON
Commission #1056044
Notary Public — California
Los Angeles County
My Comm. Expires Aug 4, 1999

AMWEST SURETY INSURANCE COMPANY INCORPORATED DEC. 16, 1987 NEBRASKA

FAR WEST INSURANCE COMPANY INCORPORATED DEC. 14, 1983 NEBRASKA

5230 Las Virgenes Road Calabasas, CA 91301 TEL 818 871-2000

CONTRACT File

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

REPLY TO
ATTENTION OF

August 17, 2001

Contracting Division

SUBJECT: Termination for Default, Contract No. DACW59-99-C-0002, New Dock Front at PEWARS

Mr. Paul E. Chambers, President
P.E.C. Contracting Engineers
4420 Lorigan Street
Pittsburgh, Pennsylvania 15224

Dear Mr. Chambers:

Contract number DACW59-99-C-0002, dated December 1, 1998, is hereby terminated for default pursuant to contract clause FAR 52.249-10, Default (Fixed-Price Construction) for the reasons that you have failed to make adequate progress, you have failed to provide an acceptable Payment Bond, and you have failed to pay your subcontractors in accordance with the contract provisions. You were issued a cure notice on July 31, 2001, and you neglected to submit a response or cure these failures. Therefore, I have no alternative but to terminate your contract for default.

Your right to proceed further under the contract is completely terminated, effective immediately upon your receipt of this notice. The work required by the subject contract may be purchased against your account, and you will be held liable for any excess costs.

The Government reserves all rights and remedies provided by law or under the contract, in addition to charging for any excess costs.

You are hereby directed to vacate the contract premises. However, prior to vacating you must secure or otherwise arrange for transfer or relinquishment of all contract materials and supplies relevant to the subject contract. You must also ensure cleanup of the site, protect any serviceable materials remaining at the site, remove any hazards, and take any other necessary steps to leave the site safe and healthful.

Printed on Recycled Paper

This notice constitutes my Final Decision as Contracting Officer that P.E.C. is in default of the subject contract. You have the right to appeal this decision under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you desire to make such an appeal, you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within 90 days of the date you receive this decision. A copy of your appeal shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate an appeal is intended, reference this decision, and identify the contract by number. The notice shall also include a copy of this decision. With regards to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less, or its accelerated procedure for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. 603, regarding maritime contracts) within 12 months from the date you receive this decision.

Sincerely,

Michael S. DeStefano

Michael S. DeStefano
Contracting Officer

Copy Furnished:
CELRD-OC (Gourlay)
Swiss Reinsurance America Corp.
Small Business Administration
SADBU-Pittsburgh District

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

REPLY TO
ATTENTION OF

August 17, 2001

Contracting Division

SUBJECT: Termination for Default, Contract No. DACW59-99-C-0002, New Dock Front at PEWARS

Mr. Patrick O'Brien, Esq.
Associate General Counsel
Swiss Reinsurance America Corporation
175 King Street
Armonk, New York 10504

Dear Attorney O'Brien:

Attached is a notice of default termination to P.E.C. Contracting Engineers. Swiss Reinsurance America Corp. provided the performance bond (attached) to the Government on the subject contract.

You are hereby requested to advise the undersigned, within ten (10) days of receipt of this notice, if Swiss Reinsurance desires to arrange for completion of the work. If so, please provide the name(s) of the person(s) or firm(s) proposed to complete the work. A "takeover" agreement may be required to be executed between the Government and Swiss Reinsurance.

If you decide not to arrange for completion of the contract, the Government will arrange for completion. You will subsequently be advised of your liability for damages under the terms of the performance bond.

If you have any questions or comments, please contact William A. Lubick, Assistant District Counsel at (412) 395-7495.

Sincerely,

Michael S. DeStefano

Michael S. DeStefano
Contracting Officer

Printed on Recycled Paper

# COMPLETION AGREEMENT

**THIS AGREEMENT** is entered into this 25th day of April, 2002 by and between the United States of America (hereinafter called the "Government"), represented by the Contracting Officer executing this Agreement, and Swiss Reinsurance America Corporation (hereinafter called the "Surety"), and Port Vue Plumbing, Inc. (hereinafter called the "Completion Contractor").

## RECITALS

**WHEREAS**, the Government entered into a construction contract with Airport Industrial Park, Inc. d/b/a P.E.C. Contracting Engineers (the "Contractor"), Contract No. DACW59-99-C-0002 with an adjusted contract amount of $6,184,273.67 (the "Contract"), for work described as "New Dock Front at PEWARS, Neville Island, PA" (the Contract), the Contractor and its surety, Amwest Surety Insurance Company, executed and delivered to the Government Performance Bond bearing number 13822830 (the "Performance Bond").

**WHEREAS**, the Surety having provided reinsurance of the Performance Bond to the extent of $2,646,931.00.

**WHEREAS**, by letter dated August 17, 2001, the Government/obligee notified the Contractor/principal that it was declaring the Contractor/principal in default of the Contract; the Government made demand on Surety to honor its obligations under its reinsurance of the Performance Bond;

**WHEREAS**, the Surety desires to effect the completion of the work covered by the Contract in order to preserve continuity of performance, to expedite completion, and to avoid the expense, delay and inconvenience of reprocurement;

**WHEREAS**, pursuant to an agreement between the Government and the Surety ("Partial

Completion Agreement"), the Surety completed certain work in connection with Phase I and the Downstream Return Wall, described as Controlled Low-Strength Material (CLSM), Concrete Waler Beam, and stressing of the rock anchors ("Concrete Work"), and all payments by Swiss Re in excess of the contract payments received from the Government in doing so are a credit reducing the $2,646,931.00 penal sum liability of the reinsurance provided by Surety;

**WHEREAS**, the Surety is willing and desires to complete the remaining work of the Contract under the Performance Bond in accordance with the terms of this Agreement as a measure of cooperation with the Government and as a measure of minimizing its costs; and as hereafter described and set forth below.

**WHEREAS,** the Government is willing to accept the performance of obligations under the Contract by the Completion Contractor as the contractor tendered by the Surety.

**NOW, THEREFORE**, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy thereof being hereby acknowledged, the Government, the Surety, and Completion Contractor agree as follows:

1. All recitals set forth above are incorporated by reference.

2. Up to the penal sum limitation of the reinsurance noted above, and as such penal sum has been reduced by payments by the Surety, Surety shall remain liable for all work performed under the contract prior to the execution of this Agreement, including any latent defects in work performed up until the date of execution of this Agreement and for any necessary corrective work on previously performed work under the contract that is unknown and/or unidentified to date.

3. The Completion Contractor's price for performing the remaining work is $3,619,630.00. Completion Contractor agrees that its price to complete includes all work to be

completed as shown on the attached schedule of values and unit prices **(Exhibit "A")**, all in accordance with the plans and specifications for the Project, and any known uncompleted or necessary corrective work as of the date of this Agreement. The Government shall award the remaining contract to the Completion Contractor who shall perform the remaining work under the terms and conditions of the original contract, with the exception that Liquidated Damages shall now be assessed at $300.00 per day and shall be held in abeyance until this contract completion date of on or before **September 15, 2002**. The Government agrees to this change in Contract time notwithstanding any statement to the contrary in Contract Modification 0005. It is agreed that Any Liquidated Damages assessed prior to signing of this Agreement, to wit, the sum of $60,900.00, shall be the responsibility of the Surety and have been deducted from payments otherwise due to the Surety. The Government maintains that remaining contract funds balance (after the liquidated damages deduction) is $2,452,828.47. The Surety maintains that remaining contract funds balance (after the liquidated damages deduction) is $2,882,307.22. Therefore, although the contract funds balance is currently in dispute, the Government and the Surety agree that the parties shall attempt negotiate a final number to be resolved by contract amendment or by the appropriate dispute resolution process, including, if applicable, the Contract Disputes Act.

4. The Government shall pay the Completion Contractor for the quantities or lump sum only at the prices set forth the Original Contract, or as set forth in **Exhibit "A"**. As such lump sum items and/or quantities are approved for payment by the Government, and up to its maximum penal sum amount as set forth in paragraph 6 herein, Surety shall pay the Completion Contractor the difference between the Base Contract or PEC Contracting prices and Completion Contractor's prices shown in **Exhibit "A"**. Such payments shall be for the quantities approved for payment by the Government. Completion Contractor shall submit a copy of all payment

requisitions to Surety, and provide appropriate documentation of the Government's approved quantities for each such requisition. In the event that payment by the Surety exceeds the amount due to Completion Contractor pursuant to Exhibit "A", Surety shall be entitled to a credit against future payments to Completion Contractor. Payments by Surety pursuant to this Agreement, including but not limited to payments pursuant to this paragraph, shall also reduce the penal sum of the reinsurance provided by Surety.

5. Upon execution of this Agreement the Completion Contractor shall deliver, for the benefit of the Government, a new performance bond and a payment bond under the contract, in amounts to cover the remaining contract balances, from a Surety on the Department of the Treasury list of approved sureties, and shall provide all necessary insurances. The Government will not be responsible for any additional payment for these bonds. Except as set forth herein, Surety agrees that there are no outstanding unpaid prior earnings due to it under the Contract. During the progress of the completion work, Government shall hereafter conduct business directly with the Completion Contractor as if it is the prime contractor under the original contract and future payments under this contract shall be made directly to:

PORT VUE PLUMBING, INC.
Attn: Rich Perkoski

3715 Liberty Way

McKeesport, PA 15133

6. The Surety has expended a total of $533.936.00 in payments to its completion contractor in connection with the Partial Completion Agreement. In addition, the Surety has expended $62,983.51 ($34,518.35 + $28,456.16) in storage fees for materials required for completion of the remaining work, bringing the total expenditures by the Surety to $596,919.51.

The Surety acknowledges total payments of $355,477.57 for such work from the Corps, bringing the net expenditure by the Surety to $241,441.94. Thus, the penal sum, the measure of the Surety's total liability, is reduced to **$2,405,489.06**. The Surety agrees to provide documentation establishing the amount paid for any and all expenses claimed.

7. The Completion Contractor agrees to assume responsibility to the Government for all warranties due under the total contract regardless of whether the specific warranty relates, in whole or in part, to the work performed before it began the completion work.

8. The Government accepts the Surety's tender of the Completion Contractor and Surety's payment of the excess costs of the completion due to Completion Contractor under paragraph 3 above as full and complete settlement of its obligations to complete under the performance bond. The Government hereby waives any and all rights to further actions and costs against the Surety under the Surety's Performance Bond except as otherwise set forth in this Agreement. The Surety hereby waives its rights to sue the Government, seek damages, or demand payment from the Government on any issues for work performed by Completion Contractor after the date of this agreement except that Surety reserves its right to (1) dispute the Government's determination of quantities approved for payment to Completion Contractor; and (2) dispute its obligation to perform work pursuant to paragraph 2 of this Agreement. Neither party to this contract intends hereby to waive the rights of others except to the extent that those others may seek to sue as a subrogee to the rights waived herein. Specifically, the Surety does not intend to waive the rights of P.E.C. or of subcontractors of P.E.C. to pursue claims for equitable adjustment against the Government.

9. This Agreement constitutes the whole of the understanding, discussions, and agreements by and between the parties hereto. Any written or oral discussions conducted prior

to the effective date hereof, shall not in any way vary, alter or modify the terms of this Agreement. This Agreement shall not be amended or altered in any way except in writing and executed by both the Government and the Surety.

10. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

11. The parties hereby agree to cooperate fully with each other to the end that the Project may be completed as efficiently and expeditiously as reasonably possible under the circumstances.

12. The provisions of this Agreement shall be applied and interpreted in a manner consistent with each other so as to carry out the purposes and intent of the parties, but, if for any reason any provision is unenforceable or invalid, such provision shall be deemed severed from this Agreement and the remaining provisions shall be carried out with the same force and effect as if the severed portion had not been a part of this Agreement.

13. This Agreement becomes effective upon execution by all parties to this Agreement, and shall be deemed the date of any required Notice to Proceed.

14. Nothing contained in this Agreement shall be considered as an admission of liability by any party.

15. This Agreement shall extend to and be binding upon the parties and their respective successors and assigns. No right shall accrue hereunder to or for the use of any other person, firm, corporation or government entity other than the parties hereto and their respective successor, assigns, and reinsurers.

**IN WITNESS THEREOF**, the parties hereunder have caused to set their hands, and the person executing this document on behalf of each party hereby represents that he/she possesses

all authority requisite to so bind such party.

5/02/0

**ATTEST:**

William A. Lubeck

DATE: April 25, 2002

**UNITED STATES OF AMERICA**

By: Mark S. De Stefano
Contracting Officer

w/exception to Exhibit B paragraph 2 duplex drill is required

**ATTEST:**

Ruth DiBenedetto

DATE: 5-6-02

**SWISS REINSURANCE AMERICA CORPORATION**

By: Michael Miller

**ATTEST:**

DATE: April 30 2002

**PORT VUE PLUMBING, INC.**

By: Rick Pukoski
Pres.

See EXHIBIT "B"

March 29, 2002

**Relet Bid Comparison**

New Dock Front at PEWARS, Neville Island, PA

| | | | | Base Contract | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PEC Contracting | | Port Vue Plumbing | | PEC with inserted unit prices | |
| Item No. | Description of Work | Quantity | Units | Unit Price | Amount | Unit Price | Amount | Unit Price | Amount |
| 0001 | Bond Premium | 1 | EA | lump sum | $24,549.00 | lump sum | $27,000.00 | lump sum | $24,549.00 |
| 0002 | Progress Photos | 5 | EA | $850.00 | $4,250.00 | $800.00 | $4,000.00 | $850.00 | $4,250.00 |
| 0003 | Removals | 1 | EA | lump sum | $25,000.00 | lump sum | $45,000.00 | lump sum | $25,000.00 |
| 0004 | Resteel | 97,160 | LBS | $0.60 | $58,296.00 | $1.40 | $136,024.00 | $0.60 | $58,296.00 |
| 0005 | Sheeting (complete) | 3,467* | LF | $39.00 | $135,213.00 | $38.00 | $131,746.00 | $39.00 | $135,213.00 |
| 0005a | Sheeting (deliver & erect) | 18,240* | LF | $25.00 | $456,000.00 | $23.00 | $419,520.00 | $23.00 | $419,520.00 |
| 0006 | Misc. Metals (complete) | 36,000* | LBS | $1.68 | $60,480.00 | $1.20 | $43,200.00 | $1.68 | $60,480.00 |
| 0006a | Misc. Metals (erect only) | 11,660* | LBS | $2.00 | $23,320.00 | $1.50 | $17,490.00 | $1.50 | $17,490.00 |
| 0007 | Storm Pipe Extension | 1 | EA | lump sum | $10,000.00 | lump sum | $12,000.00 | lump sum | $10,000.00 |
| 0008a | Fenders (fab, coat & erect) | 1,000* | LF | $185.00 | $185,000.00 | $100.00 | $100,000.00 | $100.00 | $100,000.00 |
| 0008b | Closures | 60* | LF | $166.00 | $9,960.00 | $185.00 | $11,100.00 | $185.00 | $11,100.00 |
| 0008c | Ladder Recess | 1,610* | LF | $79.00 | $127,190.00 | $91.00 | $146,510.00 | $91.00 | $146,510.00 |
| 0009 | Access Ladders (erect) | 196* | LF | $120.00 | $23,520.00 | $130.00 | $25,480.00 | $130.00 | $25,480.00 |
| 0010 | Select Fill Material | 2,418 | CY | $33.00 | $79,794.00 | $39.00 | $94,302.00 | $33.00 | $79,794.00 |
| 0011 | Controlled Low Strength Material | 2,803 | CY | $76.00 | $213,028.00 | $140.00 | $392,420.00 | $76.00 | $213,028.00 |
| 0012 | Concrete for Minor Structures | 523 | CY | $287.00 | $150,101.00 | $330.00 | $172,590.00 | $287.00 | $150,101.00 |
| 0013a | Rock Anchors | 69 | EA | $12,261.00 | $846,009.00 | $17,600.00 | $1,214,400.00 | $12,261.00 | $846,009.00 |
| 0013c | Grout and Redrill Anchor Holes | 24 | EA | $1,360.00 | $32,640.00 | $2,000.00 | $48,000.00 | $1,360.00 | $32,640.00 |
| 0014 | Precast Wall Panels (erect) | 2,329 | SF | $15.00 | $34,935.00 | $18.00 | $41,922.00 | $15.00 | $34,935.00 |
| 0015 | Timberwork (deliver & erect) | 3,580* | LF | $59.30 | $212,294.00 | $55.00 | $196,900.00 | $55.00 | $196,900.00 |
| 0015a | Timber Brackets (erect only) | 20,865* | LBS | $1.00 | $20,865.00 | $1.26 | $26,289.00 | $1.26 | $26,289.00 |
| 0016 | Handrailing | 795 | LF | $40.00 | $31,800.00 | $48.00 | $38,160.00 | $40.00 | $31,800.00 |
| 0017 | Mooring Rings (erect) | 40* | EA | $150.00 | $6,000.00 | $300.00 | $12,000.00 | $300.00 | $12,000.00 |
| 0018 | Kevels (erect) | 13* | EA | $400.00 | $5,200.00 | $400.00 | $5,200.00 | $400.00 | $5,200.00 |
| A0031 | Sheet Pile Butt Splicing | 2 | EA | $960.00 | $1,920.00 | $800.00 | $1,600.00 | $960.00 | $1,920.00 |
| P0404 | R-6 Stone | 4,471 | CY | $47.82 | $213,803.22 | $55.00 | $245,905.00 | $47.82 | $213,803.22 |
| | Punch List | 1 | EA | lump sum | | | $10,870.00 | | |
| | | | | Total | $2,991,167.22 | Total | $3,619,628.00 | Total | $2,882,307.22 |

* Indicates quantities increased by the Corps of Engineers

LAW OFFICES
ERNSTROM & DRESTE LLP

Washington, DC Office
1050 CONNECTICUT AVENUE, NW
10TH FLOOR, STE. 1054
WASHINGTON, DC 20036-5303
TELEPHONE 202-772-1197
FAX 202-772-3308

2000 WINTON ROAD S., BLDG.1, STE.300
ROCHESTER, NEW YORK 14618-3977
TELEPHONE 585-473-3100
FAX 585-473-3113
www.ernstromdreste.com

New York, NY Office
317 MADISON AVENUE, STE. 703
NEW YORK, NEW YORK 10017-5260
TELEPHONE 212-687-0303
FAX 212-687-1687

Exhibit "B"

April 29, 2002

**VIA FACSIMILE (412-673-7934)**

Mr. Rich Perkoski, President
Port Vue Plumbing, Inc.
3718 Liberty Way
McKeesport, PA 15133

| | | |
|---|---|---|
| RE: | Obligee: | Corps of Engineers, Pittsburgh District |
| | Project: | New Dock Front at PEWARS, Neville Island, PA |
| | Contract: | DACW59-99-C-0002 |
| | Principal: | PEC Contracting |
| | Surety: | Amwest Surety Insurance Company (Reinsurer: Swiss Reinsurance America Corporation) |
| | Bond No.: | 1382830 |

Dear Mr. Perkoski:

As you know, I represent Swiss Reinsurance America Corporation ("Swiss Re"). I am writing to clarify certain terms of the three-way Completion Agreement that was recently forwarded to you.

1. **Warranty Issue.** Although paragraph 7 of the Completion Agreement states that Port Vue Plumbing, Inc. is responsible to the Government for all warranties, Swiss Re only intends that Port Vue be financially responsible for work which Port Vue itself performed. This intent is consistent with the information to bidders which Swiss Re issued in connection with this work. To the extent that any warranty obligation requires Port Vue to remedy work performed by PEC Contracting, Swiss Re will be financially responsible to Port Vue for such work. Naturally, if Port Vue intends to undertake any such work, we require that Port Vue provide us with notice of such work in a reasonable time before beginning such work.

2. **Port Vue Price.** I confirm that the price set forth in paragraph $3,3,619,630.00, does NOT include $39,000 relating to the use of the duplex drilling method. However, please be advised that Swiss Re's consultant, Paul Krystal, was most recently advised by the Corps of Engineers that the duplex drilling method would NOT be used. Therefore, do not perform such work without obtaining Paul Krystal's authority to do so.

3. **Overhead Relating to Phase I.** I acknowledge that Port Vue claims entitlement to $16,814.98 for overhead relating to Phase I. Paul Krystal will be finalizing that issue with you.

ERNSTROM & DRESTE LLP

Thank you for your attention to this matter. Please call with any questions.

Very truly yours,

Theodore M. Baum

TMB/jbw

pc: Michael S. Gillies, Esq. (by fax: 914-828-7047)
Mr. Paul Krystal (by fax: 847-692-3721)
David Raves, Esq. (by fax. 412-242-4377)

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

March 11, 2002

Contracting Division

SUBJECT: DACW59-99-C-0002, PEWARS Dockfront, Neville Island, PA

Mr. Michael Gillies
Swiss Reinsurance America Corporation
175 King Street
Armonk, New York 10504

Dear Mr. Gillies,

Please be advised that the Pittsburgh District requires that, in accordance with Statement of Work Section 02164, 3.21, **"Casing shall be installed by means of duplex drilling to prevent excessive washout of overburden material around the casing and minimize settlement."** This applies to the rock anchor installation. Flushing of the casing will not be acceptable. Please relay this information to all necessary parties of this requirement.

Should you have questions, I may be reached at (412) 395-7466.

Sincerely,

Michael S. DeStefano
Contracting Officer

Enclosure

CF: Mr. Paul Krystal, Project Completion
Advocates
Mr. William Lubick, Office of Counsel

Structural steel, ASTM A 588. All exposed steel surfaces shall be painted in accordance with Section 09940 PAINTING: HYDRAULIC STRUCTURES. Any painted surface damaged during installation of the rock anchors shall be repaired as recommended by the painting manufacturer.

2.2 FABRICATION OF ANCHORS

The anchors, including corrosion protection, shall be shop fabricated as near to the time of installation as practicable and shall be wrapped, transported, and stored in such a manner as to minimize corrosion or any other form of contamination or damage. The fabricated anchors shall be stored in a clean and dry environment prior to installation. Fabrication, transportation, and storage of the anchors and sheathing, including temperature and humidity during storage, shall be as recommended by the suppliers.

PART 3 EXECUTION

3.1 GENERAL

The following specs are applicable to both, rock and soil anchors unless noted.

3.2 DRILLING HOLES

3.2.1 General

The top of rock elevations and other physical conditions indicated on the drawings are the result of overburden sampling and core borings. See also paragraph "PROJECT SITE CONDITIONS". Holes through existing walls can be cut prior to drilling or core drilled to prevent damage to the surrounding wall. Holes through overburden shall be provided with steel casing, which shall remain in place after grouting of the anchors. In case of rock anchors the steel casing shall be seated in top of rock, which shall remain in place after grouting of the anchors. Casing shall be installed by means of duplex drilling to prevent excessive washout of overburden material around the casing and minimize settlement. All holes in rock shall be drilled using an auger head fitted with teeth specifically designed for cutting rock as approved by the Contracting Officer. Coring of rock will not be allowed. The use of percussion or down the hole hammer in rock is allowed. No percussion drilling method in soil is permitted. Waste water from drilling operations shall be collected and recycled or treated; it shall not be discharged directly to the river. See also Section 01130 ENVIRONMENTAL PROTECTION, paragraph "PROTECTION OF WATER RESOURCES". Additional drilling may be required based on the quality of the rock (rock anchors) or soil (soil anchors). The Contractor is advised that foreign material may be encountered during drilling through existing walls. Holes shall be drilled at the locations and to the depths determined by the Contractor to provide the design bond length. The locations of the holes may be changed only as approved by the Contracting Officer. Any redesign of the tie back sheet pile walls due to relocation of anchor holes will be performed by the Government. No holes shall be grouted within 20 feet of the grouted hole until the grout has set at least 24 hours. Overdrilling of holes by a maximum of one foot beyond the required elevation will be permitted if complete removal of cuttings and other material cannot be accomplished. If the overdrilling exceeds one foot, the hole shall be tremie grouted to the required bottom elevation of the hole and the grout allowed to harden prior to insertion of the anchor steel, at the

New Dock Front at PEWARS, Neville Island, PA

BID FORM

| Item No. | Description of Work | Quantity | Units | Unit Price | Amount |
|---|---|---|---|---|---|
| 0001 | Bond Premium | 1 | EA | lump sum | 17,000 - |
| 0002 | Progress Photos | 5 | EA | | 4,000 - |
| 0003 | Removals | 0.5 | EA | lump sum | 45,000 |
| 0004 | Resteel | 97,160 | LBS | 140 | 136,024 - |
| 0005 | Sheeting (complete) | 3,467 | LF | 38.00 | 131,746 - |
| 00C5a | Sheeting (deliver & erect) | 18,240 | LF | 23.00 | 419,520 - |
| 0006 | Misc. Metals (complete) | 36,000 | LBS | 1.20 | 43,200 - |
| 006a | Misc. Metals (erect only) | 11,660 | LBS | 150 | 17,490 - |
| 0007 | Storm Pipe Extension | 1 | EA | lump sum | 12,000 - |
| 0008a | Fenders (fab, coat & erect) | 1,000 | LF | 100 | 100,000 - |
| 0008b | Closures | 6C | LF | 185.00 | 11,100 - |
| 0008c | Ladder Recess | 1,610 | LF | 91.00 | 146,512 |
| 0009 | Access Ladders (erect) | 196 | LF | 130.00 | 25,480 - |
| 0010 | Select Fill Material | 2,418 | CY | 39.00 | 94,302 - |
| 0011 | Controlled Low Strength Material | 2,803 | CY | 140 - | 392,420 - |
| 0012 | Concrete for Minor Structures | 523 | CY | 330 - | 172,590 |
| 0013a | Rock Anchors | 69 | EA | 17,600 | 1,214,400 - |
| 0013c | Grout and Redrill Anchor Holes | 24 | EA | 2000 - | 48,000 - |
| 0014 | Precast Wall Panels (erect) | 2,329 | SF | 18.00 | 41,922 - |
| 0015 | Timberwork ( deliver & erect) | 3,580 | LF | 55.00 | 196,900 - |
| 0015a | Timber Brackets (erect only) | 20,865 | LBS | 1.26 | 26,289 - |
| 0016 | Handrailing | 795 | LF | 48.00 | 38,160 - |
| 0017 | Mooring Rings (erect) | 40 | EA | 300 | 12,000 |
| 0018 | Kevels (erect) | 13 | EA | 400 | 5200 - |
| A0031 | Sheet Pile Butt Splicing | 2 | EA | 800 | 1600 - |
| P0404 | R-6 Stone | 4,471 | CY | 55.00 | 245,905 |
| A-1 | Phase 1 Punch List Work | 1 | LS | lump sum | 10,870.00 |
| | | | | Total Cost | 3,619,630 - |

Alternate 2 $ 39,000 -

| | | |
|---|---|---|
| Amendment A received | Date: 2-14-02 | Signed by: [signature] |
| Amendment B received | Date: 2-19-02 | Signed by: [signature] |
| Amendment C received | Date: 3-8-02 | Signed by: [signature] |
| Amendment D received | Date: 3-11-02 | Signed by: [signature] |

Amendment D
Page 4 of 4

PROJECT COMPLETION ADVOCATE/LLC
CONSTRUCTION AND SURETY CONSULTING
Phone: 847 692 3465
Fax: 847 692 3721

March 19, 2002

Michael S. DeStefano
U.S. Army Corps of Engineers
Pittsburgh District
1813 Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-4186

Re: Obligee: Corps of Engineers, Pittsburgh District
Project: New Dock Front at PEWARS, Neville Island, PA
Contract: DACW59-99-C-0002
Principal: PEC Contracting
Surety: Amwest Surety Insurance Company
(Reinsurer: Swiss Reinsurance America Corporation)
Bond No.: 1382830

Dear Mr. DeStefano:

This letter represents Swiss Reinsurance America Corporation's initiation of a claim pursuant to Federal Acquisitions Regulations ("FAR") Subpart 32.2, and in particular Subpart 33.206. This claim relates to the Corps of Engineer's ("COE") requirement that the completing contractor utilize the duplex drilling method.

In your letter of March 11, 2002, you advised that for future rock anchor installation, casing is to be performed by means of duplex drilling, referencing Statement of Work Section 02164, 3.21. This requirement represents a change from the means and methods for rock anchor installation which was previously submitted by Airport Industrial Park, Inc. t/d/b/a PEC Contracting Engineers ("PEC") and accepted the COE. PEC, and more recently Port Vue Plumbing, have successfully completed 22 rock anchor installations. The COE inspected each such installation, and all installations were accepted by the COE, and PEC was paid for each such installation.

For reasons set forth in this letter, Swiss Re believes that the COE's March 11, 2002 letter constitutes a change in the work for which Swiss Re is entitled to additional compensation.

Swiss Re believes that the following facts support its conclusion that it is entitled to additional compensation. Prior to soliciting bids for the completion of the project work, Swiss Re requested that the COE provide copies of the submittals made by PEC with respect to rock anchor installation and which was accepted by the COE. In soliciting bids for the remaining work, Swiss Re provided the approved submittals as information to all bidders for proper rock anchor installation. On March 4, 2002, after the bids were received, the Corps decided to eliminate the requirement of soil anchors. This required Swiss Re to ask the bidders to revise their pricing by March 13, 2002. Just two days before bids were due, the COE issued its March 11, 2002 letter advising of the change in the allowable drilling method for rock anchors.



Mar 19 02 06:19p Paul Krystal (847) 692 - 3721 p.2

Upon notification from the COE, Swiss Re had each bidder provide a price reflecting the increase in price made necessary by the change in the drilling method from the previously submitted means and methods response to the duplex method. A copy of Swiss Re's Amendment D dated March 11, 2002 is attached, requiring the bidders to provide the changed method as Alternate D. The price increase for this change in requirement in the price of the low bidder, Port Vue Plumbing, Inc., is $39,000.00. A copy of Port Vue's bid form is attached.

Swiss Re previously made a request that the Corps increase the contract amount as a result of this change, but that request was denied. Accordingly, please consider this Swiss Re's initiation of a claim for a contract modification increasing the contract price by $39,000.00. Alternatively, Swiss Re requests that the COE permit the method previously utilized for twenty-two rock anchors for the remaining rock anchors. To the extent that this matter cannot be resolved by mutual agreement, Swiss Re requests that you make a decision pursuant to FAR 33.211.

Thank you for your attention to this matter. If you have any questions, please contact me.

This letter is written with a full reservation of all of the rights and defenses of Swiss Reinsurance America Corporation as surety, which rights and defenses are hereby expressly reserved.

Very truly yours,

P Krystal

Paul Krystal

pc: William Lubick, Esq. (by fax: 412-644-4113)
Michael S. Gillies, Esq. (by fax: 914-828-7047)
Theodore M. Baum, Esq. (by fax: 585-473-3113)
Mr. Jerry Brewer (by fax: 412-644-4287)

PROJECT COMPLETION ADVOCATES LLC
CONSTRUCTION AND SURETY CONSULTING
Phone 847 692 3465
Fax 847 692 3721

March 11, 2002

Brayman Construction Corporation
Port Vue Plumbing

Amendment D
New Dock Front
Pittsburgh Engineer Warehouse and Repair Station
Neville Island, Pennsylvania

All items and conditions of the previously transmitted February 2002 Rebid Documents remain unchanged and in full force.

**1. SPECIFICATIONS**

The February 6, 2002 transmittal of approved anchor submissions has been supplemented by the attached Owner's letter of March 11, 2002 (Pages 2 of 4 and 3 of 4 Amendment D). Costs related to this clarification are to be included as a separate consideration in Alternate 2.

**2. ALTERNATE 2**

Any additional costs for the duplex rock drilling procedure as outlined in the Owner's March 11, 2002 letter are to be submitted separately as Alternate 2.

**3. BID FORM**

The revised bid form has been included as an attachment to this Amendment D (page 4 of 4). Please acknowledge receipt and incorporation of this amendment into your bid by signing the bid form where designated.

END OF AMENDMENT D



7144 NORTH HARLEM AVENUE - CHICAGO, IL 60631

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
WILLIAM S. MOORHEAD FEDERAL BUILDING
1000 LIBERTY AVENUE
PITTSBURGH, PA 15222-4186

March 11, 2002

Contracting Division

SUBJECT: DACW59-99-C-0002, PEWARS Dockfront, Neville Island, PA

Mr. Michael Gillies
Swiss Reinsurance America Corporation
175 King Street
Armonk, New York 10504

Dear Mr. Gillies,

Please be advised that the Pittsburgh District requires that, in accordance with Statement of Work Section 02164, 3.21, **"Casing shall be installed by means of duplex drilling to prevent excessive washout of overburden material around the casing and minimize settlement."** This applies to the rock anchor installation. Flushing of the casing will not be acceptable. Please relay this information to all necessary parties of this requirement.

Should you have questions, I may be reached at (412) 395-7466.

Sincerely,

Michael S. DeStefano
Contracting Officer

Enclosure

CF: Mr. Paul Krystal, Project Completion
Advocates
Mr. William Lubick, Office of Counsel

Structural steel, ASTM A 588. All exposed steel surfaces shall be painted in accordance with Section 09940 PAINTING: HYDRAULIC STRUCTURES. Any painted surface damaged during installation of the rock anchors shall be repaired as recommended by the painting manufacturer.

2.2 FABRICATION OF ANCHORS

The anchors, including corrosion protection, shall be shop fabricated as near to the time of installation as practicable and shall be wrapped, transported, and stored in such a manner as to minimize corrosion or any other form of contamination or damage. The fabricated anchors shall be stored in a clean and dry environment prior to installation. Fabrication, transportation, and storage of the anchors and sheathing, including temperature and humidity during storage, shall be as recommended by the suppliers.

PART 3 EXECUTION

3.1 GENERAL

The following specs are applicable to both, rock and soil anchors unless noted.

3.2 DRILLING HOLES

3.2.1 General

The top of rock elevations and other physical conditions indicated on the drawings are the result of overburden sampling and core borings. See also paragraph "PROJECT SITE CONDITIONS". Holes through existing walls can be cut prior to drilling or core drilled to prevent damage to the surrounding wall. Holes through overburden shall be provided with steel casing, which shall remain in place after grouting of the anchors. In case of rock anchors the steel casing shall be seated in top of rock, which shall remain in place after grouting of the anchors. Casing shall be installed by means of duplex drilling to prevent excessive washout of overburden material around the casing and minimize settlement. All holes in rock shall be drilled using an auger head fitted with teeth specifically designed for cutting rock as approved by the Contracting Officer. Coring of rock will not be allowed. The use of percussion or down the hole hammer in rock is allowed. No percussion drilling method in soil is permitted. Waste water from drilling operations shall be collected and recycled or treated; it shall not be discharged directly to the river. See also Section 01130 ENVIRONMENTAL PROTECTION, paragraph "PROTECTION OF WATER RESOURCES". Additional drilling may be required based on the quality of the rock (rock anchors) or soil (soil anchors). The Contractor is advised that foreign material may be encountered during drilling through existing walls. Holes shall be drilled at the locations and to the depths determined by the Contractor to provide the design bond length. The locations of the holes may be changed only as approved by the Contracting Officer. Any redesign of the tie back sheet pile walls due to relocation of anchor holes will be performed by the Government. No holes shall be grouted within 20 feet of the grouted hole until the grout has set at least 24 hours. Overdrilling of holes by a maximum of one foot beyond the required elevation will be permitted if complete removal of cuttings and other material cannot be accomplished. If the overdrilling exceeds one foot, the hole shall be tremie grouted to the required bottom elevation of the hole and the grout allowed to harden prior to insertion of the anchor steel, at the

New Dock Front at PEWARS, Neville Island, PA BID FORM

| Item No. | Description of Work | Quantity | Units | Unit Price | Amount |
|---|---|---|---|---|---|
| 0001 | Bond Premium | 1 | EA | lump sum | 12,000- |
| 0002 | Progress Photos | 5 | EA | | 4,000- |
| 0003 | Removals | 0.5 | EA | lump sum | 45,000 |
| 0004 | Rested | 97,160 | LBS | 1.40 | 136,024- |
| 0005 | Sheeting (complete) | 3,467 | LF | 38.00 | 131,746- |
| 0005a | Sheeting (deliver & erect) | 18,240 | LF | 23.00 | 419,520- |
| 0006 | Misc. Metals (complete) | 36,000 | LBS | 1.20 | 43,200- |
| 006a | Misc. Metals (erect only) | 11,660 | LBS | 1.50 | 17,490- |
| 0007 | Storm Pipe Extension | 1 | EA | lump sum | 12,000- |
| 0008a | Fenders (fab, coat & erect) | 1,000 | LF | 100 | 100,000- |
| 0008b | Closures | 60 | LF | 185.00 | 11,100- |
| 0008c | Ladder Recess | 1,610 | LF | 91.00 | 146,512 |
| 0009 | Access Ladders (erect) | 196 | LF | 130.00 | 25,480- |
| 0010 | Select Fill Material | 2,418 | CY | 39.00 | 94,302- |
| 0011 | Controlled Low Strength Material | 2,803 | CY | 140- | 392,420- |
| 0012 | Concrete for Minor Structures | 323 | CY | 530- | 172,590 |
| 0013a | Rock Anchors | 69 | EA | 17,600 | 1,214,400- |
| 0013c | Grout and Redrill Anchor Holes | 24 | EA | 2000- | 48,000- |
| 0014 | Precast Wall Panels (erect) | 2,329 | SF | 18.00 | 41,922- |
| 0015 | Timberwork (deliver & erect) | 3,580 | LF | 55.00 | 196,900- |
| 0015a | Timber Brackets (erect only) | 20,865 | LBS | 1.26 | 26,289- |
| 0016 | Handrailing | 795 | LF | 48.00 | 38,160- |
| 0017 | Mooring Rings (erect) | 40 | EA | 300 | 12,000 |
| 0018 | Kevels (erect) | 13 | EA | 400 | 5200- |
| A0031 | Sheet Pile Butt Splicing | 2 | EA | 800 | 1600- |
| P0404 | R-6 Stone | 4,471 | CY | 55.00 | 245,905 |
| A-1 | Phase 1 Punch List Work | 1 | LS | lump sum | 10,970.00 |
| | | | | Total Cost | 3,619,630- |

Alternate 2 $ 39,000-

Amendment A received Date: 2-14-02 Signed by: [signature]
Amendment B received Date: 2-19-02 Signed by: [signature]
Amendment C received Date: 3-8-02 Signed by: [signature]
Amendment D received Date: 3-11-02 Signed by: [signature]

Amendment D
Page 4 of 4

DEPARTMENT OF THE ARMY
PITTSBURGH DISTRICT, CORPS OF ENGINEERS
Pittsburgh Area Office
3510 GRAND AVENUE
PITTSBURGH, PA 15226

May 3, 2002

Letter No. C-0005

Subject: Contract No. DACW59-99-C-0002, PEWARS Dockfront,
**ROCK ANCHOR-DUPLEX DRILLING-CLAIM**

Swiss Reinsurance America Corp.
175 King Street
Armonk, NY 10504

Gentlemen,

Reference is made to your letter dated March 19, 2002 requesting compensation for the amount of $39,000.00 to provide duplex drilling for installation of the rock anchors' casing.

The duplex drilling method for installation of the rock anchors' casing is a contract requirement and has not been waived. Contract Specification section 02164 paragraph 3.2.1 states, "Casing shall be installed by means of duplex drilling to prevent excessive washout of overburden material around the casing and minimize settlement."

Also, the "flushing of casing method" used during the Phase I rock anchor installation process is considered a deviation from the contract and entitles the Government to a credit of $12,434.78.

As stated above your request has no merit and is hereby denied.

This is my Final Decision as the Contracting Officer for the subject contract. This decision may be appealed to the Armed Services Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you desire to make such an appeal, you must mail or otherwise furnish written notice thereof to the Board of Contract Appeals within 90 days from the date you receive this decision. A copy of your appeal shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an

appeal is intended, reference this decision, and identify the contract by number. The notice shall also include a copy of this decision. With regards to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Board's small claims procedure for claims of $50,000 or less, or its accelerated procedure for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. §603, regarding Maritime contracts) within 12 months from the date you receive this decision.

Sincerely,

Michael S. DeStefano
Contracting Officer

PROJECT COMPLETION ADVOCATE, LLC
CONSTRUCTION AND SURETY CONSULTING
Phone 847 692 3465
Fax 847 692 3721

March 19, 2002

Michael S. DeStefano
U.S. Army Corps of Engineers
Pittsburgh District
1813 Federal Building
1000 Liberty Avenue
Pittsburgh, PA 15222-4186

Re: Obligee: Corps of Engineers, Pittsburgh District
Project: New Dock Front at PEWARS, Neville Island, PA
Contract: DACW59-99-C-0002
Principal: PEC Contracting
Surety: Amwest Surety Insurance Company
(Reinsurer: Swiss Reinsurance America Corporation)
Bond No.: 1382830

Dear Mr. DeStefano:

This letter represents Swiss Reinsurance America Corporation's initiation of a claim pursuant to Federal Acquisitions Regulations ("FAR") Subpart 32.2, and in particular Subpart 33.206. This claim relates to the Corps of Engineer's ("COE") requirement that the completing contractor utilize the duplex drilling method.

In your letter of March 11, 2002, you advised that for future rock anchor installation, casing is to be performed by means of duplex drilling, referencing Statement of Work Section 02164, 3.21. This requirement represents a change from the means and methods for rock anchor installation which was previously submitted by Airport Industrial Park, Inc. t/d/b/a PEC Contracting Engineers ("PEC") and accepted the COE. PEC, and more recently Port Vue Plumbing, have successfully completed 22 rock anchor installations. The COE inspected each such installation, and all installations were accepted by the COE, and PEC was paid for each such installation.

For reasons set forth in this letter, Swiss Re believes that the COE's March 11, 2002 letter constitutes a change in the work for which Swiss Re is entitled to additional compensation.

Swiss Re believes that the following facts support its conclusion that it is entitled to additional compensation. Prior to soliciting bids for the completion of the project work, Swiss Re requested that the COE provide copies of the submittals made by PEC with respect to rock anchor installation and which was accepted by the COE. In soliciting bids for the remaining work, Swiss Re provided the approved submittals as information to all bidders for proper rock anchor installation. On March 4, 2002, after the bids were received, the Corps decided to eliminate the requirement of soil anchors. This required Swiss Re to ask the bidders to revise their pricing by March 13, 2002. Just two days before bids were due, the COE issued its March 11, 2002 letter advising of the change in the allowable drilling method for rock anchors.

Upon notification from the COE, Swiss Re had each bidder provide a price reflecting the increase in price made necessary by the change in the drilling method from the previously submitted means and methods response to the duplex method. A copy of Swiss Re's Amendment D dated March 11, 2002 is attached, requiring the bidders to provide the changed method as Alternate D. The price increase for this change in requirement in the price of the low bidder, Port Vue Plumbing, Inc., is $39,000.00. A copy of Port Vue's bid form is attached.

Swiss Re previously made a request that the Corps increase the contract amount as a result of this change, but that request was denied. Accordingly, please consider this Swiss Re's initiation of a claim for a contract modification increasing the contract price by $39,000.00. Alternatively, Swiss Re requests that the COE permit the method previously utilized for twenty-two rock anchors for the remaining rock anchors. To the extent that this matter cannot be resolved by mutual agreement, Swiss Re requests that you make a decision pursuant to FAR 33.211.

Thank you for your attention to this matter. If you have any questions, please contact me.

This letter is written with a full reservation of all of the rights and defenses of Swiss Reinsurance America Corporation as surety, which rights and defenses are hereby expressly reserved.

Very truly yours,

Paul Krystal

pc: William Lubick, Esq. (by fax: 412-644-4113)
Michael S. Gillies, Esq. (by fax: 914-828-7047)
Theodore M. Baum, Esq. (by fax: 585-473-3113)
Mr. Jerry Brewer (by fax: 412-644-4287)

LAW OFFICES

ERNSTROM & DRESTE LLP

**Washington, DC Office**
1050 CONNECTICUT AVENUE, NW
10TH FLOOR, STE. 1054
WASHINGTON, DC 20036-5303
TELEPHONE 202-772-1127
FAX 202-772-3308

2000 WINTON ROAD S., BLDG.1, STE.300
ROCHESTER, NEW YORK 14618-3977
TELEPHONE 585-473-3100
FAX 585-473-3113
www.ernstromdreste.com

**New York, NY Office**
317 MADISON AVENUE, STE. 703
NEW YORK, NEW YORK 10017-5260
TELEPHONE 212-687-0303
FAX 212-687-1597

August 2, 2002

**Copy via UPS Overnight Delivery and**
**Original via Regular Mail**
Armed Services Board of Contract Appeals
Skyline Six
5109 Leesburg Pike
Falls Church, VA 22041-3208

RE: **NOTICE OF APPEAL**
Letter No. C-0005
Contract No. DACW59-99-C-0002, PEWARS Dockfront
**Rock Anchor Duplex Drilling Claim**

Dear Sir or Madam:

Please let this letter, written on behalf of my client, Swiss Reinsurance American Corporation ("Swiss Re"), service as the Notice of Appeal of Swiss Re from the Final Decision referenced above rendered by the May 3, 2002 letter of Michael S. DeStefano, Contracting Officer, and the March 19, 2002 letter referenced therein, with regard to the above-referenced claim. Copies of those letters are attached.

Please be advised that Swiss Re intends to appeal both the denial of its claim for $39,000.00 to provide duplex drilling, as well as the Contracting Officer's decision to impose a credit of $12,434.78, because, among other reasons, such credit represents an overpayment by the Government to the bond principal. The appeal for both decisions is subject to the small claims election.

not election per Mr. Baum 5 Aug 2002 OVH

Thank you for your attention to this matter.

Very truly yours,

s/ Theodore M. Baum

Theodore M. Baum

TMB/jbw
Attachments
Pc: ( all via UPS Overnight Delivery and Regular Mail)
Michael S. DeStefano, Contracting Officer
Mr. Paul Krystal (Project Completion Advocates, LLC)
Michael S. Gillies (Swiss Reinsurance American Corporation)

**ARMED SERVICES BOARD OF CONTRACT APPEALS**
SKYLINE 6
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3208

Telephone: (703) 681-8502
5 August 2002

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Swiss Reinsurance American Corporation | ) | ASBCA No. 53886 |
| | ) | |
| Under Contract No. DACW59-99-C-0002 | ) | |

NOTICE OF DOCKETING

Theodore M. Baum, Esq.
Ernstrom & Dreste LLP
2000 Winton Road S. Bldg. 1, Ste. 300
Rochester, NY 14618-3977

Your appeal on a claim of $39,000 has been assigned ASBCA docket number 53886. Please refer to the docket number in all future correspondence. Send a copy of all correspondence directed to the Board, including enclosures, to Government counsel at the address below (noting on the Board's copy that you have done so), unless the Board orders otherwise. A standard format for correspondence and pleadings is contained in the Board's Rules.

Enclosed are the Board's Rules, a Notice Regarding Alternative Methods of Dispute Resolution (ADR), and procedures relating to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. Board Rule 6 requires you to file your complaint within 30 days of your receipt of this docketing notice.

You may elect the ACCELERATED PROCEDURE if the amount in dispute is $100,000 or less. You may elect the EXPEDITED (SMALL CLAIMS) PROCEDURE if the amount in dispute is $50,000 or less. Rule 12 describes these procedures, including time limits.

You are urged to consider ADR procedures for disposition of your appeal. The enclosed notice describes some of the ADR methods which parties have used successfully in the past. Sample ADR agreements are available upon request.

Should you prevail on your appeal and be otherwise entitled, you may file an application for EAJA fees and expenses. Your application must be filed within 30 days of a final disposition in the appeal.

Until another attorney enters an appearance, the Government is represented by the Engineer Chief Trial Attorney, U.S. Army Corps of Engineers, Attn: DAEN-CECC-F, 441 G Street, NW, Washington, DC 20314-1000, (202) 761-8520.

EDWARD S. ADAMKEWICZ
Recorder

Enclosures

Printed on Recycled Paper

ARMED SERVICES BOARD OF CONTRACT APPEALS
SKYLINE 6
5109 LEESBURG PIKE
FALLS CHURCH VA 22041-3208

Telephone: (703) 681-8502

29 August 2003

VIA TELEFAX
Theodore M. Baum, Esq.
Ernstrom & Dreste LLP
2000 Winton Road S. Bldg. 1, Ste. 300
Rochester, NY 14618-3977

RECEIVED
SEP 02 2003
ERNSTROM & DRESTE

William A. Lubick, Esq.
Engineer Trial Attorney
U.S. Army Engineer District,
Pittsburgh (CELRP-OC)
Federal Building, 1000 Liberty Avenue
Pittsburgh, PA 15222-4186

Re: ASBCA No. 53886
Appeal of Swiss Reinsurance American Corporation
Under Contract No. DACW59-99-C-0002

Dear Counsel:

The Board is concerned that it may lack jurisdiction over these appeals under *Fireman's Fund Insurance Company v. England*, 313 F.3d 1344 (Fed. Cir. 2002) (copy enclosed). In *Fireman's Fund*, the Court held that the Board lacked jurisdiction over pre-takeover claims because the surety that issued the performance bond was not a "contractor" within the meaning of the Contract Disputes Act of 1978, 41 U.S.C. 601-13. The Court further held that the Board lacked jurisdiction over post-takeover claims because the indemnity agreement between the surety and the contractor violated the Anti-Assignment of Claims Act, 31 U.S.C. § 3727(1)(b) and 41 U.S.C. § 15(a).

Before reaching a decision, the Board would like the input of the parties on these issues. The Board also needs legible copies of the performance bond, the indemnity agreement between the original contractor and Amwest, and legible copies of the insurance agreement, including any indemnity agreement, between Amwest and Swiss Reinsurance. The parties shall have until 30 September 2003 to provide their briefs and the requested documents.

By Order of the Board:

EDWARD S. ADAMKEWICZ
Recorder

Printed on Recycled Paper